# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAYTON VETERANS RESIDENCES LIMITED PARTNERSHIP, d/b/a Freedom's Path at Dayton, | : : : : : | Case No. 3:16-cv-00466 <br><br> District Judge Walter H. Rice <br> Magistrate Judge Sharon L. Ovington |
| Plaintiff, | : : | |
| vs. | : : : | |
| DAYTON METROPOLITAN HOUSING AUTHORITY, d/b/a Greater Dayton Premier Management, | : : : : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.   Introduction

Plaintiff Dayton Veterans Residences Limited Partnership, doing business as Freedom's Path at Dayton (Plaintiff), is a Florida limited partnership authorized to do business in Ohio. It describes itself as, "A sole purpose entity formed specifically for the purpose of developing and owning the 60 units of affordable housing in Dayton that will serve United States Veterans …." (Doc. #6, *PageID* #48, ¶5). Most of the veterans it seeks to house in its development are "persons with disabilities." *Id*. at ¶13.

Dayton Metropolitan Housing Authority, doing business as Greater Dayton Premier Management (GDPM), is a federal public housing agency operating in

---
[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Montgomery County, Ohio and the greater Dayton, Ohio region. Its mission is, in part, to operate public housing for low-income individuals, seniors, and families.

Plaintiff alleges that Defendant GDPM blocked Plaintiff's attempts to obtain financing it needed to develop and own 60 units of low-income housing for veterans in Dayton. Defendant GDPM did so, according to the amended complaint, with discriminatory intent and with discriminatory effect in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.*, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et seq.*[2]

The case is presently before the Court upon Defendant GDPM's Motion to Dismiss under 12(b)(1) and 12(b)(6) (Doc. #7), Plaintiff's Response in Opposition (Doc. #9), Defendant GDPM's Reply (Doc. #10), Plaintiff's Surreply (Doc. #16), and the record as a whole. The issues the parties raise broadly concern whether Plaintiff has standing to pursue, whether its amended complaint states a plausible claim upon which relief can be granted, and whether its claims are not ripe for review.

**II.    Background**

To understand the factual context from which Plaintiff's claims emerge requires discussion of the federal housing program known as Veterans Affairs Supportive Housing (VASH) and its connection to this case. Plaintiff's amended complaint informs the discussion. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975) (" For purposes of ruling

---

[2] Because of the similarities between disability discrimination claims under the FHA and ADA, references herein to the FHA speaks to the ADA as well (excluding Plaintiff's ADA reasonable-accommodation claim). *See, e.g., Forziano v. Independent Group Home Living Program, Inc.*, 613 Fed. App'x 15, 18 (2nd Cir. 2015)

2

on a motion to dismiss for want of standing, ... the ... [C]ourt must accept as true all material allegations of the complaint, and [it] must construe the complaint in favor of the complaining party."); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

VASH "is a federal program that is allocated to public housing authorities in two forms": a tenant-based form and a project-based form. (Doc. #6, *PageID* #49, ¶10). "The VASH program combines rental assistance for homeless veterans with case management and clinical services provided by the Department of Veterans Affairs." *Id*. at ¶17. Plaintiff's goal is to use VASH project-based rental assistance to house veterans, most of whom are disabled, in a development known as Freedom Path-Dayton VA on the VA Medical Center's campus in Dayton. *Id*. at ¶s 25, 28.

"On April 9, 2013, … under the leadership of Alphonzio Prude, GDPM's Interim Chief Executive Officer, GDPM extended its support for Plaintiff's new development on the campus of the VA Medical Center and committed thirty-three … project-based vouchers." *Id*. at ¶28. This support was extended through a Program the amended complaint identifies as "Housing Choice Awards." *Id*. at ¶s 23, 28. The amended complaint describes Housing Choice Awards as "another kind of housing assistance …." *Id*. at ¶29.

Plaintiff alleges that Prude's/GDPM's affirmative commitment to provide 33 project-based through Housing Choice Awards supported Plaintiff's goal of provide housing assistance to disabled and other veterans on the VA Medical Center's campus in Dayton. (A copy of Prude's commitment letter is attached to the amended complaint. *Id*. at ¶29 (and Exhibit A)). The connection between Housing Choice Awards and VASH

3

project-based vouchers is that HUD administers the VASH program "in accordance with most of the requirements that apply to Housing Choice Vouchers …."[3] *Id*. at ¶23. The import of this emerges from Prude's letter in which he states that GDPM's Housing Choice Voucher Program is extending their support for the new development on the campus of the VA Medical Center." (Doc. #6, *PageID* #62). Plaintiff understands this as GDPM's initial affirmative commitment to support Plaintiff's efforts to obtain VASH financing for its planned housing development. (Doc. #6, *PageID* #53, ¶29).

