# EXHIBIT B:
# HUD NOTICE
# PIH 2015-11 (HA)



**U.S. Department of Housing and Urban Development**

Public and Indian Housing

| | |
|---|---|
| Special Attention of:<br>Directors of HUD Regional and Field Offices of Public Housing;<br>Agencies that Administer the Housing Choice Voucher Program | **Notice PIH 2015-11 (HA)**<br><br>Issued: June 26, 2015<br><br>Expires: This notice remains in effect until amended, revoked, or superseded |
| | Cross References: Notice PIH 2010-40; *Implementation of the HUD-Veterans Affairs Supportive Housing (HUD-VASH) Program* published in the *Federal Register* on March 23, 2012. |

**Subject: Set-Aside Funding Availability for Project-Basing HUD-VASH Vouchers**

1. **Purpose.** In support of the Department's goal to end veterans homelessness by the end of 2015, this notice announces the availability of a set-aside of approximately $7 million in HUD-VASH funding that will support approximately 1,000 units of project-based voucher (PBV) assistance. These PBVs will enable homeless veterans and their families to access affordable housing with an array of supportive services. The vouchers are being made available from a set-aside from the Consolidated and Further Continuing Appropriations Act, 2015 (the Act) (Public Law 113-235), enacted December 16, 2014, that provided approximately $75 million dollars of funding for HUD-VASH vouchers as authorized under section 8(o)(19) of the United Stated Housing Act of 1937.

2. **Maximum Awards.** Any PHA that administers a Housing Choice Voucher program may submit only **one** application for **one** project[1] to be placed under one PBV housing assistance payments (HAP) contract and may request no more than 75 PBVs in its application, with the following exceptions:
   a. A PHA that has received more than one allocation of HUD-VASH vouchers that are targeted to different VA facilities may submit one application (for one project) for up to 75 PBVs in connection with each VA facility. For example, if the PHA received an allocation for one Veterans Affairs Medical Center (VAMC) and another allocation for a Community Based Outpatient Clinic (CBOC) under the same VAMC, the PHA could submit two applications, one for each single project in connection with each VAMC facility. Each application could be for up to 75 PBVs.

---

[1] Under the PBV program, a "project" is defined as a single building, multiple contiguous buildings, or multiple buildings on contiguous parcels of land.

 b. If a PHA selects a project with both existing and new construction/rehab housing types, the PHA must submit a separate application for each type of housing. These applications will be scored separately, which may result in only part of the total project receiving funding (for example, the units that fall under existing projects may be funded while the new construction would not be funded). Please note that only a total of 75 units per project will be awarded.

The maximum number of vouchers requested by each PHA must be within the 20 percent maximum budget authority that may be allocated to PBV assistance in accordance with 24 CFR 983.6(a).

**3. Application Due Date.** Applications (form HUD-52515,) are due on **August 28, 2015**. All applications must be submitted electronically to VASH@hud.gov. Applications not received on time will not be processed. Faxes and hard copy submissions will not be accepted.

**4. Application Requirements.** In order to address the required factors in the application, PHAs must select PBV proposals in accordance with program requirements at 24 CFR 983.51 **prior** to submitting an application under this notice. This means that the PHA must have selection policies in its Administrative Plan and select proposals in accordance with such policies. PHAs must select proposals using either of the following two methods: (1) issue a request for PBV proposals. The PHA may not limit proposals to a single site or impose restrictions that explicitly or practically preclude owner submission of proposals for PBV housing on different sites, or (2) select a proposal based on a previous competition under a federal, state, or local government housing assistance, community development, or supportive services program. The competition must have occurred within three years of the PBV proposal selection date by the PHA and the earlier competitive selection proposal must not have involved any consideration that the project would receive PBV assistance.

The selection of the PBV proposal must be conditional and subject to the successful award of funding pursuant to this notice, unless a PHA has sufficient available voucher funding in its regular voucher program and/or HUD-VASH program to fulfill the PBV commitment notwithstanding this set-aside. If the project is accepted as an existing project, the selection must be conditional on the completion of an environmental review as outlined at 24 CFR 983.58 prior to the execution of a Housing Assistance Payments (HAP) contract, unless the environmental review process has already been completed. If the environmental review process required under 24 CFR 983.58 has not been completed prior to selection of a PBV proposal for an existing project, the written notice given to the submitting party that their proposal was selected must state that the selection is conditional on a favorable environmental review in accordance with 24 CFR 983.58, and that the selectee may not take any action prohibited under 24 CFR 983.58(d) until the environmental process is completed.

