| | | |
|---|---|---|
| FREEDOM'S PATH AT DAYTON, | : | Case No. 3:16-cv-466 |
| Plaintiff, | : : | District Judge Walter H. Rice |
| vs. | : : | Magistrate Judge Sharon L. Ovington |
| DAYTON METROPOLITAN HOUSING AUTHORITY, | : : : : | |
| Defendant. | : | |

---

# DECISION AND ENTRY

---

## I.      Introduction

Plaintiff Freedom's Path at Dayton brings this action alleging Defendant Dayton Metropolitan Housing Authority (DMHA) d/b/a Greater Dayton Premier Management (GDPM) "blocked funding for and financing of 60 units of project-based funded affordable housing for veterans …" in violation of the American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*., and the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.*

This case is presently before the Court upon Defendant's Motions for Protective Orders (Doc. #s 27, 28), Plaintiff's Responses in Opposition (Doc. #33, 34), Defendant's Reply (Doc. #35), Plaintiff's Motion to Compel (Doc. #29), Defendant's Response in Opposition (Doc. #32), and Plaintiff's Reply (Doc. #36).

## II.      Background

To understand the parties' discovery disputes requires a brief look into the history

of the case. Plaintiff's goal is to use Veterans Affairs Supportive Housing (VASH) project-based rental assistance to house veterans, most of whom are disabled, in a development known as Freedom Path-Dayton VA on the VA Medical Center's campus in Dayton, Ohio. *Id*. at ¶s 25, 28. To reach this goal, Plaintiff needs Defendant's support "because only [Public Housing Authorities] such as GDPM may apply for a VASH allocation." *Id*. at ¶27.

On April 9, 2013, GDPM's Interim Chief Executive Officer, Alphonzio Prude, sent Defendant a letter extending GDPM's "support for Plaintiff's new development on the campus of the VA Medical Center and committed thirty-three … project-based vouchers." *Id*. at ¶28. Plaintiff understands this as GDPM's initial affirmative commitment to support Plaintiff's efforts to obtain VASH financing. (Doc. #6, *PageID* #53, ¶29). But since this initial commitment, GDPM "has balked at providing continued support to Plaintiff." *Id*. at ¶30.

In December 2015, Plaintiff asked GDPM to apply for project-specific, project-based VASH vouchers on Plaintiff's behalf. Defendant declined to do so and, instead, "proposed applying for VASH Project-Based Rental Assistance on behalf of itself…." *Id*. at ¶s 31-32. "By applying for VASH [assistance] … on its own behalf … and by not applying in a timely manner for Plaintiff's specific, project-based VASH vouchers, GDPM jeopardized HUD's award of 25 points that would give Plaintiff enough points for its project to be selected …." *Id*. at ¶s 31-32. According to Plaintiff, Defendant GDPM provided "various inconsistent, mistaken, or shifting rationales for its indecision…." *Id*. at ¶33. Plaintiff alleges, for example, GDPM explained, in part, that Prude's letter was

inconsistent with federal law, and GDPM "has already exceeded its overall allocation of vouchers (this in incorrect—a HUD VASH voucher waiver to the cap is available)[.]" *Id.*

On September 2, 2016, Plaintiff's counsel sent a detailed letter to GDPM asking it to apply to HUD on Plaintiff's behalf for 60 VASH vouchers before the impending September 9, 2016 deadline. *Id.* at ¶34 and Exhibit B, *PageID* #64. Plaintiff asked Defendant to "[p]lease treat this as a request for reasonable accommodation under the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act, and take whatever steps necessary to accommodate our request...." *Id.* Plaintiff asserts that GDPM denied the requested accommodation. (Doc. #6, *PageID* #54, ¶34).

Plaintiff seeks (1) declaratory relief concluding that GDPM violated the FHA and ADA; (2) an Order mandating GDPM to apply to HUD on Plaintiff's behalf for VASH project-based rental assistance or, alternatively, to grant Plaintiff a reasonable accommodation; (3) preliminary and permanent injunctions prohibiting GDPM from violating the ADA and FHA; and damages "for the harm it experienced as a result of GDPM's discriminatory and dilatory practices." *Id.* at ¶60.

## III.   <u>Standard of Review</u>

Under the Federal Rules of Civil Procedure, the scope of discovery is "traditionally quite broad." *Lewis v. ACB Bus. Servs, Inc.,* 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir. 1970)).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

> information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be
> admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  But, "this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991).

