IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAYTON VETERANS
RESIDENCES LIMITED
PARTNERSHIP, d/b/a
FREEDOM'S PATH AT DAYTON,

      Plaintiff,

      v.

DAYTON METROPOLITAN
HOUSING AUTHORITY, d/b/a
GREATER DAYTON PREMIER
MANAGEMENT,

      Defendant.

    :

    :

    :

    :

Case No. 3:16-cv-466

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN
PART DAYTON METROPOLITAN HOUSING AUTHORITY'S MOTION
FOR SUMMARY JUDGMENT (DOC. #40); OVERRULING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC.
#41); OVERRULING DAYTON METROPOLITAN HOUSING
AUTHORITY'S MOTION TO STRIKE (DOC. #48); CONFERENCE
CALL SET FOR APRIL 10, 2019, AT 5:00 P.M.

---

Plaintiff, Dayton Veterans Residences Limited Partnership d/b/a Freedom's

Path at Dayton ("Freedom's Path") filed suit against Dayton Metropolitan Housing

Authority d/b/a Greater Dayton Premier Management ("Greater Dayton Premier

Management" or "GDPM"), alleging violations of Title II of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Fair Housing Act of 1968

("FHA"), 42 U.S.C. § 3604. Freedom's Path maintains that Greater Dayton

Premier Management arbitrarily, capriciously and discriminatorily blocked funding

for, and financing of, 60 units of project-based affordable housing for homeless veterans, most of whom are disabled.

This matter is currently before the Court on Greater Dayton Premier Management's Motion for Summary Judgment, Doc. #40, Freedom's Path's Motion for Partial Summary Judgment, Doc. #41, and Greater Dayton Premier Management's Motion to Strike Declaration of Craig Taylor, Doc. #48.

## I.    Background and Procedural History

Plaintiff, Freedom's Path, is a limited partnership formed for the sole purpose of developing and owning 60 units of affordable housing for homeless veterans on the Veteran's Administration's Medical Campus ("VAMC") in Dayton, Ohio.  Craig Taylor, a consultant working with Don Paxton of Communities for Veterans ("CFV"), a real estate development company, headed up the Freedom's Path project.

On December 30, 2011, the Veteran's Administration awarded Freedom's Path a 5-year Enhanced Use Lease ("EUL") for 14 acres of land on the VAMC. Doc. #43-16, PageID##1742-55.  At his deposition, Taylor explained that, to complete the housing project, Freedom's Path then needed to obtain: (1) low income housing tax credits ("LIHTCs") from the Ohio Housing Finance Authority ("OHFA"); and (2) project-based rental assistance from the United States Department of Housing and Urban Development ("HUD").  Doc. #31-1, PageID#520.

To accomplish these tasks, Freedom's Path needed the assistance of Defendant Greater Dayton Premier Management, the federal public housing authority ("PHA") serving the Dayton area. Greater Dayton Premier Management administers several HUD programs, including housing assistance through Sections 8 and 9 of the Housing Act of 1937. Greater Dayton Premier Management also administers HUD's Veterans Affairs Supportive Housing ("VASH") program, which provides rental assistance to veterans. Only a public housing authority can apply for VASH vouchers, which are allocated by HUD based on geographic need and the public housing authority's performance data. Doc. #43-14, PageID#1722. VASH vouchers come in two forms—individual tenant-based rental assistance, and project-specific, project-based rental assistance ("PBRA").

As Craig Taylor explained, individual tenant-based housing vouchers are often useless to homeless veterans because, if a veteran has a criminal record or a history of eviction or lacks the financial means to pay the first and last month's rent, a landlord is unlikely to agree to lease to him. Doc. #31-1, PageID#555. Moreover, in order for Freedom's Path to create a veterans-only housing complex, it needed project-based vouchers ("PBVs"). *Id.* at PageID##584-85.

Although project-based vouchers are also available under Section 8 of the Housing Act of 1937, Freedom's Path preferred VASH project-based vouchers, which combine rental assistance with "wraparound" case management and other clinical services provided by the Veteran's Administration. *Id.* at PageID##512, 584. For this reason, a commitment for VASH project-based vouchers is "the

brass ring for these projects." *Id.* at PageID##579-80. After HUD issues a Notice of Funding Availability ("NOFA"), a public housing authority may apply for VASH project-based vouchers on its own behalf, on behalf of other entities, or both. Doc. #43-14, PageID#1723. If a public housing authority applies on behalf of another entity, this increases the chance that HUD will award the VASH project-based vouchers. *Id.* at PageID#1724. This case stems from Greater Dayton Premier Management's refusal to apply for VASH project-based vouchers on behalf of Freedom's Path.

After obtaining the 5-year lease on the Veteran's Administration's Medical Campus, Freedom's Path applied to the Ohio Housing Finance Authority ("OHFA") for low-income housing tax credits, which are competitively awarded. OHFA requires a commitment from a public housing authority for project-based rental assistance for at least 50% of the proposed units. Because, at that point, Freedom's Path was proposing a 66-unit project, it needed a commitment of 33 project-based vouchers from Greater Dayton Premier Management. Doc. #31-1, PageID#520.

On April 9, 2013, Greater Dayton Premier Management's Interim Chief Executive Officer, Alphonzio Prude, extended support for the Freedom's Path project, committing 33 project-based vouchers "to assist with housing in the newly constructed sixty-six (66) unit building that will provide permanent supportive housing for homeless veterans." Doc. #6-1, PageID#62. These were not VASH vouchers but were to be provided through HUD's Section 8 voucher program.

4

Doc. #33-2, PageID#745. Freedom's Path also received a $1 million promise of a grant from the Veteran's Administration. Doc. #31-1, PageID#541.

Ohio Housing Finance Authority rejected Freedom's Path's application but encouraged it to reapply for low-income housing tax credits at a later date. *Id.* at PageID##531-32.[1] Before reapplying, Freedom's Path worked to build additional community support for the project through the Housing Advisory Board and local government officials. *Id.* at PageID#537. Additional letters of support would increase the chance that Freedom's Path would be awarded low-income housing tax credits. *Id.* at PageID##587, 612-13.

In mid-December of 2015, Kim Powell, Acting Homeless Program Manager of the Dayton Veteran's Administration's Medical Campus, contacted Jennifer Heapy, Greater Dayton Premier Management's new Executive Director,[2] about setting up a meeting with Craig Taylor to discuss the Freedom's Path project. Doc. #40-2, PageID#914. Taylor sought an immediate letter from Greater Dayton Premier Management in support of his request for a letter of recommendation from the Housing Advisory Board. Doc. #31-1, PageID##586-87. He also sought a commitment of VASH project-based vouchers from Greater Dayton Premier

---

[1] Taylor had simultaneously applied for LIHTCs for another veteran's housing project in Chillicothe, Ohio. OHFC awarded LIHTCs to the Chillicothe project, which had to be underway before he could reapply for LIHTCs for the Dayton project. Doc. #31-1, PageID##533-34.

[2] Alphonzio Prude was terminated in December of 2014 for failure to comply with HUD regulations and for settling a lawsuit without consulting the Board of Housing Commissioners. Doc. #33-2, PageID#728.

Management. He hoped that, in the summer of 2016, when HUD issued its next Notice of Funding Availability, Greater Dayton Premier Management would apply for 60 VASH vouchers on behalf of Freedom's Path. Greater Dayton Premier Management could then substitute some of those VASH vouchers for the 33 Section 8 project-based vouchers previously committed by Prude and return those 33 Section 8 vouchers to Greater Dayton Premier Management's pool. Taylor noted that Greater Dayton Premier Management also had unused VASH tenant-based housing vouchers that it could have converted into project-based vouchers. *Id.* at PageID##546-48, 583-86.

Heapy responded that she was willing to talk to Taylor. With respect to Prude's earlier commitment of 33 project-based vouchers, she cautioned, however, that Prude "appears to have been unaware that HUD regulations do not allow the agency to commit project[-]based vouchers outside of the RFP bidding process and [Prude's actions] could result in HUD recapturing all of the subsidy for the project." Doc. #40-2, PageID#913. She took the position that Prude's earlier commitment of 33 project-based vouchers was inconsistent with 24 C.F.R. § 983.51(b), the HUD regulation governing how a public housing authority ("PHA") must select project-based voucher ("PBV") proposals. That subsection of the regulation provides as follows:

> **(b) Selection of PBV proposals.** *The PHA must select PBV proposals in accordance with the selection procedures in the PHA administrative plan.* The PHA must select PBV proposals by either of the following two methods.

> **(1) PHA request for PBV Proposals.** The PHA may not limit proposals to a single site or impose restrictions that explicitly or practically preclude owner submission of proposals for PBV housing on different sites.
>
> **(2) Selection based on previous competition.** The PHA may select, without competition, a proposal for housing assisted under a federal, State, or local government housing assistance, community development, or supportive services program that required competitive selection of proposals (e.g., HOME, and units for which competitively awarded low-income housing tax credits (LIHTCs) have been provided), where the proposal has been selected in accordance with such program's competitive selection requirements within 3 years of the PBV proposal selection date, and the earlier competitively selected housing assistance proposal did not involve any consideration that the project would receive PBV assistance.

24 C.F.R. § 983.51(b) (emphasis added).

During the relevant time period, Greater Dayton Premier Management's Administrative Plan provided for only the first selection method. It stated that "[u]nits selected for project-based assistance will be awarded by a competitive request for proposals ["RFP"] initiated by GDPM." Doc. #42-21, PageID#1081. It is undisputed that, at no time did Freedom's Path submit a proposal in response to an RFP initiated by Greater Dayton Premier Management.

Heapy and Taylor spoke on December 15, 2015. Taylor did not believe that § 983.51(b) was an impediment to his request. He sent her an email message later that day, stating as follows:

> As discussed, attached is the section of the federal regs [§ 983.51(b)] that allows selection of [a] project without going through the RFP process. As I noted, this selection process must be explicitly referenced in your Administrative Plan. I can provide examples of that language that we provided to [other public housing authorities].

Also attached was the last PBRA NOFA for HUD-VASH, issue[d] in June of 2015. We expect another to come out around June, 2016. Under that 2015 NOFA we were awarded 42 vouchers in Helena, MT, 52 in Hines, Illinois and 20 in Kerrville, Texas, utilizing the same federal regulation authority as noted above.

Doc. #40-12, PageID#959.

On December 18, 2015, Heapy responded to Taylor as follows:

I appreciate your willingness to quickly provide me with the information necessary for me to determine if I could author a letter of support. After reviewing the information and a conversation with the agency's general counsel, I am unable to provide the letter. I hope that you understand that this decision is not based on the content of your proposal or the population that you house. The decision was based on the fact that the relevant PIH notice and regulations simply do not allow the housing authority to in any manner commit/support a development without the requisite open bidding process. I appreciate that there [are] potential changes that can be made to our administrative plan that *might* have made the letter possible. However, that language is not currently contained in our plan. As you know any changes are a lengthy process that at a minimum require approval of our Board of Housing Commissioners.

I encourage you to apply to our future PBV requests for proposals. In fact, I am going to make a note that you receive an email notification of such.

Doc. #40-3, PageID#916 (emphasis in original).[3]

That same afternoon, Don Paxton, of Communities for Veterans ("CFV"), emailed Heapy, stating that "[t]here has to be a way to get this done." He noted

---

[3]  The PIH (Public and Indian Housing) NOFAs issued in 2015 and 2016 required a public housing authority to have a selection policy for project-based vouchers in its Administrative Plan *prior to* selecting proposals, and to select those proposals in accordance with that policy and in accordance with 24 C.F.R. § 983.51. Doc. #40-7, PageID#926; Doc. #40-8, PageID#937.

that CFV had overcome similar obstacles in the past with projects in other cities.

Doc. #40-4, PageID#918. Heapy responded, in relevant part, as follows:

> I want to assure you that I, and general counsel, reviewed the relevant PIH notice and regulation you provided regarding the project based VASH vouchers. GDPM shares your passion for housing veterans as evidenced by our continued commitment to the VA and VASH. Therefore, your request was fully reviewed. . . . It is my duty to be vigilant in maintaining GDPM's adherence to HUD rules and regulations. I am completely confident in the agency's general counsel and his ability to read and analyze the applicable rules and regulations. As a result I am unable to provide a letter.

*Id.*

It appears that Heapy and Taylor engaged in further telephone conversations on this matter, and that Taylor then spoke to Paxton. However, the contents of those conversations are not part of the record. On December 21, 2015, Paxton emailed Heapy, stating:

> After reviewing our situation more with the VA and everyone else, we will take you up on your offer to come back in the new year and request an increase in the commitment to cover 100% of the development and work to apply for VASH in the upcoming round with the VA. In the interim, we will simply continue to use the current commitment for 33 units of PBRA in order to complete the last of our funding. Craig will follow up accordingly in January.

Doc. #40-5, PageID#921.

Heapy responded as follows:

> There appears to be a disconnect between what I told Mr. Taylor and what he has communicated to you because there is no offer as you detailed in your email. I communicated to Mr. Taylor that the letter that was written in 2013, is almost two and a half years old and for a previous submission, therefore it can no longer be used as a commitment for this round and is not to be used as such. Additionally, my reference to any potential upcoming project based

vouchers did not include any commitment on my part to partner with his organization for a VASH NOFA. In fact, the regulations do not allow me to make such a commitment unless he is selected as a partner through an open bidding process prior to application. Or if our Administrative Plan allowed for his selection based on a previous competitive process in which the subsidy was not considered. Neither of these factors exists in our scenario. My reference to any future PBV RFP was simply making Mr. Taylor aware that we may solicit applications sometime next year.

*Id.*

Paxton responded that Communities for Veterans had relied extensively on Prude's commitment letter in putting the Freedom's Path project together. He further noted that the letter had no expiration language or terms which allowed it to be unilaterally terminated. He asked that Greater Dayton Premier Management honor the prior commitment. Doc. #42-5, PageID#1009.

That same day, Heapy contacted HUD employee Gordon Black to verify that what she had told Paxton and Taylor was correct. Doc. #40-6, PageID#923. Black confirmed that, under Greater Dayton Premier Management's Administrative Plan, "a PHA is prohibited from honoring a PBV commitment unless they have followed the RFP procedures first." He noted the "very negative consequences" that could result if Greater Dayton Premier Management honored the earlier commitment. Doc. #40-9, PageID#950.

On January 6, 2016, Heapy informed Paxton of her discussion with Black and again advised Paxton not to rely on Prude's letter of commitment. Doc. #42-6, PageID#1012. Paxton objected, again noting that Freedom's Path had based two years of effort and resources on Prude's commitment of 33 project-based

vouchers. He suggested that they work together with HUD officials to find a solution. *Id.*

In February of 2016, Freedom's Path reapplied to Ohio Housing Finance Authority for low-income housing tax credits. Despite Heapy's admonition, it submitted Prude's letter in support of its application. Doc. #30-1, PageID#427. Later that year, Ohio Housing Finance Authority awarded Freedom's Path the requested low-income housing tax credits. Doc. #43-7, PageID#1120. Freedom's Path also obtained a letter of recommendation from the Housing Advisory Board. Doc. #31-1, PageID#605. All that was yet needed was Greater Dayton Premier Management's assistance in obtaining the VASH project-based vouchers.

In an email to Don Paxton on June 22, 2016, Taylor noted that the next Notice of Funding Availability should be announced within the next 30 days. In discussing his previous interactions with Heapy, Taylor stated, "[a]s was done with several other PHA's, these folks need to amend their Admin Plan to be able to award the vouchers to us based on our award through another governmental entity without hav[ing] to go through a competitive RFP process, so we need their cooperation at a couple of levels." Doc. #40-13, PageID##961-62. Taylor noted that the HUD-VASH was "essential" to the project. In his opinion, "we are a shoe-in for getting the vouchers if the PHA will work with us. That said, they were less than cordial, to say the least." *Id.* at PageID#962.

On June 29, 2016, Taylor spoke with Heapy. He then sent an email message to De Carol Smith, the project manager at the Veteran's Administration,

indicating that Greater Dayton Premier Management was "at least considering an application for PBRA once the NOFA comes out for HUD-VASH." Taylor noted, however, that Heapy had raised an issue on which he now sought Smith's guidance. The award of low-income housing tax credits qualified as a previous competition under § 983.51(b)(2). However, under § 983.51(b)(2), a public housing authority could award project-based vouchers based on an earlier competition only if "the earlier competitively selected housing assistance proposal did not involve any consideration that the project would receive PBV assistance." Given that Freedom's Path had relied on Prude's letter, committing 33 project-based vouchers, in applying for the low-income housing tax credits, Heapy had questioned whether this would disqualify Freedom's Path from proceeding under that subsection of the regulation. Doc. #42-7, PageID#1019. The next day, Smith emailed Taylor that she did not believe that this was a problem. *Id.* at PageID#1017.

HUD issued its 2016 Notice of Funding Availability on July 1, 2016, establishing an application deadline of September 9, 2016. Doc. #40-8, PageID##936-37. On August 15, 2016, Taylor informed Heapy via email that Ohio Housing Finance Authority had verified that project-based vouchers were not considered in the decision to award low-income housing tax credits to Freedom's Path. Accordingly, the project was eligible to be submitted for an award of VASH vouchers under §983.51(b)(2). He indicated, however, that, according to De Carol Smith, it did not appear that Greater Dayton Premier Management was willing to

12

sponsor the application. Taylor questioned whether Greater Dayton Premier Management might be willing to apply for the vouchers but defer their administration to another public housing authority. Doc. #42-9, PageID##1029-30.

On August 17, 2016, Heapy responded that Greater Dayton Premier Management would not be applying for the Notice of Funding Availability because it would need to add at least one more employee for which it had not budgeted. In addition, she stated that Greater Dayton Premier Management was dangerously close to its 20% limit on project-based vouchers. She also rejected Taylor's request to defer administration of the vouchers to another public housing authority because it was her understanding that, because Greater Dayton Premier Management would still be the applicant, this would count toward its 20% limit. She indicated, however, that Greater Dayton Premier Management was still reviewing the information. *Id.* at PageID#1029.

On August 22, 2016, Don Paxton again urged Heapy to, at the very least, honor Prude's commitment for 33 project-based vouchers. *Id.* at PageID#1028. On August 23, 2016, Heapy acknowledged his frustration, but again explained that Greater Dayton Premier Management was unable to do so because the regulations simply did not allow it. She explained that Greater Dayton Premier Management had no authority to make a commitment "without the requisite open bidding process or a provision in our administrative plan, which we do not have." *Id.* That same day, Don Paxton emailed Heapy the following:

13

My understanding is that the federal law requires some competition occur prior to the allocation of Project Housing Choice Vouchers. Generally speaking, HUD has always considered the allocation of competitive 9% LIHTCs to a development as meeting that requirement. Notwithstanding a simple amendment to your low income housing plan, the [H]ousing [A]ct of 1937 statutorily permits you to enter into a housing assistance payment contract using HCV without HUD approval. We are a bit perplexed by the current situation because seemingly we have met all of the legal requirements, we have offered to have conversations with all of your various folks that are telling you otherwise and we have been continuously asking for your help to make this project happen since March.

We have a good alternative in place now that would avoid you needing to use any of your Vouchers and instead seek new ones from an upcoming round of VASH which needs to happen in the next two weeks.

We are quickly running out of time and you are leaving us no other recourse but the obvious. We again urge a conversation occur between all of the various stakeholders immediately for everyone's benefit.

Doc. #42-9, PageID##1025-26.

Heapy responded that she was "glad that we are in agreement that vouchers can only be awarded by the completion of a competitive process." She asked Paxton to direct any further questions to Christopher Green, Greater Dayton Premier Management's General Counsel. *Id.* at PageID#1025. Paxton indicated that his attorney would reach out to Mr. Green the next morning. *Id.* at PageID#1025.

On September 1, 2016, Heapy emailed Taylor and Paxton, stating that, although she was still waiting to hear back from several individuals, "we are continuing to evaluate potential options." She asked if they had obtained a letter

of support from the VA to be included with the VASH application. *Id.* at PageID#1027.

Then, on September 2, 2016, Heapy informed Don Paxton that "GDPM will be applying for up to 35 PBV VASH vouchers. If we receive the additional allocation, we will release a public notice of Request for Proposals for which your client, and other developers, can submit for competitive review." *Id.* at PageID##1031-32. In response, Paxton thanked her "for this progress." He noted that the VA would be providing a commitment letter within a few days, which would ensure a high score for the application. He suggested, however, that instead of applying for just 35 vouchers on its *own* behalf, Greater Dayton Premier Management apply for the full 60 units *on behalf of Freedom's Path*, which would allow for an additional 25 points on the application. *Id.* at PageID#1031.

Likewise, Craig Taylor expressed "major concern" to De Carol Smith that Greater Dayton Premier Management was applying for only 35 vouchers and was not specifically designating the Freedom's Path development in its request. He asked her to intercede with the local Veteran's Administration. *Id.* at PageID#1033. Smith explained that Greater Dayton Premier Management probably felt that it could not ask for 60 vouchers without exceeding its limits on project-based rental assistance. *Id.* at PageID#1035. Taylor noted, however, that, according to the Notice of Funding Availability, HUD has the authority to waive the 20% limit on project-based vouchers. *Id.*

Later that day, on September 2, 2016, James Green, counsel for Communities for Veterans, on behalf of Freedom's Path, emailed Greater Dayton Premier Management a letter requesting, for the first time, a "reasonable accommodation" under the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"). Doc. #40-10, PageID##952-53. He noted that the deadline for requesting VASH vouchers was September 9, 2016, just one week away. Greater Dayton Premier Management had failed to honor its previous commitment of 33 project-based vouchers and was now planning to apply for 35 project-based vouchers on its *own* behalf. He accused Greater Dayton Premier Management of providing shifting rationales for refusing to apply for the requested vouchers on behalf of Freedom's Path, including that: (1) Prude's initial commitment was inconsistent with federal law; (2) GDPM had exceeded its limit on project-based vouchers; (3) its Administrative Plan required an Request-for-Proposal process; and (4) Greater Dayton Premier Management's commitment to tenant-based VASH vouchers absolved it of the need to extend project-based vouchers.

Green stated that if Greater Dayton Premier Management's current Administrative Plan did not allow it to rely on a third-party competitive process, it had a duty to amend the Plan to provide the requested accommodation. He asked that Greater Dayton Premier Management apply for 60 project-based VASH vouchers specifically on behalf of Freedom's Path. In the alternative, he asked that Greater Dayton Premier Management provide 25 out of the 33 previously-

committed vouchers, and then seek an additional 35 project-based vouchers from HUD. *Id.*

On September 7, 2016, Greater Dayton Premier Management's General Counsel, Christopher Green, sent a letter denying the requested accommodation. Doc. #40-11, PageID##955-57. He again stated that Prude's commitment letter was contrary to 24 C.F.R. § 983.51 and could not be honored. Green found the requested accommodation to be unreasonable and contrary to law. He noted that, although the federal regulations allowed a public housing authority to select a proposal based on a previous competition, that previous competition could not "involve any consideration that the project would receive PBV assistance." 24 C.F.R. § 983.51(b)(2). Given that Freedom's Path had used Prude's letter to obtain low-income housing tax credits through a competitive process, Green maintained that this option was no longer available. Moreover, the Notice of Funding Availability mandated that Greater Dayton Premier Management comply with § 983.51 and have its selection policy in its Administrative Plan prior to making a selection. Green noted that Greater Dayton Premier Management's Administrative Plan did not contain language that would permit it to award vouchers based on a previous competition. The selection had to be made through a Request-for-Proposal process. *Id.* at PageID#956.

Green further took the position that Greater Dayton Premier Management had no duty to honor Freedom's Path's requested accommodation. He stated that:

GDPM's requirements under the ADA are to ensure individuals with disabilities enjoy full and equal access to GDPM's programs and services. What you are seeking is additional or different substantive benefits in the form of more project-based vouchers for Freedom's Path. That is not an accommodation for individuals needing full and equal access to GDPM's programs or services. Therefore your demand that GDPM apply for a total of 60 VASH vouchers for Freedom's Path is unreasonable.

*Id.* at PageID#957.

On September 9, 2016, in a last-ditch effort, Don Paxton sent an email message to Jennifer Heapy. He noted that, if Freedom's Path did not use its low-income housing tax credits within a specific time frame, they would be lost. He cited the extensive efforts already undertaken to bring the Freedom's Path project to fruition. He again asked Greater Dayton Premier Management to apply for 60 VASH vouchers before midnight that night and then take whatever steps were needed to address outstanding regulatory concerns. Doc. #42-12, PageID##1049-50.

Although Greater Dayton Premier Management applied for 35 VASH vouchers on its own behalf, none was awarded. Doc. #33-2, PageID#771. In October of 2016, the Board of Housing Commissioners of Greater Dayton Premier Management approved an amendment to the Administrative Plan, permitting Greater Dayton Premier Management to select project-based voucher proposals based on prior competition pursuant to 24 C.F.R. § 983.51(b)(2). According to Jennifer Heapy, Greater Dayton Premier Management began drafting the amendment on July 6, 2016, but did not tell Freedom's Path. Doc. #52-1,

PageID#1953; Doc. #33-2, PageID#764. That amendment was approved by HUD in April of 2017. Doc. #33-2, PageID#750.

By that time, it was too late to be of any use to Freedom's Path. Taylor testified at his deposition that the Freedom's Path project is "dead." The low-income housing tax credits have been canceled and, although he could reapply for new tax credits, the 5-year lease for the site has expired and the Veteran's Administration is not willing to extend it. Although lines of communication are still open with the Veteran's Administration and with Ohio Housing Finance Authority, the project simply cannot move forward without project-based rental assistance, which requires Greater Dayton Premier Management's cooperation. Doc. #31, PageID##671-74.

On November 10, 2016, Freedom's Path filed suit against Greater Dayton Premier Management. The Amended Complaint, Doc. #6, asserts violations of the FHA and Title II of the ADA. Freedom's Path maintains that, if Greater Dayton Premier Management had agreed to apply for the VASH vouchers on behalf of Freedom's Path, as requested, Freedom's Path would have been awarded 25 additional points in the competitive bidding process, which would have been enough to virtually guarantee that it would be awarded the project.

Freedom's Path further alleges that Greater Dayton Premier Management's actions reflect an intent to discriminate against disabled persons and have the discriminatory effect of denying disabled veterans meaningful access to affordable housing and equal access to services they need. Freedom's Path maintains that

Greater Dayton Premier Management has unlawfully discriminated against it and its prospective residents by effectively denying necessary financing and by refusing to grant a reasonable accommodation so that Freedom's Path could obtain the necessary VASH vouchers. Freedom's Path seeks damages as well as injunctive and declaratory relief.

The Court previously overruled Greater Dayton Premier Management's Motion to Dismiss, rejecting its claims of lack of standing, failure to state a claim upon which relief could be granted, and lack of ripeness. Docs. ##17, 19. This matter is currently before the Court on three pending motions: (1) Greater Dayton Premier Management's Motion for Summary Judgment, Doc. #40; (2) Freedom's Path's Motion for Partial Summary Judgment, Doc. #41; and (3) Greater Dayton Premier Management's Motion to Strike Declaration of Craig Taylor, Doc. #48.

## II. Greater Dayton Premier Management's Motion to Strike Declaration of Craig Taylor (Doc. #48)

The Court turns first to Greater Dayton Premier Management's Motion to Strike Declaration of Craig Taylor, Doc. #48. As previously noted, Taylor works with Communities for Veterans ("CFV"), the development company working with Freedom's Path. Freedom's Path submitted Taylor's Declaration, Doc. #43-14, in support of its Motion for Partial Summary Judgment.

Greater Dayton Premier Management has moved to strike portions of Taylor's Declaration, noting that Federal Rule of Civil Procedure 56(c)(4) requires

that declarations used to support or oppose a motion for summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Greater Dayton Premier Management maintains that the following paragraphs of Taylor's Declaration contain inadmissible hearsay and legal conclusions:[4]

> **Paragraph 18**: "While VASH has been in existence since 1996, in 2007, HUD and the VA entered into a Memorandum of Understanding whereby HUD awards and administers VASH vouchers based on geographic need and a public housing authority's ("PHA") administrative performance as determined by HUD."

> **Paragraph 21**: "There are three different ways that Dayton Metropolitan Housing Authority ("DMHA") can apply for project-based rental assistance once a Notice of Funding Availability ("NOFA") is issued by HUD."

> **Paragraph 22**: "The first way is for DMHA to apply on its own behalf."

> **Paragraph 23**: "The second way is for DMHA to apply for a project-specific, project-based VASH voucher. The NOFA encourages project-specific applications on VA campuses by awarding the project an additional 25 points."

> **Paragraph 24**: "By applying for a project-based, project-specific voucher, DMHA would enable Freedom's Path to receive an extra 25 points in a competitive process that would virtually guarantee its development, since Freedom's Path already has acquired up to 60 points, and the additional 25 VASH points would be more than enough points to be awarded the project."

---

[4]   As noted by Freedom's Path, Greater Dayton Premier Management quotes a slightly different version of Taylor's Declaration, Doc. #44-1, in its motion. The contents of the two versions are substantially similar but contain a different number of paragraphs. The Court has quoted the relevant paragraphs from the Declaration attached to Freedom's Path's Motion for Partial Summary Judgment, Doc. #43-14.

**Paragraph 25**: "The third way DMHA can apply for project-based rental assistance once a NOFA is issued by HUD is to apply for both – i.e., on its own behalf and also for a project-specific, project-based VASH voucher."

Doc. #43-14, PageID##1722-23.

Greater Dayton Premier Management also objects to the Court's consideration of paragraph 28 of Taylor's Declaration as an impermissible legal conclusion:

**Paragraph 28**: "By applying for VASH PBV on its own behalf rather than on behalf of Freedom's Path, as DMHA had originally promised, and by not applying in a timely manner for Plaintiff's specific, project-based VASH vouchers, DMHA jeopardized HUD's award of 25 points to Plaintiff that would give Plaintiff enough points for its project to be selected, which in turn would provide necessary treatment to veterans who would otherwise go without adequate treatment and housing."

*Id.* at PageID#1724.

Greater Dayton Premier Management notes that Taylor is not an attorney or an employee of HUD. It argues that his statements constitute improper legal interpretations of HUD regulations, and are unsupported by any documentary evidence.

In response, Freedom's Path argues that the challenged statements are based on Taylor's personal, working knowledge of the HUD-VASH program. His development company, Communities for Veterans, has completed six housing developments in multiple states, and he is "familiar with applying [for], and receiving funding, for housing and supportive services through Low Income Housing Tax Credits ("LIHTCs") and HUD-VASH." Doc. #43-14, PageID##1721-22.

Freedom's Path denies that Taylor's statements are inadmissible hearsay or legal conclusions. In the alternative, it argues that they are otherwise supported by the record and can be presented in a form that will be admissible at trial. Therefore, the Court may consider them in ruling on the cross-motions for summary judgment. Freedom's Path also argues that, because the statements at issue are based on public records and are supported by public documents issued by HUD, they would be admissible at trial as a hearsay exception. Freedom's Path further notes that the statements at issue are consistent with the deposition testimony of Jennifer Heapy, Greater Dayton Premier Management's Executive Director and Rule 30(b)(6) designee. It also denies that Taylor's statements constitute improper legal conclusions or opinion testimony. It maintains that the statements at issue simply explain the background for the actions taken by Freedom's Path.

Having considered the parties' arguments, the Court OVERRULES Greater Dayton Premier Management's Motion to Strike, Doc. #48. Craig Taylor's Declaration satisfies the requirements of Fed. R. Civ. P. 56(c)(4). His statements are based on his personal knowledge, acquired through his many years of experience in the field. The fact that he is neither an attorney nor an employee of HUD does not render him incompetent to testify about his experience with the process of applying for VASH vouchers.

Moreover, his Declaration sets out facts that would be admissible in evidence. The statements in paragraphs 18, 21, 22, 23, 24 and 25 merely provide

background information based on public records that would be admissible in evidence. His opinion statements in paragraphs 24 and 28 do not run afoul of Fed. R. Evid. 701(c) governing opinion testimony by lay witnesses. They are rationally based on his perception, helpful to determining a fact in issue, and are not based on scientific, technical or other specialized knowledge within the scope of Rule 702. The Court also rejects Greater Dayton Premier Management's argument that Taylor's statements constitute improper legal conclusions. Taylor makes no statements concerning whether Greater Dayton Premier Management's actions violate the FHA or the ADA. He simply explains how the VASH voucher application process works, and the practical effect of Greater Dayton Premier Management's refusal to apply for vouchers on behalf of Freedom's Path.

## III. Motions for Summary Judgment

### A. Plaintiff's Claims and Relevant Law

Count I of the Amended Complaint alleges that Greater Dayton Premier Management violated Title II of the Americans with Disabilities Act (the "ADA"), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[5]

---

[5] A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices. . .

Freedom's Path maintains that most of its prospective residents are qualified individuals with disabilities, and that Greater Dayton Premier Management violated Title II by stalling and by denying a reasonable accommodation. It further alleges that Greater Dayton Premier Management's actions "were taken with the intent to discriminate against, and had the effect of discriminating against, disabled veterans and those who provide services to them, namely Plaintiff and its prospective residents." Doc. #6, PageID#59.

Count II of the Amended Complaint alleges that Greater Dayton Premier Management violated the Fair Housing Act ("FHA"). The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(B). The FHA also makes it unlawful to "discriminate against any person in the . . . provision of services or facilities. . . because of a handicap of—. . . (B) a person residing in or intending to reside in that dwelling." 42 U.S.C. § 3604(f)(2)(B). Discrimination under the FHA is defined to include "a refusal to make reasonable accommodations in rules, policies, practices,

---

meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "public entity" includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A) & (B). It is undisputed that GDPM is a "public entity" subject to the requirements of Title II of the ADA.

or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(3)(B).

Freedom's Path alleges that Greater Dayton Premier Management violated the FHA by effectively making housing unavailable to its prospective residents, most of whom are disabled. Again, Freedom's Path alleges that Greater Dayton Premier Management's actions "were undertaken with the intent to discriminate against, and had the effect of discriminating against, disabled veterans and those who provide services to them, namely Plaintiff and its prospective residents." Doc. #6, PageID##59-60.

A plaintiff alleging violations of the ADA and the FHA may proceed under three different theories: (1) disparate treatment; (2) disparate impact; and (3) failure to make a reasonable accommodation. *Anderson v. City of Blue* Ash, 798 F.3d 338, 360 (6th Cir. 2015) (discussing the FHA); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (discussing the ADA). In this case, Freedom's Path appears to have asserted all three theories of disability discrimination under both statutes.

Because the standard of proof for each of these theories under the ADA and FHA is nearly identical, the Court may interpret the claims in tandem. *See Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013) ("The standards regarding disparate treatment claims under the ADA are typically identical [to those under the FHA], and courts accordingly 'interpret them in tandem.'"); *Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018)

(noting that the same analysis generally applies to the FHA, ADA and Rehabilitation Act, regardless of the theory of discrimination); *Vance v. City of Maumee*, 960 F. Supp. 2d 720, 728 (N.D. Ohio 2013) ("This court applies the same standard to evaluate requests for reasonable accommodation under the ADA and FHA.").

Greater Dayton Premier Management has filed a Motion for Summary Judgment on all claims. Doc. #40. Freedom's Path has filed a Motion for Partial Summary Judgment on its reasonable accommodation claim under the ADA and the FHA. Doc. #41.

## B. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A

district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted).

## C. 29 C.F.R. § 1630.15(e) Does Not Provide a Complete Defense to ADA Claims

Before turning to the other arguments presented in the motions for summary judgment, the Court will address Greater Dayton Premier Management's argument that 29 C.F.R. § 1650.15(e) provides a complete defense to all of the ADA claims asserted by Freedom's Path. That regulation states, "[i]t may be a defense to a charge of discrimination under this part that a challenged action is required or necessitated by another Federal law or regulation, or that another Federal law or regulation prohibits an action (including the provision of a particular reasonable

accommodation) that would otherwise be required by this part." 29 C.F.R. § 1650.15(e).

Greater Dayton Premier Management notes that 24 C.F.R. § 983.51(b) provides that a public housing authority ("PHA") "must select [project-based voucher] proposals in accordance with the selection procedures in the PHA administrative plan." Greater Dayton Premier Management's Administrative Plan required that project-based voucher proposals be selected following a Request-for-Proposal ("RFP") process. Given that Freedom's Path did not submit a proposal in response to an RFP, Greater Dayton Premier Management maintains that it was "categorically precluded from satisfying Plaintiff's voucher request, as doing so would have cause [Greater Dayton Premier Management] to violate 24 C.F.R. § 983.51." Doc. #40, PageID#899.

Citing the requirements of § 983.51, Greater Dayton Premier Management further argues that 29 C.F.R. § 1650.15(e) provides a complete defense to all of Freedom's Path's ADA claims. Not so. Section 1650.15(e) is a regulation promulgated by the Equal Employment Opportunity Commission, and it applies only to claims brought under Title I of the ADA, which governs disability discrimination in employment. *See* 29 C.F.R. § 1630.1(a) ("The purpose of this part is to implement title I of the Americans with Disabilities Act . . . "). Given that Freedom's Path's ADA claims arise under Title II of the ADA, governing disability discrimination by public entities, § 1650.15(e) does not provide a complete defense to Freedom's Path's ADA claims.

The Court turns now to the specific claims of disparate treatment, disparate impact and failure to provide a reasonable accommodation, brought under the FHA and Title II of the ADA.

### D.  Intentional Discrimination Claim

The Court first addresses Greater Dayton Premier Management's Motion for Summary Judgment on the claims of intentional discrimination, or disparate treatment, on the basis of disability.  Freedom's Path's Amended Complaint alleges that, in refusing to apply for VASH vouchers on behalf of Freedom's Path, Greater Dayton Premier Management acted with the intent to discriminate against disabled veterans and those who provide services to them, in violation of the ADA and the FHA.  Doc. #6, PageID##59-60.

Craig Taylor and Don Paxton both admitted that they have no direct evidence that Greater Dayton Premier Management intentionally discriminated against Freedom's Path on the basis of the disabilities of its prospective residents.  Doc. #31-1, PageID#649;  Doc. #30-1, PageID##455-56.  Accordingly, this claim is subject to the three-part burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *See Anderson*, 798 F.3d at 356 (discussing analysis of claims of intentional discrimination under the ADA); *Lindsay v. Yates*, 578 F.3d 407, 415 (6th Cir. 2009) (applying *McDonnell Douglas* to claim of intentional discrimination under the FHA).

Freedom's Path must first establish a prima facie case of disability discrimination.  Under Title II of the ADA, Freedom's Path must show that Greater

Dayton Premier Management intentionally discriminated against the prospective residents of Freedom's Path "by reason of" their handicaps. *Anderson*, 798 F.3d at 357. Likewise, under the FHA, it must show that Greater Dayton Premier Management did so "because of" their disabilities. *See* 42 U.S.C. § 3604.[6]

The key question is whether Freedom's Path has presented sufficient evidence from which a reasonable jury could find that Greater Dayton Premier Management refused to apply for VASH vouchers on behalf of Freedom's Path under circumstances giving rise to an inference that it did so "because of" or "by reason of" the disabilities of the prospective tenants. *See Lindsay*, 578 F.3d at 416-18 (noting that prima facie elements of a claim are not "rigid requirements," and that a prima facie case is established whenever the actions taken lead one to reasonably infer they were more likely than not based on discriminatory criterion).

If Freedom's Path establishes a prima facie case of disability discrimination, Greater Dayton Premier Management must offer a legitimate, non-discriminatory reason for the challenged action. *Anderson*, 798 F.3d at 357. If Greater Dayton Premier Management satisfies this burden of production, Freedom's Path must then prove, by a preponderance of the evidence, that the reason given is a pretext for unlawful discrimination. *Id.* "[A] reason cannot ... be a pretext for discrimination

---

[6] Under the ADA, Freedom's Path need not prove that discriminatory animus is the sole reason for the action taken by Greater Dayton Premier Management. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 317 (6th Cir. 2012). Likewise, under the FHA, a plaintiff need only prove that the discriminatory purpose was a motivating factor in the decision. *Avenue 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 504 (9th Cir. 2016).

unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

In its Motion for Summary Judgment, Greater Dayton Premier Management argues that Freedom's Path cannot establish a prima facie case because there is absolutely no evidence that Greater Dayton Premier Management harbored a discriminatory animus toward people with disabilities or that the disabilities of the prospective tenants played any part in Greater Dayton Premier Management's refusal to apply for the VASH vouchers on behalf of Freedom's Path. Greater Dayton Premier Management maintains that there was a legitimate non-discriminatory reason for its refusal to apply for the VASH vouchers—HUD regulations and Greater Dayton Premier Management's Administrative Plan, as it then existed, simply did not permit it to do so. Greater Dayton Premier Management further argues that, even if Freedom's Path could establish a prima facie case of disability discrimination, there is no evidence to support a finding of pretext.

The first question is whether Freedom's Path has established a prima facie case of disability discrimination under the FHA and ADA. Greater Dayton Premier Management has consistently maintained that its refusal to apply for the requested vouchers had nothing to do with the fact that the prospective tenants of Freedom's Path were disabled. In her Affidavit, Jennifer Heapy explained that Greater Dayton Premier Management's actions were "not motivated in any way by any discriminatory animus directed at Plaintiff or disabled individuals. Rather, the

decision was made solely based on [Greater Dayton Premier Management's]
commitment to adherence to [its] policies and procedures, as well as federal law."
Doc. #40-1, PageID#911.

The Sixth Circuit has held that:

> Discriminatory intent may be inferred from the totality of
> circumstances and a number of sources, including the historical
> background of the decision; the specific sequence of events leading
> up to the challenged decision; departures from the normal procedural
> sequence; and the legislative history and contemporary statements by
> members of the decision-making body.

*Turner v. City of Englewood*, 195 F. App'x 346, 354 (6th Cir. 2006) (citing *Village
of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-68
(1977)). Freedom's Path also urges the Court to consider the discriminatory effect
of the decision.

Greater Dayton Premier Management maintains that the factors set forth in
*Arlington Heights* are inapplicable, given that the case involved an Equal Protection
Clause claim in which the plaintiff alleged that denial of a rezoning petition had a
racially discriminatory effect. It was in that context that the Supreme Court held
that discriminatory impact alone was not enough to prove that "invidious
discriminatory purpose was a motivating factor" in denying the rezoning petition.
The court was required to "look to other evidence," including the factors cited
above. 429 U.S. at 266-68.

Although *Arlington Heights* did not involve a claim of disability discrimination
under the ADA or FHA, the Sixth Circuit used these factors in analyzing a Title II

ADA claim of intentional disability discrimination in *Turner*. Likewise, the Sixth Circuit has also held that a district court properly relied on similar factors in adjudicating a claim of intentional disability discrimination under the FHA. *See Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 791-92 (6th Cir. 1996) (finding that the district court's "approach is faithful to the guidance offered by the Supreme Court in *Arlington Heights*."). Accordingly, this Court finds that the *Arlington Heights* factors are appropriately considered in determining whether Freedom's Path has established a prima facie case of intentional discrimination on the basis of disability under the ADA and FHA.

Freedom's Path maintains that application of each of these factors supports an inference of discriminatory intent. Having considered the arguments presented, the Court concludes that Freedom's Path has failed to present sufficient evidence to give rise to an inference of intentional discrimination on the basis of disability.

Freedom's Path notes that the effect of Greater Dayton Premier Management's refusal to apply for VASH vouchers on its behalf was to deny needed funding for housing for disabled veterans. However, it is not enough to show that Greater Dayton Premier Management denied Freedom's Path request for the VASH vouchers. Nor is it enough to show that Greater Dayton Premier Management was aware that, if it denied the request, the Freedom's Path project, which would benefit disabled veterans, could not move forward. "Additional evidence" is needed to raise a reasonable inference that Greater Dayton Premier Management refused to apply for VASH vouchers on behalf of Freedom's Path

35

"because of" or "by reason of" the disabilities of the prospective tenants. *See Lindsay*, 578 F.3d at 418.

With respect to historical background and the sequence of events leading up to the decision, Freedom's Path notes that, in 2013, Prude, Greater Dayton Premier Management's Interim CEO, committed 33 project-based vouchers to the project outside the context of a Request-for-Proposals. However, just over two years later, Greater Dayton Premier Management, under Heapy's leadership, refused to honor that commitment, having decided that it would violate HUD regulations. According to Freedom's Path, this shift in position is indicative of a discriminatory animus toward people with disabilities.

Under the circumstances presented here, neither Heapy's refusal to honor Prude's earlier commitment, nor her refusal to apply for VASH vouchers on behalf of Freedom's Path, raises an inference of discriminatory animus. Greater Dayton Premier Management consistently maintained that granting Freedom's Path's request would run afoul of 24 C.F.R. § 983.51(b). Doc. #40-1, PageID##910-11. In *Smith & Lee Associates*, the Sixth Circuit held that a governmental entity's interpretation of an ordinance cannot "serve as evidence of intentional discrimination unless [that] interpretation strained the plain meaning of a statute to further its discriminatory animus." 102 F.3d at 792.

Heapy's interpretation of § 983.51(b) is not strained or unreasonable. That regulation expressly requires the public housing authority to select project-based voucher proposals "in accordance with the selection procedures in the [public

housing authority's] administrative plan," and Greater Dayton Premier Management's Administrative Plan, *as it existed at that time*, permitted selection of such proposals only in the context of a Request-for-Proposals. The reasonableness of Heapy's interpretation of this regulation is bolstered by the fact that Gordon Black, a HUD employee, verified that her interpretation, as applied to Greater Dayton Premier Management's Administrative Plan, was correct. Because Heapy's interpretation was not unreasonable, her failure to honor Prude's earlier commitment, and her refusal to apply for VASH vouchers on behalf of Freedom's Path, cannot serve as evidence of intentional discrimination.[7]

Freedom's Path further notes that Heapy gave multiple, shifting reasons for Greater Dayton Premier Management's alleged inability to apply for VASH vouchers on behalf of Freedom's Path. Paxton and Taylor both testified that they believed that discrimination could be inferred from the fact that Greater Dayton Premier Management shot down every single solution proposed by Freedom's Path. Doc. #30-1, PageID##455-56; Doc. #31-1, PageID#631. Taylor characterized it as "a shell game of Whack-a-Mole," with Greater Dayton Premier Management constantly finding new excuses and erecting new roadblocks. Doc. #31-1, PageID#649. He further noted that, in response to Heapy's suggestion that

---

[7] Presumably, Greater Dayton Premier Management would have denied *any* request for project-based vouchers outside of the context of a Request-for Proposals, regardless of the nature of the population to be served. *See Smith & Lee Assoc.*, 102 F.3d at 794 (noting that "it is abundantly clear that the City Council would have denied the petition even if it had not been motivated by an unlawful purpose.").

administering the project-based vouchers would pose an administrative and financial burden to Greater Dayton Premier Management, De Carol Smith asked her to quantify that burden, implying that the Veteran's Administration and HUD might be willing to absorb the cost if additional staffing were needed. Heapy, however, never did so. *Id.* at PageID##631-32.

It is undisputed that, before this lawsuit was filed, Heapy raised additional reasons why, in her opinion, Greater Dayton Premier Management could not satisfy Freedom's Path's request, including the undue burden involved in administering the program. Doc. #52-1, PageID#1952. Heapy later conceded that some of these other reasons lacked merit. *See, e.g.*, Doc. #33-2, PageID#766 (admitting that she was incorrect in her assessment concerning the 20% limit on project-based vouchers). As explained in her Second Supplemental Affidavit, she explained that the bottom line was that, because Greater Dayton Premier Management's Administrative Plan permitted the selection of project-based voucher proposals only in the context of a Request-for-Proposals, § 983.51(b) prohibited Greater Dayton Premier Management from applying for the requested vouchers. Accordingly, Greater Dayton Premier Management later abandoned all other rationales as to why it could not satisfy Freedom's Path's request. Doc. #52-1, PageID#1952.

Under the circumstances presented here, Heapy's conduct does not give rise to an inference that Greater Dayton Premier Management acted with discriminatory intent. In *Choices in Community Living, Inc. v. Petkus*, 517 F. App'x 501, 507-08 (6th Cir. 2013), the Sixth Circuit held that, although shifting reasons may create

an inference of pretext, no such inference arose where, prior to suit, the defendant had abandoned some of the original justifications for the adverse action and had consistently relied on a single justification throughout the course of the litigation.

In support of its claim, Freedom's Path also cites to another case in which this Court found that Greater Dayton Premier Management had engaged in disability discrimination. In *Jordan v. GDPM*, 9 F. Supp. 3d 847 (S.D. Ohio 2014), the undersigned granted injunctive relief to the plaintiff on her claim that Greater Dayton Premier Management had failed to grant her request for a reasonable accommodation for her disability. Ms. Jordan, who was blind, had requested that Greater Dayton Premier Management put all communications concerning her Section 8 housing vouchers on microcassette tape, but Greater Dayton Premier Management had refused. Certainly, if Freedom's Path had presented additional evidence showing a pattern or practice of discrimination against individuals with disabilities, this would give rise to a reasonable inference that Greater Dayton Premier Management harbored a discriminatory animus toward the disabled. However, Freedom's Path cites only the *Jordan* case, and the facts of that case bear little relationship to this one.

Freedom's Path also makes a conclusory argument that Greater Dayton Premier Management's refusal to honor Prude's earlier commitment and its refusal to apply for vouchers under the alternative selection method available under 24 C.F.R. § 983.51(b)(2) constitute procedural and substantive irregularities that give rise to an inference of intent to discriminate. Freedom's Path fails to explain,

however, how these actions constituted a departure from Greater Dayton Premier Management normal procedures. Accordingly, no inference arises.

Finally, Freedom's Path notes that Greater Dayton Premier Management did later amend its Administrative Plan to permit selection of project-based vouchers based on a previous competition. Freedom's Path, however, again makes no effort to explain how this fact supports an inference of intentional disability discrimination. In fact, it could be argued that the subsequent amendment will likely *benefit* individuals with disabilities, because there are now more options available to Greater Dayton Premier Management when faced with a request for project-based vouchers from developers like Freedom's Path.

Based on the evidence presented, no reasonable jury could find that Greater Dayton Premier Management either refused to honor Prude's earlier commitment of project-based vouchers or refused to apply for VASH vouchers on behalf of Freedom's Path under circumstances giving rise to an inference that it did so "because of" or "by reason of" the disabilities of the prospective tenants. For the foregoing reasons, the Court finds that Freedom's Path has failed to establish a prima face case of intentional disability discrimination under the ADA or the FHA.

Even if Freedom's Path had established a prima facie case of disability discrimination, Greater Dayton Premier Management has satisfied its burden of production, proffering a legitimate, non-discriminatory reason for its decision. Greater Dayton Premier Management maintains that HUD regulations simply did not permit it to apply for project-based vouchers on behalf of Freedom's Path

because Greater Dayton Premier Management's Administrative Plan, *as it existed at that time*, required that project-based vouchers be selected only in the context of a Request-for-Proposals.

The burden would then shift to Freedom's Path to show that the proffered reason is pretextual. To establish pretext, it must prove that the proffered reason is "factually untrue." *Lindsay*, 578 F.3d at 421. It cannot do so. True, HUD regulations would have permitted Greater Dayton Premier Management to select Freedom's Path's proposal based on the prior low-income housing tax credit competition if Greater Dayton Premier Management's Administrative Plan had included this method as a selection option. However, as it existed at the time of the voucher request, the Administrative Plan required selection through a Request-for Proposal process, and therefore prohibited Greater Dayton Premier Management from granting Freedom's Path's request.[8]

For the reasons set forth above, the Court SUSTAINS Greater Dayton Premier Management's Motion for Summary Judgment on Freedom's Path's claims of intentional discrimination under Title II of the ADA and the FHA.

---

[8] Whether Greater Dayton Premier Management should have acted to amend its Administrative Plan in a timelier manner so that it would have been able to apply for the VASH vouchers on behalf of Freedom's Path when the 2016 Notice of Funding Availability was issued is the subject of the "reasonable accommodation" claim.

## E.   Disparate Impact Claim

The Amended Complaint also alleges that Greater Dayton Premier Management's refusal to apply for VASH vouchers on behalf of Freedom's Path had the effect of discriminating against disabled veterans and those who provide services to them.   Such conduct allegedly violates Title II of the ADA and the FHA.   Doc. #6, PageID##59-60.   To the extent that this could be interpreted as alleging a disparate impact claim, the Court will address it briefly.

Under a disparate impact theory of disability discrimination, the plaintiff need not prove an intent to discriminate.[9]   Rather, the plaintiff must point to a facially neutral policy that has a disproportionate impact on disabled individuals as compared to non-disabled individuals.   *Anderson*, 798 F.3d at 364.   The facts of this case are simply too narrow to give rise to a disparate impact claim.

Greater Dayton Premier Management's facially-neutral Administrative Plan prohibited it from applying for project-based vouchers on behalf of any third party outside of the context of a Request-for-Proposals.   Although application of the policy in this case resulted in Greater Dayton Premier Management's denial of Freedom's Path's request for a commitment of project-based vouchers, and this undoubtedly had an adverse impact on the disabled veterans who were Freedom's Path's prospective tenants, there is no evidence to support a finding that, in

_____

[9]   The *McDonnell Douglas* test, which is "designed to discern intent," does not apply to disparate impact claims.   *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 539 (6th Cir. 2014).

general, this provision in the Administrative Plan has a *disproportionate* impact on disabled individuals as compared to non-disabled individuals.

The Sixth Circuit has held that the plaintiff must offer statistical evidence sufficient to show that the policy in question produced the alleged adverse effect on the protected class. *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 377 (6th Cir. 2007). Freedom's Path has offered no such evidence.

Accordingly, the Court SUSTAINS Greater Dayton Premier Management's Motion for Summary Judgment on any disparate impact claims under the ADA and the FHA.

### F. Reasonable Accommodation Claim

The Amended Complaint also alleges that Greater Dayton Premier Management violated the FHA and the ADA by refusing to grant Freedom's Path's request for a reasonable accommodation. Doc. #6, PageID##59-60. Freedom's Path maintains that, if Greater Dayton Premier Management had acted in a timely manner to amend its Administrative Plan, it could have applied for the VASH vouchers on behalf of Freedom's Path, and the project could have moved forward. As noted above, both parties have moved for summary judgment on this claim.[10] For the reasons set forth below, the Court concludes that genuine issues of

---

[10] Freedom's Path has moved for summary judgment on liability only.

material fact preclude summary judgment in favor of either party on this one remaining claim.

As previously noted, under the FHA, discrimination is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Sixth Circuit has held that, under the FHA, a public entity has an "affirmative duty" to make such reasonable accommodations. *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002).

Likewise, regulations implementing Title II of the ADA provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

An accommodation is deemed to be "reasonable" unless it "requires 'a fundamental alteration in the nature of a program' or imposes 'undue financial and administrative burdens.'" *Smith & Lee Assocs.*, 102 F.3d at 795 (quoting *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 410, 412 (1979)). When the public entity raises either of these affirmative defenses, it bears the burden of proof. *See Hindel v. Husted*, 875 F.3d 344, 347 (6th Cir. 2017).

The standards for a reasonable accommodation claim are the same under the FHA and ADA; accordingly, these claims may be analyzed together. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003). Given that a reasonable accommodation claim does not require proof of discriminatory intent, the *McDonnell Douglas* burden-shifting framework does not apply. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 540 (6th Cir. 2014).

To succeed on a reasonable accommodation claim, the plaintiff must prove that the requested accommodation is "reasonable" and "necessary" to afford disabled persons an equal opportunity to use and enjoy a dwelling. The plaintiff must also prove that he or she is disabled, that he or she requested an accommodation, that the defendant refused to make the accommodation, and that the defendant knew or should have known of the disability at the time of refusal. *Hollis*, 760 F.3d at 540-41.

Greater Dayton Premier Management does not dispute that many of the prospective tenants of Freedom's Path are disabled, and it can be inferred from the record that Greater Dayton Premier Management was aware of this fact as early as December of 2015. It is also undisputed that Freedom's Path requested an accommodation, asking Greater Dayton Premier Management to amend its Administrative Plan to include a prior competition as a permissible method of selecting project-based vouchers. Without the requested amendment, Greater Dayton Premier Management would not be able to apply for VASH vouchers on

behalf of Freedom's Path, and Freedom's Path would not be able to complete the project. In this respect, the requested accommodation was necessary to afford disabled veterans the opportunity to live on the Veteran's Administration's Medical Campus with easy access to support services. There is also no question that Greater Dayton Premier Management denied the requested accommodation as unreasonable.

As previously explained, Greater Dayton Premier Management argues that 24 C.F.R. § 983.51 requires a public housing authority to select project-based voucher proposals in accordance with its Administrative Plan. The regulation provides that the Administrative Plan may provide for selection by either of two methods—a Request-for-Proposals, or selection based on a previous competition that took place within the past three years and did not involve any consideration that the project would receive project-based voucher assistance. 24 C.F.R. § 983.51. A public housing authority need not choose just one method. However, from 2013 through April 17, 2017, Greater Dayton Premier Management's Administrative Plan provided that project-based voucher proposals would be selected only via a Request-for-Proposals initiated by Greater Dayton Premier Management. It is undisputed that Freedom's Path did not submit a proposal in response to a Request-for-Proposals. Accordingly, during the relevant time period, Greater Dayton Premier Management was categorically prohibited from applying for VASH project-based vouchers on behalf of Freedom's Path.

The Court has no quarrel with any of this. Greater Dayton Premier Management, however, misses the point. If Greater Dayton Premier Management had amended its Administrative Plan to include, as a second option, selection based on a previous competition—as Freedom's Path had requested it to do— Greater Dayton Premier Management then could have applied for VASH project-based vouchers on behalf of Freedom's Path.

Greater Dayton Premier Management argues that the proposed amendment would not have solved the problem because, under the "previous competition" method, that previous competition cannot involve "any consideration that the project would receive PBV assistance." 24 C.F.R. § 983.51(b)(2). Freedom's Path submitted Prude's commitment of 33 project-based vouchers when it reapplied for low-income housing tax credits. Freedom's Path, however, has obtained an Affidavit of Sean Thomas, Executive Director of Ohio Housing Finance Authority ("OHFA"), indicating that, in awarding low-income housing tax credits to Freedom's Path in the Strategic Initiatives Pool, OHFA did not consider whether the project had received an award of project-based vouchers. Doc. #43-7, PageID#1120. Accordingly, the proposed amendment, which was expressly permitted by § 983.51, *would* have cleared the way to permit Greater Dayton Premier Management to apply for VASH vouchers on behalf of Freedom's Path. As such, had it amended its Administrative Plan, Greater Dayton Premier Management would no longer be "categorically prohibited" from granting Freedom's Path's request.

To the extent that Greater Dayton Premier Management argues that granting the requested accommodation would have fundamentally altered the nature of its program, the Court finds that Greater Dayton Premier Management has failed to satisfy its burden of proof. In support of this argument, Greater Dayton Premier Management argues only that this would have removed its authority to conduct its operations as it saw fit. This explanation says nothing about how the requested accommodation would have fundamentally altered the nature of its program. Moreover, any suggestion that it would have done so is belied by the fact that Greater Dayton Premier Management did, in fact, make the proposed modification to its Administrative Plan, albeit too late to benefit Freedom's Path.[11]

In the Court's view, the reasonableness of the requested accommodation in this case comes down to two issues: (1) timeliness; and (2) sufficiency of notice. The Notice of Funding Authority for the VASH project-based vouchers requires the public housing authority to have a selection procedure in place in its Administrative Plan prior to applying for the vouchers.[12] Amending Greater Dayton Premier Management's Administrative Plan to include a prior competition as an acceptable selection method was a lengthy process. As Heapy testified, after a substantive

---

[11] Because Greater Dayton Premier Management has abandoned its defense that the requested accommodation would impose an undue financial or administrative burden, the Court need not discuss this issue.

[12] This negates any possibility that Greater Dayton Premier Management could have applied for the VASH vouchers contingent on approval of the amendment by the Board of Housing Commissioners and HUD, as suggested by Freedom's Path.

amendment is drafted, it must be published. It is then subject to a 45-day comment period, followed by a public hearing. It must then be adopted by Greater Dayton Premier Management's Board of Housing Commissioners, and then sent to HUD for final approval, which can take many months. Doc. #33-2, PageID#741.

It is undisputed that Freedom's Path made no formal, written request for a reasonable accommodation under the FHA or ADA, in the form of an amendment to the Administrative Plan, until September 2, 2016. Given that the application deadline for Greater Dayton Premier Management to submit applications for VASH project-based vouchers was just one week later, September 9, 2016, it would have been impossible to amend the Administrative Plan within that time period. Accordingly, if the September 2, 2016, request was the only one at issue, no reasonable jury could find that the requested accommodation was reasonable.

Nevertheless, there is ample evidence in the record that Freedom's Path requested an amendment to Greater Dayton Premier Management's Administrative Plan as early as December of 2015. Taylor's December 15, 2015, email message to Heapy notes that § 983.51 allows selection of a project-based voucher proposal without going through the Request-for-Proposal process, but that "this selection process must be explicitly referenced in your Administrative Plan." He offered to provide her examples of language used by other public housing authorities. Doc. #40-12, PageID#959.

On December 18, 2015, Heapy acknowledged that there were "potential changes that can be made to our administrative plan that *might* have made the

letter [of support] possible. However, that language is not currently contained in our plan. As you know any changes are a lengthy process that at a minimum require approval of our Board of Housing Commissioners." Doc. #40-3, PageID#916. In addition, Heapy testified at her deposition that she remembers a discussion with De Carol Smith at the Veteran's Administration, who suggested that Greater Dayton Premier Management could amend its Administrative Plan to include the "prior competition" option. Doc. #33-2, PageID#755.

Heapy admitted in her deposition that if Greater Dayton Premier Management had started the process of amending its Administrative Plan in December of 2015, to include a prior competition as a method of selecting project-based voucher proposals, the amendment could have been fully approved as early as July of 2016, well before the September 9, 2016, deadline for submitting applications for VASH vouchers. *Id.* at PageID#762.

To the extent that Taylor's December 15, 2015, email message, and related telephone conversations, can be deemed a request for a reasonable accommodation, a reasonable jury could find that Greater Dayton Premier Management violated the ADA and the FHA in denying that request. Greater Dayton Premier Management maintains that it did not deny Freedom's Path's request; it did, in fact, make the requested amendment to its Administrative Plan. The problem is that Greater Dayton Premier Management did not draft the amendment until July of 2016, after the Notice of Funding Availability was issued, and did not obtain Board approval until weeks after the September 9, 2016,

deadline for submitting applications for VASH vouchers.[13] The amendment was not approved by HUD until April of 2017. Doc. #33-2, PageID#750.

By that time, the amendment was useless to Freedom's Path. In that respect, Greater Dayton Premier Management's alleged failure to take timely action to amend its Administrative Plan had the same effect as an outright denial. *See Bhogaita v. Altamonte Heights Cond. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (noting that an undue delay can amount to constructive denial of a requested accommodation).

Greater Dayton Premier Management argues that the Court should not consider the argument that Freedom's Path requested an amendment to the Administrative Plan as early as December of 2015. According to Greater Dayton Premier Management, this argument was raised for the first time in Freedom's Path's Reply in Further Support of its Motion for Partial Summary Judgment. However, as Freedom's Path points out, this was simply as response to Greater Dayton Premier Management's argument, raised for the first time in its response

---

[13] Greater Dayton Premier Management notes that the September 9, 2016, deadline was not known until July 1, 2016, when the Notice of Funding Availability was issued. It started drafting the amendment on July 6, 2016. Freedom's Path points out, however, that Greater Dayton Premier Management was aware that the Notice of Funding Availability would be issued sometime in the summer of 2016. Had Greater Dayton Premier Management taken action to amend the Administrative Plan in December of 2015, it would have been able to submit an application on behalf of Freedom's Path by the September 9, 2016, deadline.

brief, that Freedom's Path's September 2, 2016, request for a reasonable accommodation was untimely.

Moreover, this is not a new argument such that Greater Dayton Premier Management can claim unfair surprise. Paragraph 12 of the Amended Complaint alleges as follows:

> In December, 2015, Freedom's Path requested that GDPM make an application for Freedom's Path's project-specific, project-based program for 60 VASH vouchers, which was due in September, 2016. That period of nine months was more than sufficient to allow GDPM to make any administrative changes necessary to submit a project-specific, project-based application on behalf of Freedom's Path.

Doc. #6, PageID#49. In addition, Plaintiff's Motion for Partial Summary Judgment alleges that "Defendant could have amended its administrative plan but refused to do so in time for Defendant's deadline," Doc. #41, PageID#976, and that "DMHA refused to modify its administrative rules on a timely basis to accommodate Plaintiff's request for a reasonable accommodation," *id.* at PageID#982. Accordingly, there is no reason for the Court not to consider this argument.

Even assuming that Freedom's Path asked Greater Dayton Premier Management to amend its Administrative Plan in December of 2015 to pave the way for its application of VASH vouchers when the next Notice of Funding Availability was issued, and even assuming that this request would be deemed timely, genuine issues of material fact still preclude summary judgment in favor of Freedom's Path on this issue.

Although Taylor's December 15, 2015, email suggests that Greater Dayton Premier Management amend its Administrative Plan so that it will be able to apply for VASH vouchers on behalf of Freedom's Path, it does not mention the FHA or the ADA and does not explicitly request a "reasonable accommodation" under either of those statutes.

This is not necessarily fatal to the claim. *See MX Group, Inc. v. City of Covington*, 293 F.3d 326, 344 (6th Cir. 2002) (rejecting defendants' claim that an entity need not make a reasonable accommodation unless specifically asked to do so); *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007) ("When an individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim."); *Windham v. Harris Cty.*, 875 F.3d 229, 237 (5th Cir. 2017) (holding that when a plaintiff fails to request an accommodation in specific and direct terms, he can still if he proves that the "disability, resulting limitation and necessary reasonable accommodation" were "open, obvious and apparent" to the pubic entity's agents).

The question then becomes whether, in December of 2015, Freedom's Path's request that Greater Dayton Premier Management amend its Administrative Plan was sufficient to put Greater Dayton Premier Management on notice of the need for a "reasonable accommodation" under the FHA or the ADA. Notably, this case is one step removed from the more-typical scenario in which a disabled individual requests a reasonable accommodation in the form of a policy modification that will enable him or her to fully participate in a program

53

administered by a public entity or have equal access to a particular dwelling. In such a case, the need for an accommodation is often apparent.

Here, it is not a disabled individual making the request for an accommodation. Rather, a *development company* is seeking Greater Dayton Premier Management's assistance in obtaining *funding* for its Freedom's Path project. Although it could be argued that Greater Dayton Premier Management knew or should have known that many of the prospective tenants were disabled, a reasonable jury could conclude that, under the circumstances presented here, the need for a "reasonable accommodation" under the ADA or FHA was not "open, obvious and apparent." This is particularly true, given that Taylor's email message makes no mention of the disabled status of the prospective tenants, no mention of the ADA or FHA, and no mention of any "accommodation." It simply asks Greater Dayton Premier Management to remove the policy barriers which blocked funding for the project.

In the Court's view, there is a genuine issue of material fact as to whether the communications that took place in December of 2015 between Taylor and Heapy were sufficient to put Greater Dayton Premier Management on notice that Freedom's Path was requesting an accommodation under the ADA or the FHA, or whether the need for such accommodation under those statutes was obvious. Accordingly, the Court OVERRULES Plaintiff's Motion for Partial Summary Judgment, Doc. #41, and Greater Dayton Premier Management's Motion for Summary Judgment on this claim, Doc. #40.

## IV. Conclusion

The Court OVERRULES Greater Dayton Premier Management's Motion to Strike Declaration of Craig Taylor, Doc. #48, and Freedom's Path's Motion for Partial Summary Judgment, Doc. #41. Greater Dayton Premier Management's Motion for Summary Judgment, Doc. #40, is SUSTAINED IN PART and OVERRULED IN PART. Greater Dayton Premier Management is entitled to summary judgment on Plaintiff's claims of intentional discrimination and disparate impact. However, genuine issues of material fact preclude summary judgment on Plaintiff's "reasonable accommodation" claim under the ADA and the FHA.

The Court will convene a conference call on Wednesday, April 10, 2018, at 5:00 p.m. (EDT), to set a new trial date, a new deadline for filing pretrial motions, and to discuss the parties' interest in mediation.

Date: March 25, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE