UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Freedom's Path at Dayton,**

*Plaintiff,*

v.

**Case No. 3:16-cv-466**
**Judge Thomas M. Rose**

**Dayton Metropolitan Housing Authority,**

*Defendant.*

---

**DECISION AND ENTRY RECONSIDERING DAYTON METROPOLITAN HOUSING AUTHORITY'S MOTION FOR SUMMARY JUDGMENT. ECF 40.  THE COURT'S MARCH 25, 2019 ORDER, ECF 65, IS VACATED IN PART.  THE COURT'S PREVIOUS ORDER, ECF 65, IS VACATED AS TO "REASONABLE ACCOMMODATION," THE REMAINDER OF ECF 65 IS AFFIRMED.  DAYTON METROPOLITAN HOUSING AUTHORITY'S MOTION FOR SUMMARY JUDGMENT, ECF 40, IS GRANTED IN FULL.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF 41, IS DENIED.  JUDGMENT IS AWARDED TO DEFENDANT DAYTON METROPOLITAN HOUSING AUTHORITY AND AGAINST PLAINTIFF FREEDOM'S PATH AT DAYTON.  THE INSTANT CASE IS TERMINATED.  THE PARTIES' MOTIONS *IN LIMINE*, ECF 84, 86 & 106, ARE MOOT.**

---

Subsequent to the recusal of the presiding judge, the instant case was reassigned. Acquainting itself with the case, the Court has reviewed the orders previously issued. *Strulson v. Chegg, Inc.*, No. 3:15-CV-00828, 2017 WL 6003085, at *3 (W.D. Ky. Dec. 4, 2017) ("As Rule 54(b) explains, the Court may reconsider its position "*at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.") *See also Leelanau Wine Cellars*, 118 Fed. App'x 942, 946 (6th Cir. 2004).  In light of that review, Motion for

Summary Judgment by Defendant Dayton Metropolitan Housing Authority, ECF 40, will be granted in full.

**Background**

Plaintiff, Dayton Veterans Residences Limited Partnership d/b/a Freedom's Path at Dayton ("Freedom's Path") filed suit against Dayton Metropolitan Housing Authority d/b/a Greater Dayton Premier Management ("Greater Dayton Premier Management" or "GDPM"), alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3604. Freedom's Path maintains that Greater Dayton Premier Management arbitrarily, capriciously and discriminatorily blocked funding for, and financing of, 60 units of project-based affordable housing for homeless veterans, most of whom are disabled. Prior orders in this case ably describe the evidentiarily supported allegations in this case:

> Plaintiff, Freedom's Path, is a limited partnership formed for the sole purpose of developing and owning 60 units of affordable housing for homeless veterans on the Veteran's Administration's Medical Campus ("VAMC") in Dayton, Ohio. Craig Taylor, a consultant working with Don Paxton of Communities for Veterans ("CFV"), a real estate development company, headed up the Freedom's Path project.
>
> On December 30, 2011, the Veteran's Administration awarded Freedom's Path a 5-year Enhanced Use Lease ("EUL") for 14 acres of land on the VAMC. ECF 43-16, PageID 1742-55. At his deposition, Taylor explained that, to complete the housing project, Freedom's Path then needed to obtain: (1) low income housing tax credits ("LIHTCs") from the Ohio Housing Finance Authority ("OHFA"); and (2) project-based rental assistance from the United States Department of Housing and Urban Development ("HUD"). ECF 31-1, PageID 520.
>
> To accomplish these tasks, Freedom's Path needed the assistance of Defendant Greater Dayton Premier Management, the

2

federal public housing authority ("PHA") serving the Dayton area. Greater Dayton Premier Management administers several HUD programs, including housing assistance through Sections 8 and 9 of the Housing Act of 1937. Greater Dayton Premier Management also administers HUD's Veterans Affairs Supportive Housing ("VASH") program, which provides rental assistance to veterans. Only a public housing authority can apply for VASH vouchers, which are allocated by HUD based on geographic need and the public housing authority's performance data. ECF 43-14, PageID 1722. VASH vouchers come in two forms-individual tenant-based rental assistance, and project-specific, project-based rental assistance ("PBRA").

As Craig Taylor explained, individual tenant-based housing vouchers are often useless to homeless veterans because, if a veteran has a criminal record or a history of eviction or lacks the financial means to pay the first and last month's rent, a landlord is unlikely to agree to lease to him. ECF 31-1, PageID 555. Moreover, in order for Freedom's Path to create a veterans-only housing complex, it needed project-based vouchers ("PBVs"). *Id.* at PageID 584-85.

Although project-based vouchers are also available under Section 8 of the Housing Act of 1937, Freedom's Path preferred VASH project-based vouchers, which combine rental assistance with "wraparound" case management and other clinical services provided by the Veteran's Administration. *Id.* at PageID 512, 584. For this reason, a commitment for VASH project-based vouchers is "the brass ring for these projects." *Id.* at PageID 579-80. After HUD issues a Notice of Funding Availability ("NOFA"), a public housing authority may apply for VASH project-based vouchers on its own behalf, on behalf of other entities, or both. ECF 43-14, PageID 1723. If a public housing authority applies on behalf of another entity, this increases the chance that HUD will award the VASH project-based vouchers. *Id.* at PageID 1724. This case stems from Greater Dayton Premier Management's refusal to apply for VASH project-based vouchers on behalf of Freedom's Path.

After obtaining the 5-year lease on the Veteran's Administration's Medical Campus, Freedom's Path applied to the Ohio Housing Finance Authority ("OHFA") for low-income housing tax credits, which are competitively awarded. OHFA requires a commitment from a public housing authority for project-based rental assistance for at least 50% of the proposed units. Because, at that point, Freedom's Path was proposing a 66-unit

3

project, it needed a commitment of 33 project-based vouchers from Greater Dayton Premier Management. ECF 31-1, PageID 520.

On April 9, 2013, Greater Dayton Premier Management's Interim Chief Executive Officer, Alphonzio Prude, extended support for the Freedom's Path project, committing 33 project-based vouchers "to assist with housing in the newly constructed sixty-six (66) unit building that will provide permanent supportive housing for homeless veterans." ECF 6-1, PageID 62. These were not VASH vouchers but were to be provided through HUD's Section 8 voucher program. ECF 33-2, PageID 745. Freedom's Path also received a $1 million promise of a grant from the Veteran's Administration. ECF 31-1, PageID 541.

Ohio Housing Finance Authority rejected Freedom's Path's application but encouraged it to reapply for low-income housing tax credits at a later date. *Id.* at PageID 531-32. Before reapplying, Freedom's Path worked to build additional community support for the project through the Housing Advisory Board and local government officials. *Id.* at PageID 537. Additional letters of support would increase the chance that Freedom's Path would be awarded low-income housing tax credits. *Id.* at PageID 587, 612-13.

In mid-December of 2015, Kim Powell, Acting Homeless Program Manager of the Dayton Veteran's Administration's Medical Campus, contacted Jennifer Heapy, Greater Dayton Premier Management's new Executive Director, about setting up a meeting with Craig Taylor to discuss the Freedom's Path project. ECF 40-2, PageID 914. Taylor sought an immediate letter from Greater Dayton Premier Management in support of his request for a letter of recommendation from the Housing Advisory Board. ECF 31-1, PageID 586-87. He also sought a commitment of VASH project-based vouchers from Greater Dayton Premier Management. He hoped that, in the summer of 2016, when HUD issued its next Notice of Funding Availability, Greater Dayton Premier Management would apply for 60 VASH vouchers on behalf of Freedom's Path. Greater Dayton Premier Management could then substitute some of those VASH vouchers for the 33 Section 8 project-based vouchers previously committed by Prude and return those 33 Section 8 vouchers to Greater Dayton Premier Management's pool. Taylor noted that Greater Dayton Premier Management also had unused VASH tenant-based housing vouchers that it could have converted into project-based vouchers. *id.* at PageID 546-48, 583-86.

4

Heapy responded that she was willing to talk to Taylor. With respect to Prude's earlier commitment of 33 project-based vouchers, she cautioned, however, that Prude "appears to have been unaware that HUD regulations do not allow the agency to commit project-based vouchers outside of the RFP bidding process and [Prude's actions] could result in HUD recapturing all of the subsidy for the project." ECF 40-2, PageID 913. She took the position that Prude's earlier commitment of 33 project-based vouchers was inconsistent with 24 C.F.R. § 983.51(b), the HUD regulation governing how a public housing authority ("PHA") must select project-based voucher ("PBV") proposals. That subsection of the regulation provides as follows:

> **(b) Selection of PBV proposals.** *The PHA must select PBV proposals in accordance with the selection procedures in the PHA administrative plan.* The PHA must select PBV proposals by either of the following two methods.
>
> > **(1) PHA request for PBV Proposals.** The PHA may not limit proposals to a single site or impose restrictions that explicitly or practically preclude owner submission of proposals for PBV housing on different sites.
> >
> > **(2) Selection based on previous competition.** The PHA may select, without competition, a proposal for housing assisted under a federal, State, or local government housing assistance, community development, or supportive services program that required competitive selection of proposals (e.g., HOME, and units for which competitively awarded low-income housing tax credits (LIHTCs) have been provided), where the proposal has been selected in accordance with such program's competitive selection requirements within 3 years of the PBV proposal selection date, and the earlier competitively selected housing assistance proposal did not involve any consideration that the project would receive PBV assistance.

24 C.F.R. § 983.51(b) (emphasis added).

During the relevant time period, Greater Dayton Premier Management's Administrative Plan provided for only the first selection method. It stated that "[u]nits selected for project-based assistance will be awarded by a competitive request for proposals ["RFP"] initiated by GDPM." ECF 42-21, PageID 1081. It is

5

undisputed that, at no time did Freedom's Path submit a proposal in response to an RFP initiated by Greater Dayton Premier Management.

Heapy and Taylor spoke on December 15, 2015. Taylor did not believe that § 983.51(b) was an impediment to his request. He sent her an email message later that day, stating as follows:

> As discussed, attached is the section of the federal regs [§ 983.51 (b)] that allows selection of [a] project without going through the RFP process. As I noted, this selection process must be explicitly referenced in your Administrative Plan. I can provide examples of that language that we provided to [other public housing authorities]. Also attached was the last PBRA NOFA for HUD-VASH, issue[d] in June of 2015. We expect another to come out around June, 2016. Under that 2015 NOFA we were awarded 42 vouchers in Helena, MT, 52 in Hines, Illinois and 20 in Kerrville, Texas, utilizing the same federal regulation authority as noted above.

ECF 40-12, PageID 959.

On December 18, 2015, Heapy responded to Taylor as follows:

I appreciate your willingness to quickly provide me with the information necessary for me to determine if I could author a letter of support. After reviewing the information and a conversation with the agency's general counsel, I am unable to provide the letter. I hope that you understand that this decision is not based on the content of your proposal or the population that you house. The decision was based on the fact that the relevant PIH notice and regulations simply do not allow the housing authority to in any manner commit/support a development without the requisite open bidding process. I appreciate that there [are] potential changes that can be made to our administrative plan that *might* have made the letter possible. However, that language is not currently contained in our plan. As you know any changes are a lengthy process that at a minimum require approval of our Board of Housing Commissioners.

I encourage you to apply to our future PBV requests for proposals. In fact, I am going to make a note that you receive an email notification of such.

ECF 40-3, PageID 916 (emphasis in original).

That same afternoon, Don Paxton, of Communities for Veterans ("CFV"), emailed Heapy, stating that "[t]here has to be a way to get this done." He noted that CFV had overcome similar obstacles in the past with projects in other cities. ECF 40-4, PageID 918. Heapy responded, in relevant part, as follows:

> I want to assure you that I, and general counsel, reviewed the relevant PIH notice and regulation you provided regarding the project based VASH vouchers. GDPM shares your passion for housing veterans as evidenced by our continued commitment to the VA and VASH. Therefore, your request was fully reviewed.... It is my duty to be vigilant in maintaining GDPM's adherence to HUD rules and regulations. I am completely confident in the agency's general counsel and his ability to read and analyze the applicable rules and regulations. As a result, I am unable to provide a letter.

*Id.*

It appears that Heapy and Taylor engaged in further telephone conversations on this matter, and that Taylor then spoke to Paxton. However, the contents of those conversations are not part of the record. On December 21, 2015, Paxton emailed Heapy, stating:

> After reviewing our situation more with the VA and everyone else, we will take you up on your offer to come back in the new year and request an increase in the commitment to cover 100% of the development and work to apply for VASH in the upcoming round with the VA. In the interim, we will simply continue to use the current commitment for 33 units of PBRA in order to complete the last of our funding. Craig will follow up accordingly in January.

ECF 40-5, PageID 921.

Heapy responded as follows:

> There appears to be a disconnect between what I told Mr. Taylor and what he has communicated to you because there is no offer as you detailed in your email. I communicated to Mr. Taylor that

7

the letter that was written in 2013, is almost two and a half years old and for a previous submission, therefore it can no longer be used as a commitment for this round and is not to be used as such. Additionally, my reference to any potential upcoming project-based vouchers did not include any commitment on my part to partner with his organization for a VASH NOFA. In fact, the regulations do not allow me to make such a commitment unless he is selected as a partner through an open bidding process prior to application. Or if our Administrative Plan allowed for his selection based on a previous competitive process in which the subsidy was not considered. Neither of these factors exists in our scenario. My reference to any future PBV RFP was simply making Mr. Taylor aware that we may solicit applications sometime next year.

*Id.*

Paxton responded that Communities for Veterans had relied extensively on Prude's commitment letter in putting the Freedom's Path project together. He further noted that the letter had no expiration language or terms which allowed it to be unilaterally terminated. He asked that Greater Dayton Premier Management honor the prior commitment. ECF 42-5, PageID 1009.

That same day, Heapy contacted HUD employee Gordon Black to verify that what she had told Paxton and Taylor was correct. ECF 40-6, PageID 923. Black confirmed that, under Greater Dayton Premier Management's Administrative Plan, "a PHA is prohibited from honoring a PBV commitment unless they have followed the RFP procedures first." He noted the "very negative consequences" that could result if Greater Dayton Premier Management honored the earlier commitment. ECF 40-9, PageID 950.

On January 6, 2016, Heapy informed Paxton of her discussion with Black and again advised Paxton not to rely on Prude's letter of commitment. ECF 42-6, PageID 1012. Paxton objected, again noting that Freedom's Path had based two years of effort and resources on Prude's commitment of 33 project-based vouchers. He suggested that they work together with HUD officials to find a solution. *Id.*

In February of 2016, Freedom's Path reapplied to Ohio Housing Finance Authority for low-income housing tax credits. Despite Heapy's admonition, it submitted Prude's letter in support of

8

its application. ECF 30-1, PageID 427. Later that year, Ohio Housing Finance Authority awarded Freedom's Path the requested low-income housing tax credits. ECF 43-7, PageID 1120. Freedom's Path also obtained a letter of recommendation from the Housing Advisory Board. ECF 31-1, PageID 605. All that was yet needed was Greater Dayton Premier Management's assistance in obtaining the VASH project-based vouchers.

In an email to Don Paxton on June 22, 2016, Taylor noted that the next Notice of Funding Availability should be announced within the next 30 days. In discussing his previous interactions with Heapy, Taylor stated, "[a]s was done with several other PHA's, these folks need to amend their Admin Plan to be able to award the vouchers to us based on our award through another governmental entity without hav[ing] to go through a competitive RFP process, so we need their cooperation at a couple of levels." ECF 40-13, PageID 961-62. Taylor noted that the HUD-VASH was "essential" to the project. In his opinion, "we are a shoe-in for getting the vouchers if the PHA will work with us. That said, they were less than cordial, to say the least." *Id.* at PageID 962.

On June 29, 2016, Taylor spoke with Heapy. He then sent an email message to De Carol Smith, the project manager at the Veteran's Administration, indicating that Greater Dayton Premier Management was "at least considering an application for PBRA once the NOFA comes out for HUD-VASH." Taylor noted, however, that Heapy had raised an issue on which he now sought Smith's guidance. The award of low-income housing tax credits qualified as a previous competition under § 983.51(b)(2). However, under § 983.51(b)(2), a public housing authority could award project-based vouchers based on an earlier competition only if "the earlier competitively selected housing assistance proposal did not involve any consideration that the project would receive PBV assistance." Given that Freedom's Path had relied on Prude's letter, committing 33 project-based vouchers, in applying for the low-income housing tax credits, Heapy had questioned whether this would disqualify Freedom's Path from proceeding under that subsection of the regulation. ECF 42-7, PageID 1019. The next day, Smith emailed Taylor that she did not believe that this was a problem. *Id.* at PageID 1017.

HUD issued its 2016 Notice of Funding Availability on July 1, 2016, establishing an application deadline of September 9, 2016. ECF 40-8, PageID 936-37. On August 15, 2016, Taylor informed

9

Heapy via email that Ohio Housing Finance Authority had verified that project-based vouchers were not considered in the decision to award low-income housing tax credits to Freedom's Path. Accordingly, the project was eligible to be submitted for an award of VASH vouchers under § 983.51 (b)(2). He indicated, however, that, according to De Carol Smith, it did not appear that Greater Dayton Premier Management was willing to sponsor the application. Taylor questioned whether Greater Dayton Premier Management might be willing to apply for the vouchers but defer their administration to another public housing authority. ECF 42-9, PageID 1029-30.

On August 17, 2016, Heapy responded that Greater Dayton Premier Management would not be applying for the Notice of Funding Availability because it would need to add at least one more employee for which it had not budgeted. In addition, she stated that Greater Dayton Premier Management was dangerously close to its 20% limit on project-based vouchers. She also rejected Taylor's request to defer administration of the vouchers to another public housing authority because it was her understanding that, because Greater Dayton Premier Management would still be the applicant, this would count toward its 20% limit. She indicated, however, that Greater Dayton Premier Management was still reviewing the information. *Id.* at PageID 1029.

On August 22, 2016, Don Paxton again urged Heapy to, at the very least, honor Prude's commitment for 33 project-based vouchers. *Id.* at PageID 1028. On August 23, 2016, Heapy acknowledged his frustration, but again explained that Greater Dayton Premier Management was unable to do so because the regulations simply did not allow it. She explained that Greater Dayton Premier Management had no authority to make a commitment "without the requisite open bidding process or a provision in our administrative plan, which we do not have." *Id.* That same day, Don Paxton emailed Heapy the following:

> My understanding is that the federal law requires some competition occur prior to the allocation of Project Housing Choice Vouchers. Generally speaking, HUD has always considered the allocation of competitive 9% LIHTCs to a development as meeting that requirement. Notwithstanding a simple amendment to your low-income housing plan, the [H]ousing [A]ct of 1937 statutorily permits you to enter into a housing assistance payment contract using HCV without HUD

10

> approval. We are a bit perplexed by the current situation because seemingly we have met all of the legal requirements, we have offered to have conversations with all of your various folks that are telling you otherwise and we have been continuously asking for your help to make this project happen since March.
>
> We have a good alternative in place now that would avoid you needing to use any of your Vouchers and instead seek new ones from an upcoming round of VASH which needs to happen in the next two weeks.
>
> We are quickly running out of time and you are leaving us no other recourse but the obvious. We again urge a conversation occur between all of the various stakeholders immediately for everyone's benefit.

ECF 42-9, PageID 1025-26.

Heapy responded that she was "glad that we are in agreement that vouchers can only be awarded by the completion of a competitive process." She asked Paxton to direct any further questions to Christopher Green, Greater Dayton Premier Management's General Counsel. *Id.* at PageID 1025. Paxton indicated that his attorney would reach out to Mr. Green the next morning. *Id.* at PageID 1025.

On September 1, 2016, Heapy emailed Taylor and Paxton, stating that, although she was still waiting to hear back from several individuals, "we are continuing to evaluate potential options." She asked if they had obtained a letter of support from the VA to be included with the VASH application. *Id.* at PageID 1027.

Then, on September 2, 2016, Heapy informed Don Paxton that "GDPM will be applying for up to 35 PBV VASH vouchers. If we receive the additional allocation, we will release a public notice of Request for Proposals for which your client, and other developers, can submit for competitive review." *Id.* at PageID 1031-32. In response, Paxton thanked her "for this progress." He noted that the VA would be providing a commitment letter within a few days, which would ensure a high score for the application. He suggested, however, that instead of applying for just 35 vouchers on its *own* behalf, Greater Dayton Premier Management apply for the full 60 units *on behalf of Freedom's Path,* which would allow for an additional 25 points on the application. *Id.* at PageID 1031.

11

Likewise, Craig Taylor expressed "major concern" to De Carol Smith that Greater Dayton Premier Management was applying for only 35 vouchers and was not specifically designating the Freedom's Path development in its request. He asked her to intercede with the local Veteran's Administration. *Id.* at PageID 1033. Smith explained that Greater Dayton Premier Management probably felt that it could not ask for 60 vouchers without exceeding its limits on project-based rental assistance. *Id.* at PageID 1035. Taylor noted, however, that, according to the Notice of Funding Availability, HUD has the authority to waive the 20% limit on project-based vouchers. *Id.*

Later that day, on September 2, 2016, James Green, counsel for Communities for Veterans, on behalf of Freedom's Path, emailed Greater Dayton Premier Management a letter requesting, for the first time, a "reasonable accommodation" under the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"). ECF 40-10, PageID 952-53. He noted that the deadline for requesting VASH vouchers was September 9, 2016, just one week away. Greater Dayton Premier Management had failed to honor its previous commitment of 33 project-based vouchers and was now planning to apply for 35 project-based vouchers on its *own* behalf. He accused Greater Dayton Premier Management of providing shifting rationales for refusing to apply for the requested vouchers on behalf of Freedom's Path, including that: (1) Prude's initial commitment was inconsistent with federal law; (2) GDPM had exceeded its limit on project-based vouchers; (3) its Administrative Plan required an Request-for-Proposal process; and (4) Greater Dayton Premier Management's commitment to tenant-based VASH vouchers absolved it of the need to extend project-based vouchers.

Green stated that if Greater Dayton Premier Management's current Administrative Plan did not allow it to rely on a third-party competitive process, it had a duty to amend the Plan to provide the requested accommodation. He asked that Greater Dayton Premier Management apply for 60 project-based VASH vouchers specifically on behalf of Freedom's Path. In the alternative, he asked that Greater Dayton Premier Management provide 25 out of the 33 previously-committed vouchers, and then seek an additional 35 project-based vouchers from HUD. *Id.*

On September 7, 2016, Greater Dayton Premier Management's General Counsel, Christopher Green, sent a letter

12

denying the requested accommodation. ECF 40-11, PageID 955-57. He again stated that Prude's commitment letter was contrary to 24 C.F.R. § 983.51 and could not be honored. Green found the requested accommodation to be unreasonable and contrary to law. He noted that, although the federal regulations allowed a public housing authority to select a proposal based on a previous competition, that previous competition could not "involve any consideration that the project would receive PBV assistance." 24 C.F.R. § 983.51 (b)(2). Given that Freedom's Path had used Prude's letter to obtain low-income housing tax credits through a competitive process, Green maintained that this option was no longer available. Moreover, the Notice of Funding Availability mandated that Greater Dayton Premier Management comply with § 983.51 and have its selection policy in its Administrative Plan prior to making a selection. Green noted that Greater Dayton Premier Management's Administrative Plan did not contain language that would permit it to award vouchers based on a previous competition. The selection had to be made through a Request-for-Proposal process. *Id.* at PageID 956.

Green further took the position that Greater Dayton Premier Management had no duty to honor Freedom's Path's requested accommodation. He stated that:

> GDPM's requirements under the ADA are to ensure individuals with disabilities enjoy full and equal access to GDPM's programs and services. What you are seeking is additional or different substantive benefits in the form of more project-based vouchers for Freedom's Path. That is not an accommodation for individuals needing full and equal access to GDPM's programs or services. Therefore, your demand that GDPM apply for a total of 60 VASH vouchers for Freedom's Path is unreasonable.

*Id.* at PageID 957.

On September 9, 2016, in a last-ditch effort, Don Paxton sent an email message to Jennifer Heapy. He noted that, if Freedom's Path did not use its low-income housing tax credits within a specific time frame, they would be lost. He cited the extensive efforts already undertaken to bring the Freedom's Path project to fruition. He again asked Greater Dayton Premier Management to apply for 60 VASH vouchers before midnight that night and then take whatever steps were needed to address outstanding regulatory concerns. ECF 42-12, PageID 1049-50.

Although Greater Dayton Premier Management applied for 35 VASH vouchers on its own behalf, none was awarded. ECF 33-2, PageID 771. In October of 2016, the Board of Housing Commissioners of Greater Dayton Premier Management approved an amendment to the Administrative Plan, permitting Greater Dayton Premier Management to select project-based voucher proposals based on prior competition pursuant to 24 C.F.R. § 983.51(b)(2). According to Jennifer Heapy, Greater Dayton Premier Management began drafting the amendment on July 6, 2016, but did not tell Freedom's Path. ECF 52-1, PageID 1953; ECF 33-2, PageID 764. That amendment was approved by HUD in April of 2017. ECF 33-2, PageID 750.

By that time, it was too late to be of any use to Freedom's Path. Taylor testified at his deposition that the Freedom's Path project is "dead." The low-income housing tax credits have been canceled and, although he could reapply for new tax credits, the 5-year lease for the site has expired and the Veteran's Administration is not willing to extend it. Although lines of communication are still open with the Veteran's Administration and with Ohio Housing Finance Authority, the project simply cannot move forward without project-based rental assistance, which requires Greater Dayton Premier Management's cooperation. ECF 31, PageID 671-74.

On November 10, 2016, Freedom's Path filed suit against Greater Dayton Premier Management. The Amended Complaint, ECF 6, asserts violations of the FHA and Title II of the ADA. Freedom's Path maintains that, if Greater Dayton Premier Management had agreed to apply for the VASH vouchers on behalf of Freedom's Path, as requested, Freedom's Path would have been awarded 25 additional points in the competitive bidding process, which would have been enough to virtually guarantee that it would be awarded the project.

Freedom's Path further alleges that Greater Dayton Premier Management's actions reflect an intent to discriminate against disabled persons and have the discriminatory effect of denying disabled veterans meaningful access to affordable housing and equal access to services they need. Freedom's Path maintains that Greater Dayton Premier Management has unlawfully discriminated against it and its prospective residents by effectively denying necessary financing and by refusing to grant a reasonable accommodation so that Freedom's Path could obtain the necessary VASH vouchers.

14

> Freedom's Path seeks damages as well as injunctive and declaratory relief.

*Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 3:16-CV-466, 2019 WL 1331311, at *1–8 (S.D. Ohio Mar. 25, 2019), *reconsideration overruled,* No. 3:16-CV-466, 2019 WL 5956543 (S.D. Ohio Nov. 13, 2019)

**Standard of Review**

The Court has the power to reconsider prior motions *sua sponte*. *Wren Indus., Inc. v. Verson Allsteel Press*, 84 F. Supp. 2d 911, 917 n.10 (S.D. Ohio 1999). Additionally, there is no time limitation placed upon the Court with respect to the reconsideration of interlocutory orders:

> As Rule 54(b) explains, the Court may reconsider its position "*at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added). Indeed, the Sixth Circuit Court of Appeals has upheld a District Court's *sua sponte* decision to reconsider its grant of partial summary judgment 184 days after entry of an interlocutory order. *See Leelanau Wine Cellars*, 118 Fed. App'x at 946 (explaining that "the district court had authority to reconsider and modify its previous August 13, 2002 order" on February 14, 2003.). The time-lapse here is much longer than the one in *Leelanau Wine Cellars*, but the same principle holds true here as did there.

*Strulson v. Chegg, Inc.*, No. 3:15-CV-00828, 2017 WL 6003085, at *3 (W.D. Ky. Dec. 4, 2017).

**Analysis**

The amended complaint asserts one claim against GDPM for and denial of a reasonable accommodation under Title II of the ADA and one claim under the FHA against GDPM. ECF 6, PageID 59. The Court previously ruled that Greater Dayton Premier Management is entitled to summary judgment on Plaintiff's claims of intentional discrimination and disparate impact**.** ECF 65. However, the Court also ruled that genuine issues of material fact preclude summary judgment on Plaintiff's "reasonable accommodation" claim under the ADA and the FHA. ECF

15

65

One element of an FHA reasonable accommodation claim is denial of "equal opportunity." *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 794–95 (6th Cir. 1996) ("To determine whether a defendant violated the FHAA by failing to make reasonable accommodations[, w]e begin by defining the three operative elements of 42 U.S.C. § 3604(f)(3)(B): "equal opportunity," "necessary," and "reasonable.").

With respect to the phrase "equal opportunity," the House Report on the Act offers relevant context:

> The Fair Housing Amendments Act, like Section 504 of the Rehabilitation Act of 1973, as amended, is a clear pronouncement of a national commitment to *end the unnecessary exclusion of persons with handicaps from the American mainstream.*

House Comm. on the Judiciary, Fair Housing Amendments Act of 1988, H.R. Rep. No. 711, 100th Cong., 2d Sess. 18, *reprinted* in 1988 U.S.C.C.A.N. 2173, 2179 (footnote omitted) (*hereinafter* 1988 U.S.C.C.A.N.) (emphasis added). "Equal opportunity" under the FHAA gives handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream. *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 794–95 (6th Cir. 1996).

> [T]he Act prohibits local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities.

*Bryant Woods Inn, Inc. v. Howard County, Md.,* 911 F. Supp. 918, 946 (D. Md. 1996) (citation omitted); *see also City of Edmonds v. Washington State Bldg. Code Council,* 18 F.3d 802, 806 (9th Cir. 1994), *aff'd,* 514 U.S. 725 (1995) ("Congress intended the FHAA to protect the right of

16

handicapped persons to live in the residence of their choice in the community."). The phrase "equal opportunity," at least as used in the FHAA, is concerned with achieving equal results, not just formal equality. *See City of Edmonds,* 18 F.3d at 806 ("The FHAA imposes an *affirmative duty* to reasonably accommodate handicapped people.") (emphasis added); *Proviso Ass'n of Retarded Citizens v. Village of Westchester, Ill.,* 914 F. Supp. 1555, 1563 (N.D.Ill.1996) (rejecting city's argument that "because Plaintiffs are subject to requirements [of sprinkler systems to be installed in group housing of non-related individuals] imposed on all groups of unrelated non-disabled people, they have an 'equal opportunity' to live in the ... dwelling").

The statute links the term "necessary" to the goal of equal opportunity. *See* 42 U.S.C. § 3604(f)(3)(B) ("accommodation ... necessary to afford ... equal opportunity"). Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice. *See Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995) ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability."). *See also Smith & Lee Assocs., Inc. v. City of Taylor, Mich.,* 102 F.3d 781, 794–95 (6th Cir. 1996).

Here, Plaintiffs have not shown that, but for the accommodation, they would likely be denied an equal opportunity to enjoy the housing of their choice. The proposed accommodation was that Defendant amend their administrative plan to be able to award the vouchers based on awards through other governmental entities without having to go through a competitive process. Without the accommodation, they would not succeed, just as non-disabled people would not succeed.

Defendants raised this argument in their motion:

17

> the requested accommodation had nothing to do with the alleged disabled status of any prospective tenants of the Freedom's Path project, meaning there is no "nexus" between the accommodation and any disability. DMHA simply did not submit the application for project-based vouchers because of DMHA's then existing Administrative Plan and HUD regulations. This outcome would have been the same whether or not the project involved individuals with disabilities. This is demonstrated, in part, by the fact that the proposed Freedom's Path facility would have housed both disabled and nondisabled tenants. Thus, disabled and non-disabled tenants were equally affected by the requested accommodation.

ECF 69, PageID 2171.

**Conclusion**

The Court's March 25, 2019 Order, ECF 65, is **VACATED IN PART**. The Court's previous order, ECF 65, is vacated as to "reasonable accommodation," the remainder of ECF 65 is **AFFIRMED**. Dayton Metropolitan Housing Authority's Motion for Summary Judgment, ECF 40, is **GRANTED IN FULL**. Because there is no genuine issue of material fact to dispute that GDPM provided Plaintiff equal opportunity, Dayton Metropolitan Housing Authority's Motion for Summary Judgment, ECF 40, is **GRANTED**. Summary judgment is awarded in favor of Defendant Dayton Metropolitan Housing Authority and against Plaintiff Freedom's Path at Dayton on all claims. The Clerk is **ORDERED** to **TERMINATE** the instant case from the dockets of the United States District Court for the Southern District of Ohio, Western Division at Dayton. The parties' Motions *in Limine*, ECF 84, 86 & 106, are **MOOT**.

**DONE** and **ORDERED** this Tuesday, January 5, 2021.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

18