This leads to the heart of the amended complaint. Plaintiff alleges that since Defendant GDPM's initial affirmative commitment, GDPM "has balked at providing continued support to Plaintiff." *Id*. at ¶30. Plaintiff needs Defendant GDPM's support "because only [Public Housing Authorities] such as GDPM may apply for a VASH allocation." *Id*. at ¶27. In December 2015, Plaintiff asked GDPM to apply for project-specific, project-based VASH vouchers on Plaintiff's behalf. The application deadline was in September 2016. GDPM declined to do so. "Notwithstanding its initial commitment of thirty-three … project-based [Housing Choice Vouchers] in 2013, GDPM has balked at providing continued support to Plaintiff." *Id*. at ¶30. Plaintiff alleges:

> Recently, under new leadership, and following meetings between GDPM's Executive Director Jennifer N. Heapy, Plaintiff's principals, and others, GDPM proposed applying for VASH Project-Based Rental Assistance on behalf of itself….

---

[3] Since Congress enacted the 2008 consolidated Appropriations Act, HUD may "waive or specify alternative requirements for any provision of any statute or regulation affecting the [Housing Choice Awards] program in order to effectively deliver and administer VASH housing assistance …." *Id*. at ¶24.

> By applying for VASH [assistance] … on its own behalf rather than on behalf of Freedom's Path, as GDPM had originally promised, and by not applying in a timely manner for Plaintiff's specific, project-based VASH vouchers, GDPM jeopardized HUD's award of 25 points that would give Plaintiff enough points for its project to be selected, which in turn would provide necessary treatment to veterans who would otherwise go without adequate treatment and housing.

*Id*. at ¶s 31-32.

In response to Plaintiff's inquiries, Defendant GDPM provided "various inconsistent, mistaken, or shifting rationales for its indecision…." *Id*. at ¶33. Plaintiff alleges, for example, GDPM explained, in part, that Prude's letter was inconsistent with federal law, and GDPM "has already exceeded its overall allocation of vouchers (this in incorrect—a HUD VASH voucher waiver to the cap is available)[.]" *Id*.

On September 2, 2016, Plaintiff's counsel sent a detailed letter to GDPM asking it to apply to HUD on Plaintiff's behalf for 60 VASH vouchers. *Id*. at ¶34 and Exhibit B, *PageID* #64. Plaintiff emphasized in its letter that "[t]ime is of the essence" given the September 9, 2016 deadline for applications to HUD for VASH vouchers. *Id*. Plaintiff's letter also stated, "Please treat this as a request for reasonable accommodation under the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act, and take whatever steps necessary to accommodate our request to apply to H.U.D. for the sixty (60) HUD-VASH vouchers...." *Id.* Plaintiff asserts in its amended complaint that GDPM denied the requested accommodation. (Doc. #6, *PageID* #54, ¶34).

Plaintiff claims that GDPM's discriminatory conduct violated the FHA by effectively making "housing unavailable to Plaintiff's prospective residents. [GDPM's] acts were undertaken with the intent to discriminate against, and had the effect of

5

discriminating against, disabled veterans and those who provide services to them, namely Plaintiff and its prospective residents." *Id*. at ¶64. Plaintiff also claims that GDPM's stalling and denial of a reasonable accommodation violated the ADA and "were taken with the intent to discriminate against, and had the effect of discriminating against, disabled veterans and those who provide services to them, namely Plaintiff and its prospective residents." *Id*. at ¶60.

As to Plaintiff's alleged harm, it maintains that as a result of GDPM's discriminatory response to Plaintiff's proposed housing and proposed financing, "[it] has expended time and financial resources and has lost opportunity to conduct its business and provide a much-needed service." *Id*. at 61. And, Plaintiff asserts that it has suffered damages in the form of frustration of mission, diversion of resources, lost financing, and lost funding in the form of credits. *Id*. at ¶s 40, 41.

Plaintiff seeks (1) declaratory relief concluding that GDPM violated the FHA and ADA; (2) an Order mandating GDPM to apply to HUD on Plaintiff's behalf for VASH project-based rental assistance or, alternatively, to grant Plaintiff a reasonable accommodation; (3) preliminary and permanent injunctions prohibiting GDPM from violating the ADA and FHA; and damages "for the harm it experienced as a result of GDPM's discriminatory and dilatory practices." *Id*. at ¶60.

### III. Standing

"Under Article III of the United States Constitution, a court has no jurisdiction over a case when the plaintiff does not have standing." *DeBolt v. Espyh*, 45 F.3d 777, 779 (6th Cir. 1995). "To bring suit, Plaintiffs must have 'alleged such a personal stake in

6

the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues' before the court." *Crawford v. U.S. Dep't of Treasury*, No. 16-3539, __F.3d__, 2017 WL 3568494, at *8 (6th Cir. 2017) (quoting, in part, *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

An organization—like Plaintiff—has two potential forms of Article III standing: It may seek relief either on its own behalf for its own injuries, *Haven Realty Corp. v. Coleman,* 455 U.S. 363, 378-79 (1982), or on behalf of its members, *see Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977).  Defendant GDPM contends that Plaintiff lacks both forms of standing.

To determine whether Plaintiff itself has standing under the Fair Housing Act, the analysis involves "the same inquiry applied to individuals:  Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?"  *Haven Realty,* 455 U.S. at 378-79 (internal punctuation omitted) (quoting, in part, *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977)).  To answer this question affirmatively, and thus establish standing on its own behalf, Plaintiff "must allege: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) that the requested relief will redress the injury."  *Miami Valley Fair Housing Center, Inc. v. Connor Group*, 725 F.3d 571, 576 (6th Cir. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not 'conjectural' or 'hypothetical.'" *Crawford*, __F.3d__, 2017 WL 3568494, at *8 (quoting, in part, *Lujan*, 504 U.S. at 560) (punctuation and other citations omitted).

Plaintiff alleges that its injuries include the expenditure of time and financial resources; lost opportunity to conduct its business (developing and building Freedom's Path on the VA Medical Center's campus in Dayton) and provide much-needed services (housing) to disabled veterans; frustration of its mission; diversion of its resources; lost financing (VASH vouchers); and lost funding in the form of tax credits. (Doc. #6, ¶s 25-26, 40-41, 61). Such injuries are real and therefore concrete, particularized to Plaintiff, and actual rather than hypothetical. *See Miami Valley Fair Housing Center,* 725 F.3d at 576 ("a drain on an organization's resources … constitutes concrete and demonstrable injury for standing purposes."); *cf. Haven Realty,* 455 U.S. at 378-79 ("If, as broadly alleged, petitioners' steering practices have perceptively impaired HOME's ability to provide counseling and service for low-and moderate-income homeseekers, there can be no question that the organization has suffered an injury in fact.").

Plaintiff also alleges sufficient facts to reveal, if proved, that a causal connection exists between its injuries and conduct fairly traceable to GDPM's actions—namely, GDPM's act of applying for specific project-based VASH vouchers for itself and refusing to apply for them on Plaintiff's behalf. Plaintiff needed GDPM's support to obtain VASH vouchers because only Public Housing Authorities, such as GDPM may apply for VASH vouchers. (Doc. #6, *PageID* #53, ¶27). It is therefore reasonable to conclude that Plaintiff could not and cannot secure an award of the VASH vouchers it sought without GDPM's help. Plaintiff maintains that GDPM's promised support and later refusal to

apply for VASH vouchers on Plaintiff's behalf, "jeopardized HUD's award of 25 points to Plaintiff that would have given Plaintiff enough points for its project to be selected ...," (Doc. #6, *PageID* #53, ¶32), and improperly and illegally stalled and effectively denied Plaintiff's financing, *id.*, *PageID* #55, ¶38. *See Lynn v. Village of Pomona*, 373 F.Supp.2d 418, 426-27 (S.D.N.Y. 2005) ("'the prohibition against making a residence unavailable has been applied to situations where government agencies take actions that prevent construction of housing when the circumstances indicate a discriminatory intent or impact against anticipated future residents who are members of a class protected' under the FHA." (citations omitted)).

As to the redress requirement, Plaintiff's requested relief, if granted, will redress its injuries. Its redress would include damages for the financial harm it has allegedly incurred due to lost business opportunities, and damages to redress the diversion and expenditure of its finances and resources.

GDPM finds something missing. It argues that Plaintiff must, but cannot, show a statutory basis—*i.e.*, "an invasion of a *legally protected interest*," *Lujan*, 504 U.S. at 560 (emphasis added; citations omitted)—that would grant it a right to relief. More specifically, GDPM argues, "Plaintiff failed to show that the ADA or FHA provide[s] Plaintiff or a disabled individual a legally protected interest in Freedom's Path's request. Therefore, Plaintiff fails to establish anyone suffered an injury in fact." (Doc. #10, *PageID* #112) (footnote omitted). This argument rests on the correct standing principle but fails to reach the correct standing conclusion.

First the principle: "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing….'" *Warth*, 422 U.S. at 500 (quoting, in part, *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973) (other citation omitted). With this in mind, GDPM's reasoning has some allure on its face because Plaintiff is a housing developer— a rather large step away from a disabled military veteran. But FHA coverage extends more broadly.

The FHA "makes it unlawful [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[.]" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting, in part, 42 U.S.C. § 3604(f)(1)). The FHA authorizes any "aggrieved person" to bring a civil action contesting discriminatory housing practices. *See* 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" is broadly defined "to include any person who 'claims to have been injured by a discriminatory housing practice[.]'" *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 544 (6th Cir. 2014) (quoting 42 U.S.C. § 3602(i)(1)).

> Recovery under the FHA is not limited to "persons who are directly and immediately subjected to discrimination." *Hamad v. Woodcrest Condo Ass'n*, 328 F.3d 224, 231 (6th Cir. 2003). Congress intended standing under the FHA to extend to the "full limits" of Article III of the United States Constitution, and accordingly an FHA plaintiff need only allege a "distinct and palpable injury" caused by the defendant's actions. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (internal quotation marks omitted); *see also Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.,* 725 F.3d 571, 576 (6th Cir. 2013).

*Hollis*, 760 F.3d at 544.

Plaintiff alleges sufficient facts, if true, to show it is an "aggrieved person" under the FHA. It alleges that GDPM intentionally discriminated against handicapped veterans—and those providing services to them (namely, Plaintiff)—by blocking Plaintiff's only avenue to obtain financing (VASH project-based vouchers) for its proposed development and construction of low-income housing for disabled veterans. This blocking effectively deprived disabled veterans of low-income housing that was sorely needed near the VA Medical Center in Dayton, and caused Plaintiff to incur financial harm (diversion of money and resources; lost business) and incorporeal harm (frustration of its mission), according to Plaintiff's amended complaint. (Doc. #6, *PageID* #55, ¶s 37-38, 64-65). These allegations, if true, are sufficient to show that GDPM violated Plaintiff's legal interest created by the FHA and suffered resulting "'distinct and palpable injury.'" *Hollis*, 760 F.3d at 544 (citation omitted); *cf. Havens Realty*, 455 U.S. at 378-79 (HOME had standing in its own right through the FHA to challenge racial steering practices due to its injury in fact); *cf. also Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 45-46 (2nd Cir. 2015) (commercial developer had standing in its own right through the FHA to contest city zoning board's denial of special-use permit it needed to construct its planned residential project after it spent $81,000 on architects, consulting firms, land use studies, and application fees). Plaintiff, moreover, falls within the standing ambit of the FHA in the circumstances the amended complaint describes even though it was not the direct victim of disability discrimination. As noted above, the FHA is not limited to "'persons who are directly and immediately

subjected to discrimination.'" *Id*. (citation omitted). Any lingering doubt (there is none) about Plaintiff's FHA-derived standing at this point in the case is extinguished by Congress' intent to broaden standing under the FHA to the "full limits" of Article III. *Havens Realty,* 455 U.S. at 372.

GDPM points out that many of the cases on which Plaintiff relies dealt with a plaintiff's rights being denied by zoning restrictions, tax-credits denials, or building-permit refusals based upon racial considerations.[4] GDPM maintains that the instant case differs from those standing cases based on the different circumstances Plaintiff alleges in this case. (Doc. #10, *PageID* #111). Although the parties do not discuss one of the cases cited above, *Anderson Group,* 805 F.3d at 45-46, GDPM's argument extends naturally to *Anderson*, where a zoning board denied a commercial developer a special-use permit it needed.

The cases Plaintiff cites, along with *Anderson Group,* do not alter the above analysis because the defendants in those cases allegedly engaged in blocking actions similar to GDPM's refusal to apply for VASH vouchers on Plaintiff's behalf. The similarity of those actions—zoning restrictions and denial of tax credits—with GDPM's

---

[4] Plaintiff cites *Arlington Heights*, 429 U.S. 252 (developer had standing); *Oti Kaga, Inc. v. South Dakota Housing Development Auth.*, 342 F.3d 871, 880 (8th Cir. 2003); (upholding developer's standing to challenge denial of funding application on racial grounds despite plaintiff's own lack of racial identity); *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 503 (9th Cir. 2016) (addressing fair housing claims by developer); *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983); *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989) (citing cases); *In re Malone*, 592 F. Supp. 1135, 1166 (E.D. Mo. 1984), *judgment aff'd*, 794 F.2d 680 (8th Cir. 1986) (plaintiff-developer of affordable housing had standing under § 3617); *U.S. General, Inc. v. City of Joliet*, 432 F. Supp. 346, 352 (N.D. Ill. 1977) (holding, in case brought by developer of affordable housing, that "§ 3617 grants a right of action to persons who have been interfered with as they aided others in their exercise of rights protected by 3604.").

alleged actions is that both completely forestalled a developer or housing advocate's attempt to provide housing for an FHA-protected class. Each blocking action alleged in those cases stemmed from discriminatory intent and resulted in claimed constitutional or statutorily forbidden discrimination, as GDPM's alleged blocking actions did here. Injury in fact and, therefore, existed in those cases as it does here.[5]

In its Reply memorandum, GDPM raises for the first time the contention that the owner of property has no right to participate in the voucher program. GDPM relies on 24 C.F.R. § 982.306(e): "nothing in this rule is intended to give any owner any right to participate in the program." (Doc. #10, *PageID* #108). This contention misses the mark. It fails to recognize that § 982.306(e)'s expression of the rule's intent (not to give owners property rights in the program) does not invalidate, indeed has no impact on, the FHA's anti-discrimination provisions.

Defendant GDPM further contends that Plaintiff lacks associational standing to litigate its ADA and FHA claims because it fails to establish that it is an organization that has members who may sue in their own right. However, because Plaintiff's complaint suffices to show its own standing, this Court has jurisdiction over the present case and controversy without the need to further explore at present whether Plaintiff also has associational standing.[6]

---

[5] This conclusion might or might not hold up at later stages of this case. *See Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016) (standing must continue throughout the litigation).

[6] Plaintiff's Memorandum in Opposition also identifies an ADA reasonable-accommodation claim, as does the amended complaint. There is no present need to address this claim, given Plaintiff's standing.

## IV. Cognizable Claim

Defendant GDPM argues that Plaintiff's amended complaint fails to state a cognizable cause of action upon which relief can be granted. According to GDPM, "Plaintiff argues that GDPM is denying availability of housing to disabled individuals in violation of the [FHA]. Plaintiff is arguing that GDPM's extremely attenuated, indirect action is making housing unavailable and is a violation of the FHA." (Doc. #10, *PageID* #116). GDPM also alleges that disabled veterans will not be deprived of housing or access to such housing because "GDPM was still seeking VASH vouchers that may be used by disabled veterans…." (Doc. #7, *PageID* #80).

By minimizing its role as extremely attenuated and indirect, and by asserting that disabled military veterans will not be deprived of housing, GDPM improperly rewrites the amended complaint in its favor. Plaintiff's amended complaint sufficiently alleges that GDPM's act of applying for VASH vouchers on its own behalf, rather than on Plaintiff's behalf, deprived disabled veterans of housing. (Doc. #6, ¶s 32, 37, 64). The amended complaint likewise alleges sufficient facts, when taken as true, to show that GDPM intended to discriminate against disabled military veterans, or had the effect of discriminating against them, by denying them housing and services. (Doc. #6, *PageID* #55, ¶37); *cf. Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1362 (6th Cir. 1995)(no need to show discriminatory intent under FHA disparate-impact theory); *cf. also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-15 (2002) (plaintiff is not required to plead prima facie case of discrimination or plead a claim with heightened particularity); *Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) (extending

*Swierkiewicz* to housing-discrimination claims).  The amended complaint further alleges that GDPM's intent to discriminate arises from "[t]he historical background of GDPM's actions, the sequence of events, and GDPM's departures from the normal procedural sequence or substantive criteria all reflect intent to discriminate against disabled people who were veterans because Defendant maintains that administering VASH on a project-based basis was administratively burdensome to GDPM even though administering VASH on a project-based basis is less of an administrative burden than administering them on a tenant-based basis."  (Doc. #6, *PageID* #54, ¶36).  Plaintiff therefore raises plausible claims that GDPM violated the FHA.  *Cf. Arlington Heights*, 429 U.S. at 265-67 (historical background and sequence of events pertinent to housing-discrimination claims).

Relying on G*rowth Horizons, Inc. v. Delaware County, Pa*., 983 F.2d 1277, 1279 (3rd Cir. 1993), Defendant contends that the ruling Plaintiff seeks is not the type of ruling courts have found supportable under the FHA.

In *Growth Horizons,* the plaintiff provided living arrangements to developmentally disabled individuals. The County of Delaware, Pennsylvania cancelled its contract with the plaintiff.  The plaintiff filed suit alleging that the city's failure to assume the leases was the result of political pressure emanating from bias against the disabled.  "For this reason, [the plaintiff] contends that the County's failure to assume the leases was the result of political pressure emanating from bias against the handicapped."  *Id*. at 1279.  This violated the FHA by constituting unlawful discrimination against handicapped individuals, according to the plaintiff.  The Third Circuit held otherwise.  It had great

15

difficulty interpreting the text of the statute to "literally encompass a situation in which a public agency sponsor housing for the handicapped but because of neighborhood bias has decided not to lease particular housing but rather to make an alternative choice." *Id.* The Court further found that it doubted that Congress would think that anyone is denied housing when a public sponsor opts for one house over another. *Id.* The Court also observed, "Subjecting to judicial review decisions of public agencies to invest in one property rather than another would impose a financial burden on the limited resources currently devoted to housing the handicapped." *Id*. at 1283-84.

*Growth Horizons* is not controlling in the Sixth Circuit but it might have persuasive value. Yet, upon careful reading, *Growth Horizons* did not involve circumstances similar to those in the present case. Here, the factual circumstances alleged in the amended complaint, when accepted as true, do not describe a political choice by an agency to provide alternative housing. Plaintiff instead alleges that GDPM wholly blocked Plaintiff from developing and building housing for disabled military veterans. This had the effect of denying housing, meaningful access to housing, and services for disabled veterans. (Doc. #6, *PageID* #55, ¶37). In this manner, Plaintiff's amended complaint goes beyond the allegations in *Growth Horizons*.

Accordingly, Plaintiff's amended complaint states a cognizable claim under the FHA.

## V. Ripeness

Defendant lastly argues that Plaintiff's amended complaint is not ripe for adjudication because Plaintiff raises a speculative argument. Defendant maintains that

16

the amended complaint contains no information that any qualified individual with a disability will ever reside or want to reside in Plaintiff's future development.

"A claim not amenable to ... the judicial process, when it is filed too early (making it unripe) …." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (internal punctuation and citations omitted).

> The ripeness doctrine acknowledges the problem inherent in adjudicating a dispute "anchored in future events that may not occur as anticipated, or at all." Determining whether a claim is ripe involves evaluating "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." To be ripe for review, claims must satisfy both the fitness and the hardship components of the inquiry.

*Airline Professionals Ass'n of Intern. Broth. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 987-88 (6th Cir. 2003) (internal and other citations omitted).

In light of the above discussion concerning Plaintiff's present, non-speculative injury in fact, *supra,* § III, particularly its financial injury, and given GDPM's opposition to Plaintiff's assertion of standing and the merits of its claims, the amended complaint asserts sufficient allegations to make Plaintiff's FHA claim ripe and fit for adjudication. Deferring consideration of the parties' dispute over Plaintiff's FHA claim will cause them hardship by leaving unresolved the issue of whether Plaintiff is entitled to relief in the form of damages, declaration, or injunction.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendant GDPM's Motion to Dismiss under 12(b)(1) and 12(b)(6) (Doc. #7) be denied.

August 22, 2017
*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).