If the project is selected as new construction or rehabilitation, the selection must also be conditional on the completion of an environmental review (unless the environmental review process has already been completed) and subsidy layering review prior to the execution of an Agreement to Enter into a Housing Assistance Payments contract (AHAP). If the subsidy layering review or environmental review process required under 24 CFR 983.55 and 24 CFR 983.58, respectively, has not been completed prior to selection of a PBV proposal, the written notice given to the submitting party that their proposal was selected must state that the selection is conditional on favorable subsidy layering and environmental reviews in accordance with 24 CFR 983.55 and 24 CFR 983.58, respectively, and that the selectee may not take any action prohibited under 24 CFR 983.58(d) until the environmental process is completed.

The PHA must submit form HUD-52515, *Funding Application, Section 8 Tenant-Based Assistance, Rental Certificate Program, Rental Voucher Program*. This form may be downloaded from the following website: http://www.hud.gov/offices/adm/hudclips/forms/hud5.cfm. When completing this form, include the five-digit PHA code (e.g. AL001) along with the name and mailing address of the PHA. Only complete the box for total dwelling units under vouchers in section B. Do not complete sections A or C. In section D of the form you do not have to address *Need for Housing Assistance*. Rather, the PHA applicant must provide the following information, for which you may attach extra paper:

    a. The number of PBVs requested, which cannot exceed 75.

    b. A description of the proposed project including: (1) the address; (2) the location by census tract; (3) the total number of buildings; (4) total number of units by bedroom size in each building; (5) the number and bedroom sizes of HUD-VASH units in each building; and (6) the target population, if any, of any non HUD-VASH units.

    c. Information regarding the threshold and scored factors on which the application will be assessed and scored. Applications will be scored and assessed by HUD and VA.

**The form HUD-52515 must be signed by the Executive Director of the PHA or designated official when the PHA does not have an Executive Director.**

**5. Threshold Factors:** Threshold factors must be met in order for the application to be given further consideration. If the HUD-52515, or any of the threshold items listed below are incomplete or missing, they will be treated as a curable deficiency and HUD may contact an applicant to clarify or request the missing information. Applicants must provide the requested information, in accordance with HUD instructions, within 10 business days from the date of the request or the application will no longer be considered for funding under this notice.

4

a. The application must include a <u>signed</u> letter of support from the Director of the VAMC or Veterans Integrated Service Network (VISN). The letter from VA must confirm the need for the number of vouchers requested in the application.

b. The application must include these sections only of the PHA administrative plan that contain the following policies defined in PIH Notice 2011-54 *(Guidance on the Project-Based Voucher Program)*:

> (1) The procedures for owner submission of PBV proposals and for selection of those proposals, such as method of providing public notice, deadline for submission and selection factors. See 24 CFR 983.51(a), (b) and (c). If the PHA intends to use both competitive and non-competitive procedures, it must describe under what conditions it will use each method of selection. It is acceptable for a PHA to state that it will only use competitive selection procedures when noncompetitive selection is not applicable. However, if the PHA intends to use both competitive and non-competitive selection of proposals, the procedures above must be described.
>
> (2) The standard for deconcentrating poverty and expanding housing and economic opportunities must be described in accordance with 24 CFR 983.57(b)(1). In addition, the PHA must establish its policy for selection of PBV sites and describe how the site selection policy promotes PBV goals.
>
> (3) If the PHA plans to exceed the 25 percent cap on the number of units in a project that may have PBV attached for non-elderly and non-disabled families, the Administrative Plan must describe the type of services offered to these families for a project to qualify for the exception to the 25 percent cap and the extent to which such services will be provided. Please reference 24 CFR 983.56(b)(2). If the unit is excepted for a family receiving supportive services, the PHA must describe the form and frequency of monitoring the continued receipt of these services and take appropriate action regarding those families that fail without good cause to complete their supportive services requirements. A PHA may not require participation in medical or disability-related services.
>
> (4) The PHA must have a policy regarding family occupancy of wrong-size or accessible units. In cases where, after initial tenancy, the family is occupying a wrong-sized unit or a unit that has accessibility features not required by the family, it must describe the form(s) of continued assistance it will continue to offer the family. See 24 CFR 983.259(b).
>
> (5) At the PHA's discretion, the PBV HAP contract may provide for vacancy payments to the owner. Therefore, the PHA must decide if it will pay such vacancy payments as defined under 24 CFR 983.352. The maximum vacancy payment can be no more than two full months of monthly rent to owner under the assisted lease after the month the family moves out minus any portion of the rental payment received by the owner (including amounts available from the tenant's security deposit). Vacancy

5

payments can only cover the portion of time the unit remains vacant during the period defined.

c. The application must include a signed statement from the project owner that the project will comply with *Housing First*. The PHA representative's signature on the application will serve as a certification that the PHA will enforce compliance with a *Housing First* approach at the project.

*Housing First* is an approach where homeless persons, usually chronically homeless or especially vulnerable homeless individuals and families, are provided immediate access to housing and then offered the supportive services that may be needed to foster long-term stability and prevent a return to homelessness. This approach removes unnecessary barriers and assumes that supportive services are more effective in addressing needs when the individual or family is housed and the daily stress of being homeless is taken out of the equation. Key components of this model include a simple application process, a harm reduction approach, and no conditions of tenancy beyond those included in the lease. *Housing First* specifically does not require sobriety or testing for substance abuse to obtain or sustain tenancy and thus must not be required in the lease. In serving these populations, projects cannot discriminate against families with children. More information on *Housing First* is available at:
https://www.hudexchange.info/resources/documents/Housing-First-Permanent-Supportive-Housing-Brief.pdf .

d. The application must include a statement indicating the project's accessibility to transit, the VAMC or CBOC, employment opportunities, and to key neighborhood assets (which must be identified), such as quality grocery stores, banks, libraries, and parks and recreational facilities. This statement must include transit options for the immediate area, such as rail, bus, ride/bike share, etc., and may include scoring indices for neighborhoods, such as a Walk Score (http://www.walkscore.com). The PHA representative's signature on the application will serve as a certification of this statement.

e. The PHA applicant must not have any major unresolved program management findings from an Inspector General audit, HUD management review, or Independent Public Accountant (IPA) audit for the PHA's HCV program or other significant program compliance programs that were not resolved or in the process of being resolved (as determined by the local field office) prior to this Notice's application deadline. Major program management findings or significant program compliance problems are those that would cast doubt on the capacity of the applicant to effectively administer a HUD-VASH PBV project. In addition, the PHA must not be involved in litigation that HUD determines may seriously impede the ability of the applicant to administer the HUD-VASH PBV project. The local HUD field office will provide the necessary information on this factor.

f. The PHA must have all outstanding civil rights matters resolved prior to the application deadline. Applicants having any of the charges, cause determinations, lawsuits or letters

6

findings referenced in Section III.C.2(b) of the FY2015 General Section of the Notice of Funding Availability that have not been resolved to HUD's satisfaction before or on the application deadline date are ineligible for funding consideration. Examples of actions that may be considered sufficient to resolve matters can be found in the General Section of the NOFA can be found at:
http://portal.hud.gov/hudportal/documents/huddoc?id=2015nofa-gensec.pdf. HUD will contact the local field office for this information.

**6. Scored Factors:** A maximum of 125 points may be awarded.

a. **Project Readiness:**

>**30 points:** Existing housing that will be ready for occupancy by new homeless HUD-VASH clients within 90 days of selection date for PBVs under this notice, which is anticipated to be 60 calendar days from application due date.
>
>**15 points:** Newly constructed or rehabilitated units, developed in accordance with PBV requirements found at 24 CFR Part 983 Subpart D, that will execute an AHAP and start construction within 18 months of selection date for PBVs under this notice, which is anticipated to be 60 calendar days from application due date. These PBV requirements include the selection of a PBV proposal, an environmental review, subsidy layering review and the execution of an AHAP prior to construction or rehabilitation. HUD will only accept proposals for projects that have already begun construction if the project was developed under the PBV program, including complying with the PBV requirements listed above.
>
>For newly constructed or rehabilitated units, the PHA must provide a project timeline including these major milestones: (1) execution of Agreement to Enter Into a Housing Assistance Payments contract (AHAP); (2) construction start date; and (3) execution of PBV HAP contract.

If the PHA is selected for an existing project, the PHA will be required to submit a PBV HAP contract (form HUD-52530B) to HUD Headquarters at VASH@hud.gov to verify occupancy for existing units within 90 days of selection. If a PHA is selected for a new construction or rehabilitation project, the AHAP (form HUD-53531 A and B) must be submitted within 18 months. **If the PBV HAP contract or AHAP is not executed by the deadlines noted above, the funding and associated PBVs will be forfeited by the PHA and must be returned to the Department. Because this is a competitive process and Project Readiness is a scored factor, no extensions on these deadlines will be granted. In addition, all requested PBV units must be vacant at the time the HAP is executed.**

Please note that both the AHAP and PBV HAP contract may only be executed after specific regulatory requirements are satisfied. For new construction and rehabilitation, an

7

environmental review and subsidy layering review are required prior to the execution of the AHAP as required by 24 CFR 983.153. An environmental review is required prior to the execution of a PBV HAP contract for existing units. In selecting projects, the PHA must consider these requirements in concert with the timelines noted above.

**Failure to address the Project Readiness scored factor, including major milestones, where applicable, is considered a non-curable deficiency and will result in the application being removed from the competition.**

b. <u>**Participation in the Enhanced Use Lease (EUL) Program**</u>: The PHA must indicate if the project is part of an EUL program. Please note that a PHA's selection of an EUL site meets the alternative competitive selection requirements under 24 CFR 983.51(b)(2). However, the means of selection must still be consistent with the PHA's administrative plan. **Applicants are not required to provide any information in response to this factor.**

> **30 points:** The project is being developed in coordination with the EUL program.
> **0 points:** The project is not associated with the EUL program.

c. <u>**Supportive Services**</u>: The application must describe any supportive services available to the residents of the project, in addition to the VA case management services provided with the voucher. If any additional services are proposed to be provided by the project owner, the source of funding for those services should be identified, as well as the status of the funding commitment for those services.

Applicants should clearly indicate how the principles of *Housing First* will be incorporated into the provision of supportive services. Supportive services must reflect the specific needs of the target population this project plans to assist. Applications must include a description of on-site as well as off-site services, what these services include, who provides the services (e.g., VA, project owner, or other provider), the length of time services will be available to each client, total number of hours per week that services will be available, how off-site services will be accessed, and how these services will be monitored by the VA or other responsible party. Specifics of what the supportive services will entail are needed. For example, if employment services are provided, then the applicant should detail what kinds of employment services will be provided and how they will be delivered.

In addition, project owners must demonstrate a relationship and coordination plan with the VAMC for the provision of case management and other supportive services.

> **10 points:** Appropriate, target population focused supportive services beyond case management are provided, funded and easily accessible to Veterans and well-coordinated with the local VAMC staff.

> **5 points:** Supportive services beyond case management are provided but are limited, primarily off-site, not specific to the target population, unfunded as of application, difficult to access and/or not well-coordinated with VAMC staff.
> **0 points:** There are no supportive services offered beyond VA case management. There is not a demonstrated relationship or coordination with the VAMC.

**Responses to the supportive services section must not exceed** 3 pages with 1 inch margins and Arial font, minimum size 11.

**Failure to address the *Supportive Services* scored factor is considered a non-curable deficiency and will result in the application being removed from the competition.**

d. <u>Housing First</u>: As stated in Section 5.c. of this Notice, the project must comply with *Housing First*. Applications should include occupancy policies or statements of purpose from the project owner that clearly indicate how the principles of *Housing First* will be incorporated into the admission of Veterans and the provision of any supportive services provided by the project owner.

> **10 points:** Occupancy policies or statements of purpose specifically do not require being clean and sober upon admission or to maintain their housing. Submitted policies will also demonstrate how negative exits will be avoided; how a respectful, warm, and compassionate environment for Veterans to live in will be created; and how a recovery oriented environment will be created.
> **0 points:** Submitted documentation does not reflect a commitment to Housing First, as outlined in the 10 point category

**Failure to address the *Housing First* scored factor is considered a non-curable deficiency and will result in the application being removed from the competition.**

e. <u>Relative Need</u>: **Number of Veterans experiencing homelessness**
This factor will be rated by HUD and VA based on an analysis of homeless veteran data, provided by local Continuums of Care and VAMCs in the geographic area of the PBV project. Level of need will be determined by the number of homeless veterans, with an emphasis on chronically homeless veterans, in the project's geographic area and the number of permanent supportive housing resources in the area available to address the need. HUD and VA will then divide the applications into three levels of need based on the available data. **Applicants are not required to provide any information in response to this factor.**

> **30 points:** Very high need is determined.
> **15 points:** High need is determined.
> **5 points:** Medium need is determined.

9

    f. **Relative Need: Affordable Housing**
This factor will be rated by HUD and VA based on the availability of affordable housing resources in the neighborhood of the proposed project. **Applicants are not required to provide any information in response to this factor.**

        **15 points:** Area with low availability of affordable housing
        **0 points:** Area without low availability of affordable housing

7. **PBV Requirements.** All projects must be selected (see Section 4 of this notice), developed, and operated in accordance with the PHA's application, PBV program requirements found at 24 CFR part 983, Implementation of the HUD-VASH Program (Operating Requirements) published in the *Federal Register* on March 23, 2012, the requirements found in section 3 of Notice PIH 2011-50 *(Project-basing of HUD-VASH Vouchers)* and Notice PIH 2011-54 *(Guidance on the PBV Program)* or any successor notices. **If a PHA applicant requires a waiver of any of the requirements noted above, it must submit the waiver request with its application.**

8. **Nondiscrimination Requirements.** All projects must comply with the nondiscrimination provisions of Federal civil rights laws, including but not limited to the Fair Housing Act, Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act, and Titles II or III of the Americans with Disabilities Act, as applicable.

8. **Vacant Units.** In regard to vacant units, if any contract units have been vacant for a period of 120 days or more since owner notice of vacancy (and notwithstanding the reasonable good faith efforts of the PHA to fill such vacancies), the PHA may give notice to the owner amending the HAP contract to reduce the number of contract units that have been vacant for such period. Any units not assisted under a HAP contract may be marketed and occupied as the owner determines. The PHA will no longer receive administrative fees for any units removed from the PBV HAP contract. Please reference 24 CFR 983.254(b).

9. **Selection of Applications.** Applications will be jointly reviewed by HUD and VA and selected in order of points awarded until all funding is exhausted. If, at the end of the selection process, two or more applications have tied scores and there is not enough funding to select all of the tied-score applications, selection will be based on this order: (1) Score for Relative Need: Number of Veterans experiencing homelessness; (2) if scores are still tied, the score for Relative Need: Affordable Housing; (3) if the scores are still tied, the score for Participation in the Enhanced Use Lease (EUL) Program; (4) if scores are still tied, the score for Project Readiness; (5) if the scores are still tied, the score for Supportive Services; (6) if the scores are still tied, the score for *Housing First*. If there are still tied scores remaining after these tiebreakers have been applied, the application/applications selection will be based on a lottery drawing.

10

10. **Information Contact.** Inquiries about this notice should be directed to Phyllis Smelkinson (Phyllis.A.Smelkinson@hud.gov) or Darrin Dorsett (Darrin.C.Dorsett@hud.gov) in the Housing Voucher Management and Operations Division, Office of Public Housing and Voucher Programs.

11. **Paperwork Reduction Act.** The information collection requirements contained in this Notice have been approved by the Office of Management and Budget (OMB) under the Paperwork Reduction Act (PRA) of 1995 (44 U.S.C 3520). In accordance with the PRA, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB control number. The active information collections contained in this Notice have been approved under the PRA OMB Control Number 2577-0169.

/s/
Lourdes Castro Ramirez
Principle Deputy Assistant Secretary
for Public and Indian Housing