A party may file a motion to compel discovery when a deponent fails to answer a question under Rules 30 or 31.  Fed. R. Civ. P. 37(a)(3)(B).  "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."  *Mayer v. Allstate Vehicle & Prop. Ins. Co.,* No. 2:15-cv-2896, 2016 WL 1632415, at *2 (S.D. Ohio Apr. 22, 2016) (Deavers, M.J.), *objections overruled*, 2016 WL 2726658 (S.D. Ohio May 10, 2016) (Marbley, D.J.) (quoting *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, M.J.); *Clumm v. Manes*, No. 2:08-cv-567 (S.D. Ohio May 27, 2010) (King, M.J.)); *see also United States ex rel. Shamesh v. CA, Inc.,* 314 F.R.D. 1, 8 (D.D.C. 2016) ("In cases where a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is within the scope of discoverable information under Rule 26.").  If the proponent meets its initial burden, then "the party resisting production has the burden of establishing that the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm."  *Pillar Title Agency v. Pei,* No.

2:14-cv-525, 2015 WL 2238180, at *3 (S.D. Ohio May 12, 2015) (Kemp, M.J.) (citing *Vickers v. Gen. Motors Corp.,* No. 07-2172 M1/P, 2008 WL 4600997, at *2 (W.D. Tenn. Sept. 29, 2008)).

When a party seeks to limit discovery, it may file a motion for protective order. Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...." "To justify restricting discovery, the harassment or oppression should be unreasonable, but discovery has limits and ... these limits grow more formidable as the showing of need decreases." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2036 (3d ed. 2012)) (internal quotation marks omitted). To prevail on a motion for protective order, the party must "show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable." *Bros. Trading Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016) (Litkovitz, M.J.) (quoting *Mckinney/Pearl Rest. Partners, L.P.,* 322 F.R.D. 235, 242) (N.D. Tex. 2016)).

## IV.  Discussion

### A.  Protective Orders

Defendant DMHA filed two motions for protective orders barring the depositions of five individuals. In its first motion, Defendant DMHA sought a protective order barring the deposition of its former interim CEO, Jeff Rieck. (Doc. #27). District Judge

Walter H. Rice overruled Defendant's Motion for Protective Order Barring the Deposition of Jeff Rieck (Doc. #27) as moot.

In its second motion for protective order, Defendant DMHA seeks to bar the depositions of third-party witnesses Alphonzio Prude, De Carol Smith, Phyllis Smelkinson, and Raymond Keyser. Defendant asserts that (1) the depositions are irrelevant to any claim or defense; (2) the depositions would subject DMHA to severe undue burden and expense; and (3) none of the depositions meet the proportionality requirement of Rule 26(b)(1). (Doc. #28).

        i.   <u>Relevance under Rule 26(b)(2)</u>

Defendant asserts that the deposition of Mr. Prude—a former interim CEO of DMHA—is "largely irrelevant" because his "only involvement in the events giving rise to Plaintiff's lawsuit pertains to the letter that Prude authored in his capacity as interim CEO of DMHA in April 2013 expressing the agency's purported support for Plaintiff's request for vouchers for its housing project." (Doc. #28, *PageID* #227). Defendant claims to be "categorically barred [from] satisfying Plaintiff's reasonable accommodation request through use of the Prude letter as a matter of law." *Id.* at 228. The law Defendant refers to is 24 C.F.R. § 983.51. And, this requires some additional information: Under 24 C.F.R. § 983.51(b), there are two methods by which a public housing authority (PHA) can select project-based voucher (PBV) proposals: (1) request PVB proposals; or (2) rely on previous competition. A public housing authority—such as Defendant in the present case—must have an administrative plan that describes "the

procedures for owner submission of PBV proposals and for PHA selection of PBV proposals." *Id.* § 983.51(a).

Defendant asserts that its administrative plan indicates it may only select project-based voucher proposals using the *first* method. (Doc. #28, *PageID* #s 228, 253-56). Thus, according to Defendant, because "Plaintiff's attempt to utilize Prude's letter to obtain vouchers for its housing project involved the issuance of vouchers through the second method …," and "because awarding Plaintiff housing vouchers through the use of the Prude letter would have violated federal HUD regulations, it is beyond dispute that the letter is completely irrelevant to Plaintiff's sole claim in this case that DMHA improperly refused to satisfy Plaintiff's accommodation request." *Id.* at 229.

Plaintiff asserts that this is merely one of Defendant's "various inconsistent, mistaken, or shifting rationales for its inactions." (Doc. #33, *PageID* #710). Plaintiff argues that, because Defendant's administrative plan requires Defendant to comply with all HUD regulations and HUD regulations allow two methods of selection of PBV proposals, Defendant could rely on the second method for selecting PBV proposals. And, because Plaintiff's previous competitive processes satisfy this second method, awarding Plaintiff housing vouchers through Mr. Prude's letter would not violate HUD regulations.

Further, if Defendant could not—under its administrative plan at that time—select Plaintiff's PVB proposal, Defendant could amend its administrative plan. And, indeed, Defendant did. In October 2016, Defendant's Board approved changes to its administrative plan to include the second method for selecting PBV proposals. (Doc. #29, *PageID* #304). HUD approved the changes in April 2017. *Id.*

Plaintiff alleges that through Mr. Prude's letter, Defendant "extended its support for Plaintiff's new development on the campus of the VA Medical Center and committed thirty-three (33) project-based vouchers." (Doc. #6, *PageID* #53). This commitment is at the heart of Plaintiff's claims. And, Mr. Prude, as Defendant's interim CEO at the time of this commitment, likely has relevant and thus discoverable information about Plaintiff's claims.

Defendant contends that the deposition of Ms. Smith—an Enhanced Use Lease Project Manager at the United States Department of Veterans Affairs—is "largely irrelevant." *Id.* at 227. Ms. Smith's "involvement in the events giving rise to this lawsuit is limited to her correspondence with DMHA and Plaintiff's representatives regarding the status of DMHA's response to Plaintiff's accommodation request." *Id.* But, Defendant argues, "any testimony provided by Smith regarding her conversations and interactions with DMHA would constitute inadmissible hearsay, and as such cannot … be used to support either of the causes of action asserted by Plaintiff against DMHA in this action." *Id.*

Given Defendant's assertion that "Plaintiff's sole claim in this case" is "that DMHA improperly refused to satisfy Plaintiff's accommodation request," the deposition of Ms. Smith—who, as Defendant claims, was involved with Plaintiff's accommodation request—seeks information relevant to Plaintiff's claim. Defendant's argument that Ms. Smith's testimony is not relevant because it would constitute inadmissible hearsay lacks merit for discovery purposes: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P 26(b)(1).

Defendant asserts that depositions of Ms. Smelkinson—a Housing Program Specialist at HUD—and Mr. Keyser—General Counsel for HUD—"must be barred due to these two individuals' lack of personal knowledge regarding *any* facts underlying the [present] lawsuit." (Doc. #28, *PageID* #s 223, 226). Defendant insists that neither was "involved in any of the events giving rise to Plaintiff's action relating to Plaintiff's accommodation request for an award of vouchers for Plaintiff's housing complex, or DMHA's handling of and response to Plaintiff's accommodation request." *Id.* at 226.

Plaintiff alleges that Ms. Smith consulted Ms. Smelkinson on whether Plaintiff was disqualified from the HUD VASH NOFA (notice of finding availability) process. *Id.* And, Ms. Smelkinson "reportedly told the VA VASH person, De Carol Smith, that, contrary to Defendant's assertion, Plaintiff was eligible to partner with Defendant in the NOFA. (Doc. #33, *PageID* #715).

Likewise, Ms. Heapy—the current CEO of Defendant DMHA—stated that Mr. Keyser, HUD general counsel, agreed with the opinion of Gordon Black, a low-level HUD official, who said that she could not "'honor' the original commitment of 33 vouchers to Plaintiff 'without going through the necessary RFP [competitive] process." *Id* at 713-15 (citation omitted); *see* Doc. #29, *PageID* #317. But, according to Plaintiff, its attorney, Orlando Cabrera, spoke to Mr. Keyser, and he "said that there were a number of ways that DMHA could partner with Plaintiff, including amending its Administrative Plan." *Id.* at 714. As explained above, "DMHA's Administrative Plan was amended by its Board in October or early November of 2016, and approved by HUD in April 2017 to

specifically include selection based on previous competition ….” *Id.* at 714, n. 4 (citing Heapy Depo. Tr. At 107-08).

In other words, Ms. Smelkinson and Mr. Keyser were allegedly involved—to some degree—in the facts giving rise to the present lawsuit. And, Plaintiff asserts, Ms. Smith, Ms. Smelkinson, and Mr. Black all possess information regarding whether Defendant could lawfully honor its initial commitment of thirty-three project-based vouchers and/or whether Defendant could lawfully grant Plaintiff's request for reasonable accommodation. Therefore, their depositions search for relevant and discoverable information about Plaintiff's claims.

Further, Plaintiff alleges that “[t]he historical background of [Defendant’s] actions, the sequence of events, [Defendant’s] departures from the normal procedural sequence or substantive criteria all reflect intent to discriminate.” (Doc. #6, *PageID* #54). Accordingly, the background—including Mr. Prude’s initial commitment letter, Defendant’s and Plaintiff's consultation with HUD employees, and HUD employee’s discussions with VA employees—might or might not shed light on the merits of Plaintiff's claims. Consequently, the information Plaintiff seeks by deposing Mr. Prude, Ms. Smith, Ms. Smelkinson, and Mr. Keyser is discoverable

    ii.   Proportionality

Under Federal Rule of Civil Procedure 26(b)(1), discovery must be “proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties’ relative access to relevant information, the parties’

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Importance of the Issues at Stake*

Plaintiff correctly asserts that the issues at stake in the present case are important: "They involve housing for homeless veterans, many of whom are disabled due to their service to this country. This case implicates important national policies about eradicating homelessness, especially for veterans, and providing permanent housing for them as proposed by Plaintiff." (Doc. #33, *PageID* #716). Defendant does not argue to the contrary.

*Amount in Controversy*

Plaintiff validly contends that the amount-in-controversy factor weighs in its favor. "Plaintiff's damages expert opines that DMHA's actions caused Plaintiff, and more importantly the veterans, to lose more than $15,000,000 in lost housing and overlay services." *Id*. Defendant does not suggest otherwise.

*Parties' Relative Access to Relevant Information*

It is likely that Defendant has, or has access to, most or all of the information Plaintiff seeks. Thus, this factor falls in Plaintiff's favor.

*Parties' Resources*

Defendant contends that the parties'-resources factor weighs in favor of barring the depositions. "DMHA is a public housing agency funded solely by taxpayer dollars. Thus, DMHA has limited resources as it relates to defending against Plaintiff's claims in this case, as each dollar spent on defending this meritless action is a dollar that cannot be

put toward providing affordable housing to the residents of Dayton." (Doc. #28, *PageID* #233).

Plaintiff contends that the parties' resources are the same. "Defendant is being defended by an insurance defense firm and has millions of dollars in potential coverage. Its annual budget is $45,000,000." (Doc. #33, *PageID* #716) (citing Heapy Depo. Tr. at 10).

Without additional information about the parties' resources—which the record presently lacks—this factor favors neither party.

*Importance of the Discovery in Resolving the Issues*

Defendants argue that none of the depositions "are in any way necessary or otherwise important to resolving the sole dispute at issue in this lawsuit - whether DMHA improperly declined to satisfy Plaintiff's accommodation request regarding the issuance of vouchers for its housing complex." (Doc. #28, *PageID* #233).

Plaintiff disagrees, asserting, "The discovery is necessary for Plaintiff's anticipated summary judgment motion. The witnesses all have important information that is directly relevant to whether Defendant improperly employed shifting rationales for denying Plaintiff's request for housing vouchers." (Doc. #33, *PageID* #s 716-17).

As explained in greater detail above, these four individuals were involved with the events underlying Plaintiff's claims and likely have information regarding whether Defendant improperly employed shifting rationales for denying Plaintiff's request for the housing vouchers.

*Whether the Burden or Expense of the Proposed*
*Discovery Outweighs Its Likely Benefit*

Defendant argues that "all four depositions would subject DMHA to severe undue burden and expense." (Doc. #28, *PageID* #230). According to Defendant, the distant depositions of Ms. Smith and Ms. Smelkinson (in Washington, D.C.), Mr. Prude (in Michigan), and Mr. Keyser (in Cleveland) "would force [Defendant] to incur both air [or other] travel and overnight lodging expenses …." *Id.* at 231. In addition, Defendant "would incur substantial additional litigation expenses in having to prepare for and attend these depositions, none of which will produce any tangible benefit for either of the parties involved in this action." *Id.* Defendant asserts that Plaintiff will receive "little—if any—benefit" because the witnesses "possess scant knowledge of facts or evidence that would assist Plaintiff …." *Id.* at 232.

Plaintiff insists, however, that Defendant's "counsel is located in Cincinnati, which has regular non-stop service to the Washington, D.C. area where Smelkinson and Smith are located." (Doc. #33, *PageID* #715). It also has frequent non-stop flights to Cleveland, where Mr. Keyser is located, and to Chicago, near where Plaintiff intends to depose Mr. Prude. *Id.* at 715-16.

Plaintiff notes that it scheduled the depositions of Mr. Keyser and Gordon Black, a low-level HUD official, on the same day in Cleveland. *Id.* at 717, n.6. Defendant did not seek a protective order barring the deposition of Mr. Black. *Id.* And, if Defendant had agreed to the deposition of Mr. Keyser on the same day as Mr. Black, Defendant would not have incurred significant additional expenses.

Defendant bears the burden of establishing good cause for a protective order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (quoting *Avirgan v. Hull,* 118 F.R.D. 252, 254 (D.D.C. 1987)) (internal quotation marks omitted); *see* Fed. R. Civ. P 26(b)(1) advisory committee's note (2015) ("A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."). Defendant's broad allegations of "significant travel expenses" and "substantial additional litigation expenses" suffice to show it will suffer undue burden or expense and do not establish good cause for a protective order.

In sum, the balancing of these factors weighs in favor of allowing the depositions of Mr. Prude, Ms. Smith, Ms. Smelkinson, and Mr. Keyser. Additionally, Plaintiff has shown that it seeks information from their depositions that is relevant to its claims and proportional to the needs of the case. Accordingly, Defendant's Motion for Protective Order is denied.

### B.     Motion to Compel

Plaintiff's Motion to Compel Discovery and Request for Attorneys' Fees and Expenses asks the Court for an order compelling Ms. Heapy's deposition testimony and admonishing defense counsel to refrain from speaking and coaching objections, instructing witnesses not to answer questions, and making baseless objections. (Doc. #29).

Under Federal Rule of Civil Procedure 30, "An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

### i. Mr. Freudiger's Objections

Plaintiff asserts, "Mr. Freudiger made at least 17 other speaking objections that suggested to his client how to answer questions." (Doc. #29, *PageID* #259) (citations omitted). Further, "In 20+ instances, Mr. Freudiger instructed Ms. Heapy not to answer even though no claim of privilege had been raised or was implicated." *Id.* at 262 (citations omitted).

Plaintiff asserts that opposing counsel's statements such as "if you can" or "if you know" are suggestive and, therefore, in violation of Rule 30. For example, after noting his objection, Mr. Freudiger instructed Ms. Heapy to respond:

> Q. Does the Americans with Disabilities Act apply to your
>     policies and actions?
> MR. FREUDIGER: Objection. You can answer *if you know*.
> THE WITNESS: That's a legal determination. I don't know.

*Id.* at 314 (emphasis added).

Defendant disagrees: "this statement merely patterns the extremely common principal followed almost uniformly by all litigants in both state and federal court that deponents should not guess or speculate as to their deposition answers." (Doc. #32, *PageID* #681).

This is why astute counsel prepares witnesses—before depositions begin—to testify about their personal knowledge rather than to guess or speculate. Defendant is correct that deponents should not guess or speculate as to their deposition answers. Nevertheless, assuming this practice is widespread in state and federal courts, there is no valid reason why Defendant's counsel would need to repeatedly interrupt the deposition questioning of any individual—here, Ms. Heapy—who has been an attorney for nearly fifteen years. Indeed, at a minimum, Defendant's "counsel would do well to avoid using this phrasing in the future, as it can plausibly be[] seen as coaching [the] witness. It is the attorney's job to make an objection and then stop talking. If the deponent does not know how to answer a question, he or she may state as much, but it is not appropriate for his or her attorney to push him or her in that direction." *Pogue v. NorthWestern Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *11 (W.D. Ky. July 18, 2017).

Plaintiff also points to multiple instances where Mr. Freudiger objected and then suggested a response.

> Q. So would it be fair to say … that there would be minutes … of the meeting where Mr. Prude was terminated, but that those may or may not be available under the public record law depending upon whether the meeting was open or closed?
> MR. FREUDIGER: Yeah, I have to object. *I don't think she's going to know that.*

> MR. GREEN: Well, I'm asking her a question. It's not for
> you to testify.
> MR. FREUDIGER: Well, it's beyond the purview of the
> topics. You're asking a question that probably needs to
> be asked of her general counsel. She is hired by the
> board. You can answer if you know. If you do not
> know, then say you do not know.
> THE WITNESS: Can you repeat the question?
> (Record read.)
> THE WITNESS: I do not know the answer to that.

(Doc. #29, *PageID* #327) (emphasis added). Rather than allowing Ms. Heapy to respond

to—or ask for clarification of—Mr. Green's questions, Mr. Freudiger expressed his own

opinions:

> Q. What part of the regulations did Orlando Cabrera say that
> you could ignore?
> A. He didn't specifically state which ones could be -- what he
> said was as long as the administrative plan says just a
> blanket statement that you will comply with all HUD
> rules and regulations, that we didn't have to follow
> what was in our administrative plan.
> Q. Is that because the HUD regulations trumped your
> administrative plan?
> MR. FREUDIGER: Objection.
> BY MR. GREEN:
> Q. Is that because the HUD regulations controlled your
> administrative plan?
> MR. FREUDIGER: Objection, vague. *It's not clear whether
> you're talking about whether Cabrera said that or
> you're asking for her legal opinion.*

*Id.* at 324 (emphasis added). Mr. Freudiger's comments are improper under Rule

30(c)(2). *See Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No.

2:09-CV-1081, 2013 WL 6632678, at *15 (S.D. Ohio Dec. 17, 2013) ("The Court

strongly disapproves of defense counsel's efforts to interject [defendant] positions into

the course of plaintiff's deposition inquiry. Certainly, [defendant] has a right to attempt

to clarify the witness' testimony, if it perceives a need to do so, but that attempt must await the completion of plaintiff's inquiry.); *Cullen v. Nissan N. Am., Inc.*, No. 3-09-0180, 2010 WL 11579750, at *6 (M.D. Tenn. Feb. 2, 2010) ("[I]t is not proper for counsel for the deponent to ask the deposing attorney to clarify the question; that is the responsibility of the deponent.").

Notably, during Ms. Heapy's deposition, Mr. Freudiger declared, "I can instruct my witness. Speaking objections -- *we all know what the federal rules say*. I have been less vocal than you were. So I'm permitted to instruct the witness whether she can answer or not." (Doc. #29, *PageID* #286) (emphasis added). And shortly thereafter, "I have a right to tell my witness that she can answer a question." *Id.*

Mr. Freudiger's interpretation of "what the federal rules say" is incorrect. He does not have the right to tell his witness that she can answer a question. Indeed, all he can do is state a concise, nonargumentative, and nonsuggestive objection on the record and instruct his witness not to answer in the limited circumstances laid out in Rule 30(c)(2). *See Montiel v. Taylor*, No. 3:09-CV-489, 2011 WL 1532529, at *3 (E.D. Tenn. Apr. 21, 2011) ("Rule 30(c)(2) allows non-examining counsel at a deposition to do one of two things: (1) listen and (2) make objections.").

### ii.    The CEOs Prior to Ms. Heapy

Plaintiff asserts that Defendant's counsel improperly instructed Ms. Heapy not to respond to questions about Mr. Prude's application for unemployment. (Doc. #29, *PageID*# 264). On March 23, 2018 (after Ms. Heapy's deposition), at Plaintiff's request, the Court held an informal telephone conference regarding, in part, the termination of

Alphonzio Prude's employment with Defendant. Plaintiff reported that, although Defendant provided Mr. Prude's employee file, his file did not include Defendant's response to Mr. Prude's application for unemployment. This Court found that this evidence was relevant, therefore discoverable, and directed Defendant to investigate whether there was a response to Mr. Prude's application and, if there was, produce it. If Defendant could not produce the response, then Defendant must certify that it could not be located. It appears that Defendant failed to follow the Court's instruction.

Accordingly, Defendant must, within one week of this Order, produce its response to Mr. Prude's application for unemployment.

Plaintiff also notes that Mr. Freudiger—objecting on the basis of "pending litigation"—instructed Ms. Heapy not to answer questions about why Danielle Wright and Jeff Rieck, former CEOs, left DMHA.

Defendant does not suggest that "pending litigation" is a valid ground for instructing a deponent not to answer. Instead, Defendant insists that Plaintiff's questions were "wholly improper" because Ms. Wright and Mr. Rieck's prior employment are "wholly irrelevant" to the present case. (Doc. #32, *PageID* #s 689-90). Defendant's argument misses the mark: Rule 30(c)(2) requires a deponent to continue her testimony over objection unless she has asserted a privilege, is enforcing a limitation ordered by the court, or to present a motion under Rule 30(d)(3). "Objecting on the basis of relevance does not constitute one of these exceptions." *Grider v. City of Russell Springs*, No. 1:05-CV-137, 2010 WL 4683748, at *2 (W.D. Ky. Nov. 12, 2010).

Accordingly, Plaintiff is permitted to send written deposition questions to Ms.

Heapy to which she must respond within two weeks after she receives them.

### iii. Defendant's Administrative Plan and HUD Regulations

Next, Plaintiff asserts that Defendant's counsel improperly objected to questions concerning Defendant's Administrative Plan and HUD regulations. On several occasions, Mr. Freudiger objected and instructed Ms. Heapy not to respond on the grounds that the question called for a legal conclusion or for her to interpret law.

> BY MR. GREEN:
> Q. Is there any HUD authority or rule that requires an expiration date for the … April 9th, 2013, commitment vouchers?
> MR. FREUDIGER: Again, objection, legal conclusion, beyond the scope of the topic for the 30(b)(6). *She can't answer that.*
> BY MR. GREEN:
> Q. Are you aware of any HUD authority or HUD rule that requires an expiration date for Mr. Prude's 2013 letter committing to 33 units of PBRA?
> MR. FREUDIGER: Same objection, same instruction.

(Doc. #29, *PageID#* 317) (emphasis added).

Mr. Freudiger stopped her from answering questions as the Rule 30(b)(6) designee or as an individual.

> Q. Would you agree as CEO that your organization is required to interpret your administrative plan consistently with HUD regulations?
> MR. FREUDIGER: Objection, legal conclusion, beyond the scope of the notice of taking 30(b)(6).
> MR. GREEN: I'm asking her as an individual.
> MR. FREUDIGER: Well, she cannot give a legal opinion as an individual.
> BY MR. GREEN:
> Q. As a member of management, do you agree that you need to interpret your administrative plan consistently with HUD regulations?

MR. FREUDIGER: Objection.

MR. GREEN: Go ahead and answer.

THE WITNESS: Can you repeat the question again?

(Record read.)

THE WITNESS: We have to write our administrative plan taking into consideration the regulations.

BY MR. GREEN:

Q. Okay. I asked you the question are you required to interpret your administrative plan consistently with federal regulations?

MR. FREUDIGER: Well, she answered to the best of her ability, and you're asking her if she is required to interpret --

MR. GREEN: No.

MR. FREUDIGER: -- or if GDPM is required to interpret, so I don't think she can answer that question.

MR. GREEN: She said she was required to write the administrative plan.

MR. FREUDIGER: I know what she said, but she's not going to answer your next question.

MR. GREEN: Okay. So you're directing her not to answer the last question about interpretation?

MR. FREUDIGER: Yeah.

MR. GREEN: Okay.

*Id.* at 324-25.  And he stopped some questions without providing a reason:

Q. Okay. As CEO of GDPM, is it your understanding that federal law trumps state and local law?

MR. FREUDIGER: Objection.  That is still a legal conclusion and beyond the scope of the 30(b)(6).

MR. GREEN: It's entirely within the scope.

MR. FREUDIGER: No, it's not.

MR. GREEN: I asked her for the reasons, and she stated that the administrative plan did not provide for something that HUD regulations provided for, so I'm trying to explore that.

MR. FREUDIGER: Your topic said the factual basis for the refusal.  So obviously she can testify to the reasons that she gave your client as to her understanding.  But you asked her a general question about whether federal law trumps state law.  That's entirely outside the scope of your topic or the reasons that she has ever given.

> MR. GREEN: Okay.
> MR. FREUDIGER: So she can't answer that.
> MR. GREEN: She can answer that as an individual.
> BY MR. GREEN:
> Q. You're a lawyer, correct?
> MR. FREUDIGER: *No, we're not going there. We're not going there.*
> MR. GREEN: So you're instructing her not to answer as an individual who is also a lawyer; is that correct?
> MR. FREUDIGER: Well, I'm instructing her to … not answer, period. I don't have to give you my reasons. She is not answering it.
> MR. GREEN: Okay.

*Id.* at 309-10 (emphasis added).

On at least one occasion, Mr. Freudiger answered the question himself:

> [MR. GREEN:]
> Q. And if HUD regulations specifically allow … that Freedom's Path could qualify for the PBV under (b)(2), that would allow your agency to … treat them as being qualified, correct?
> *MR. FREUDIGER: No.*
> THE WITNESS: No.
> MR. FREUDIGER: Objection. *She cannot answer that question.* You're asking her to interpret the regulations.

*Id.* at 302-03 (emphasis added).

The Rule is clear: "An objection … must be noted on the record, but the examination still proceeds; *the testimony is taken subject to any objection*…. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30. There is no indication from Defendant that any of the exceptions apply. Accordingly, it was improper for Mr. Freudiger to instruct Ms. Heapy not to answer questions on the ground that it called for a legal conclusion.

Under Federal Rule of Civil Procedure 30(b)(6), "a party may name as the deponent a ... corporation ... and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more ... persons who consent to testify on its behalf ….   The persons designated must testify about information known or reasonably available to the organization."  *See Rivet v. State Farm Mut. Auto. Ins. Co.*, 316 F. App'x 440, 447 (6th Cir. 2009).  "A Rule 30(b)(6) deponent testifies as to the knowledge of the corporation and the corporations' subjective beliefs and opinions and interpretation of documents and events."  *Buck v. Ford Motor Co.*, No. 3:08CV998, 2012 WL 601922, at *3 (N.D. Ohio Feb. 23, 2012) (quoting *Hilton Hotels Corp. v. Dunnet,* 2002 WL 1482543, *2 (W.D. Tenn. 2002)) (quotation marks omitted). The corporation has a duty to prepare the witness to answer all questions about the designated topics fully and without evasion.  *U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5227661, at *2 (S.D. Ohio Nov. 20, 2009) (citing *Great American Ins. Co. v. Vegas Constr. Co., Inc.,* No. 2:06-cv-911, 251 F.R.D. 534, 539 (D.Nev. March 24, 2008) ("Counsel has the responsibility to prepare its designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.").

Plaintiff contends that Ms. Heapy failed to adequately prepare as the Rule 30(b)(6) designee.  Specifically, she "failed to look for records concerning the reasons for terminating the employment of former Interim CEO, Alphonzio Prude.  She conducted no

written review of documentation as to the reasons for the termination.  She spoke with only one member of her board."  (Doc. #29, *PageID* #268) (internal citations omitted).

Ms. Heapy testified that, in preparation for her deposition, she spoke to one board member about Mr. Prude's termination and reviewed Mr. Prude's personnel file.  *Id.* at 283-84.  His file did not contain a record of the reasons for his termination.  *Id.*  Ms. Heapy did not, however, review Mr. Prude's "benefits file" because she does not consider it to be part of a personnel matter.  *Id.* at 285.

When asked about "how Mr. Prude came to be terminated," she explained, "He was placed on administrative leave in November and was ultimately fired that following month."  *Id.*  Ms. Heapy did not know if he was given reasons why he was placed on administrative leave and she did not ask anyone.  *Id.*  She testified that she believed there was a board meeting when Mr. Prude was terminated but she was not at the meeting and she did not remember whether it was an open or closed meeting.  *Id.* at 288.  Ms. Heapy knew, based on her previous discussions with the board of directors and general counsel, that Mr. Prude "was fired by our Board of Commissioners for his lack of ability to maintain compliance of the agency and to work within the rules and regulations laid out by HUD.  He also settled a lawsuit without consulting the board."  *Id.* at 282, 284.  The areas of non-compliance included their public records policy and their violence against women policy.  *Id.* at 282.  The lawsuit involved an employment issue brought by Karen Boneski.  *Id.* at 283.  Ms. Heapy did not know "the specific allegations"; the settlement amount; or if Mr. Prude was named individually.  *Id.*  She knew that there were no allegations of sexual harassment or issues with violence against women.  *Id.*

When asked if she knew that Mr. Prude applied for unemployment compensation, she replied, "I believe he did." *Id.* at 284. However, Ms. Heapy did not know what position DMHA took regarding his application and stated that she did not ask anyone. *Id.* At that point, Mr. Freudiger objected, contending

> That's beyond the scope of the topics. She was asked for the personnel and disciplinary reasons and the reasons for his separation discharge or termination. There's nothing in here about DMHA's position in his request for unemployment, and it's totally outside the bounds of any kind of relevancy whatsoever, so she won't be answering any questions on that.

*Id.* at 284.

Mr. Freudiger, however, is not correct on either assertion. Plaintiff's list of Rule 30(b)(6) topics includes "The personnel and disciplinary records of Alphonzio Prude." *Id.* at 276. It is reasonable to think that his application for unemployment and any response by Defendant would be included in Mr. Prude's personnel file. Further, as explained above, DMHA's response is relevant and Defendant must produce a copy of its response to Mr. Prude's application for unemployment compensation or a sworn affidavit stating that it cannot be located.

Although Ms. Heapy could not answer every question concerning Mr. Prude's termination, "the inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation has failed to comply with its obligations under the Rule." *Pogue v. NorthWestern Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8 (W.D. Ky. July 18, 2017) (citing *Janko Enters. v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, *14, 2014 WL 11152378 (W.D. Ky. Apr.

3, 2014)).  Ms. Heapy did adequately prepare for her deposition and was able to provide the reasons for Mr. Prude's termination.

Further, Defendant, in response to Plaintiff's Motion to Compel, provided a sworn affidavit from a Board member, Reverend Wilburt Shanklin.  (Doc. #32, *PageID* #s 704-06).  Rev. Shanklin indicated that the Board discussed Mr. Prude's employment issues during an executive session and no meeting minutes were generated.  *Id.* at 705.  Ideally, Ms. Heapy would have known those details during her deposition.  But, a "30(b)(6) witness is not expected to perform with absolute perfection."  *Pogue*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8 (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012)).

### v.  Reasonable Attorney Fees and Costs

Under Rule 30(d)(2), a court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."

Plaintiff asks the Court to award attorneys' fees—at an hourly rate of $500 per hour—for the time spent preparing the motion to compel.  Plaintiff also asks the Court to order Ms. Heapy and Defendant's employees "to directly and fully respond to questions posed by Plaintiff's counsel unless subject to a valid exception under Rule 30(c)(2); and … order Mr. Freudiger, as counsel for Defendant, to refrain from making speaking objections and comments intended to influence the testimony, such as 'if you know.'" (Doc. #29, *PageID* #270).

Although Defendant's counsel's conduct during the deposition of Ms. Heapy was improper at times, the imposition of sanctions is presently unwarranted because Plaintiff was not ultimately prevented from conducting a "fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

In this contentious case, counsel for both parties "should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests." *Cable & Computer Tech.,* 175 F.R.D. 646, 652 (citations and internal quotations marks omitted); *see also Saria v. Mass. Mut. Life Ins. Co.,* 228 F.R.D. 536, 539 (S.D.W. Va. 2005) ("The integrity of the discovery process rests on the faithfulness of parties and counsel to the rules—both the spirit and the letter. [T]he discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention and … those Rules rely on the honesty and good faith of counsel in dealing with adversaries.") (quoting *Poole v. Textron, Inc.,* 192 F.R.D. 494, 507 (D. Md. 2000)) (citation and internal quotation marks omitted).

**IT IS THEREFORE ORDERED THAT**:

1.  Defendant's Motion for Protective Order (Doc. #28) is denied; and

2.  Plaintiff's Motion to Compel Discovery and Request for Attorneys' Fees and Expenses (Doc. #29) is granted, in part, and denied, in part.

June 13, 2018

s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge