UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Freedom's Path at Dayton,**

    *Plaintiffs,*

v.

**Dayton Metropolitan Housing Authority,**

    *Defendant.*

Case No. 3:16-cv-466
Judge Thomas M. Rose

---

**DECISION AND ENTRY GRANTING MOTION *IN LIMINE* TO LIMIT PLAINTIFF'S PRESENTATION OF DAMAGES, (DOC. 84), AND FINDING MOOT MOTION FOR LEAVE TO DEPOSE DON PAXTON, CRAIG TAYLOR AND PLAINTIFF'S EXPERT, HENRY FISHKIND. (DOC. 119).**

---

Plaintiff, Dayton Veterans Residences Limited Partnership d/b/a Freedom's Path at Dayton ("Freedom's Path") alleges Dayton Metropolitan Housing Authority d/b/a Greater Dayton Premier Management ("DMHA"), violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3604. DMHA now asks the Court to limit Freedom's Path's presentation of damages at trial. (Doc. 84.) In the event that the Court denies DMHA's motion to limit Freedom's Path's presentation of damages, DMHA seeks permission to depose Don Paxton, Craig Taylor and Henry Fishkind.[1]

---

[1] Craig Taylor and Don Paxton headed up the Freedom's Path project, Henry Fishkind is Freedom's Path's expert on damages.

Doc. 119.) Because the Court will grant the motion to limit Freedom's Path's presentation of damages, DMHA's motion to depose Paxton, Taylor and Fishkind will be moot.

DMHA has responded to Plaintiff's motion *in limine*. (Doc. 87). Plaintiff has replied. Doc. 84. Plaintiff filed a motion for permission to file a sur-reply, (doc. 128), and the Court has granted that motion and considered the tendered filing. (Doc. 128-1). Plaintiff has filed a corresponding motion for leave to file a sur-response, (doc. 131), and the Court has granted that motion and considered the tendered filing. (Doc. 131-1). The question is now more than ripe.

**I.     Background**

Plaintiff, Dayton Veterans Residences Limited Partnership d/b/a Freedom's Path at Dayton ("Freedom's Path") alleges Dayton Metropolitan Housing Authority d/b/a Greater Dayton Premier Management ("DMHA") violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3604. Freedom's Path maintains that DMHA arbitrarily, capriciously and discriminatorily blocked funding for, and financing of, 60 units of project-based affordable housing for homeless veterans, most of whom are disabled.

In 2015 and 2016, Freedom's Path requested that DMHA provide it with project-based housing vouchers for Freedom's Path's proposed housing project. DMHA was unable to accommodate this request under the then-existing terms of its administrative plan. The discussions surrounding this project were based on the premise that the project would benefit homeless veterans, many of whom are disabled.

After the Court awarded partial summary judgment, the sole remaining liability theory is that Freedom's Path requested a reasonable accommodation, within the meaning of the ADA and

2

FHA, in a December 2015 communication with DMHA. Decision, ECF No. 65, at p. 54. A September 2, 2016, request that DMHA amend its administrative plan to accommodate veterans who are allegedly disabled cannot serve as a basis for liability, because the time required to do so rendered it impossible. Thus "no reasonable jury could find that the requested accommodation [in the September 2, 2016, letter] was reasonable." *Id*. at p. 49.

Freedom's Path's claimed damages, as computed by their expert Henry Fishkind, are based on the underlying assumption that a new project would be attempted, and that Freedom's Path will thus be damaged in an amount equal to the increased costs associated with a new project. Fishkind explains his approach as follows: "The economic damages are the difference between; (a) the Project as envisioned and (b) the Project as relocated and delayed." Fishkind Report, at p. 5, ¶ 24.0. All of the opinions that follow assume that the project will someday go forward at greater expense to Freedom's Path.

Fishkind's report identifies over $21 million in claimed damages, which DMHA seeks to exclude. The proposed damages include:

| | |
|---|---|
| Tax Credits totaling | $9,888,432 |
| VA Grant totaling | $1,000,000 |
| Land Cost totaling | $782,500 |
| Increased Construction Cost totaling | $1,405,969 |
| Fees and Charges totaling | $440,000 |
| VASH totaling | $3,217,443 |
| Two Additional Case Workers totaling | $1,518,480 |
| Transport totaling | $1,400,771 |

3

| | |
|---|---|
| Security totaling | $1,214,784 |
| Delay in Developer Fee totaling | $209,331 |
| Delay Cash Flow to Owner totaling | $90,390 |
| TOTAL | $21,168,099 |

See Fishkind Report, Doc. 84-1.

However, Craig Taylor admitted, the project is "dead." Deposition of Craig Taylor, ECF No. 31-1, at p. 185. He continued:

> We have been in communication with OHFA throughout about the status of this litigation and about the status of the VA's position.
>
> So, in terms of furthering the project, we have continued to talk to people, all the main parties that were involved in the beginning, but there's no further construction drawings or that sort of thing because we don't have a site.

Taylor Dep. 186, Doc. 43-11, Page ID 1507. This would end the possibility of Freedom's Path utilizing the previously received Tax Credits for $9,888,432, a VA grant of $1,000,000, the Enhanced Use Lease on the VA campus awarded by the VA.

Freedom's Path posits that it is now required to buy land costing $782,500, provide social workers and other supportive services to help the homeless veterans to live independently that the $3,217,443 in VASH money would have provided, and various other increased costs associated with not being on the VA Medical campus.

Freedom's Path contends that if it receives damages, it will build housing for homeless veterans, albeit at the higher costs resulting from Defendant's actions. Freedom's Path lost site control at the VA campus because the VA terminated the lease and Freedom's Path would need to find another location to do the project, and they would need project-based rental assistance.

4

## II.     Analysis

Under the Fair Housing Act, prevailing plaintiffs may be awarded their "actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees." 42 U.S.C. § 3612(c). The United States Supreme Court has recognized that a claim for damages brought pursuant to the FHA sounds basically in tort—the statute merely defines a new legal duty and authorizes courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. *Curtis v. Loether*, 415 U.S. 189, 195 (1974). Under general tort principles, compensatory damages are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed. *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2014).

Damages available under the ADA are narrower than those available under the FHA. See, e.g., *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F. 3d 277 (7th Cir. 2003) (holding that lost profits are not recoverable under the ADA); *Watson v. City of Mason*, S.D. Ohio No. C-1-04-283, 2005 U.S. Dist. LEXIS 27116, at *1 (Nov. 8, 2005). Thus, the FHA represents the outside limit of what could be recoverable in this action.

Damages may not be recovered when they are remote or speculative in nature. *Agricultural Servs. Ass'n v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1072 (6th Cir. 1977). This rule serves to preclude recovery where the fact of damage is uncertain, i.e., where the damage claimed is not the certain result of the wrong, not where the amount of damage is uncertain. *Grantham and Mann, Inc. v. American Safety Prods.*, 831 F.2d 596, 601-02 (6th Cir. 1987). Where there is no proof that damages will ever be incurred as a result of the alleged wrong, there can be no recovery. *Id*.

Whether a future project, if it ever were attempted, would receive similar, greater, or lesser tax credits is speculative. Cf. *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 822-23 (9th Cir. 2001) (damages premised upon projection that marginal tax rates were going to increase, creating a greater tax liability when the project went forward found too speculative).

Freedom's Path claims that it lost out on certain tax credits as the result of DMHA's failure to satisfy its alleged accommodation request. Freedom's Path further alleges that it had a commitment to sell these tax credits to an investor. However, these tax credits, or the proceeds from their sale, would not represent cash in the pocket of the investor, but would instead be used on costs of the project. Indeed, Fishkind notes that the proceeds from these credits, along with the VA Grant, provided the "capital needed to fund construction of the project." Fishkind Report, p. 4, ¶ 14.0.

If the project had gone forward, all of the proceeds from the sale of the Low-Income Housing Tax Credits would have been spent on the expenses of the project. These funds were "needed to fund construction." These funds would not have been retained in the pockets of Freedom's Path. Freedom's Path could only receive the tax credits by actually going forward with the project and spending these funds on construction. This is functionally the same as if a loan had fallen through, and Freedom's Path wanted to receive all of the proceeds of the loan, without the corresponding obligation to pay the loan back. That would be a windfall, not compensation. Thus, these numbers do not represent damages to Freedom's Path.

Moreover, there is no way of knowing whether a future project would receive equal or even greater tax credits. Thus, even if tax credits were a proper item of damages, it is entirely

6

unclear whether Freedom's Path has been damaged at all. When it is uncertain whether an alleged item of damages will ever actually be suffered, there can be no recovery. *Grantham and Mann*, 831 F.2d at 601-02.

Freedom's Path next claims that it lost out on a grant of $1,000,000 that was committed by the VA to support construction of the original project. This item of damages has the same problem as the tax credits. The grant was offered as financing for the project. In other words, it is not cash that was offered to Freedom's Path to put into its own pockets, but rather was offered to cover some of the costs of the project. According to the Fishkind Report, the money from this grant would have been spent on construction costs, it would not have been retained by Freedom's Path. Fishkind Report, p. 4, ¶ 14.0.

Freedom's Path is not seeking to be compensated for damages it will actually suffer, it is seeking a windfall of cash that it would never have received if the project had gone forward. If the project had gone forward as planned, the Low-Income Housing Tax Credits proceeds and the VA grant would have been spent on construction costs. There is no scenario in which Freedom's Path would have received these funds without the corresponding requirement that they actually spend them on building this project. Thus, these are not recoverable as damages.

Freedom's Path also claims it will be forced to pay additional costs for an alternative plot of land to build its alternative housing project which goes above and beyond the cost of the land for the complex that was to be built on the Dayton VA campus. This item of damages is contingent upon Freedom's Path actually going through with the project, which is unknown. The amount claimed for this item of damages is based upon market values of purportedly similar sites, as calculated by Freedom's Path's expert, Henry Fishkind. This is not, however, a direct

7

consequence of any alleged discrimination on DMHA's part.

Freedom's Path additionally claims it will be forced to pay additional costs to construct an alternative housing complex which extends above and beyond the original planned cost of construction. This charge, too, is speculative. Fishkind calculated this element of damages by taking the planned cost of constructing the original project and multiplying it by expected inflation. Freedom's Path still cannot recover this item of damages because it is not a direct injury to Freedom's Path resulting from the alleged failure to accommodate.

Freedom's Path ignores Defendant's arguments regarding the types of damages to which it is entitled, instead emphasizing the degree of certainty to which the damage must be evinced:

> Thus, "while a plaintiff seeking to recover lost profits must ordinarily prove the **fact** of injury with reasonable certainty, proof of the **amount** of damages may be based on a reasonable estimate.… [T]he fact that an estimate is uncertain or inexact will not defeat recovery, once the fact of injury is shown." 114 F.3d at 1235 (emphasis added) (citations omitted). See *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003) ("*Story Parchment* … states the American rule on damages."); *Silver Sage Ptrs., Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 821 n.6 (9th Cir. 2001) ("the mere fact that different assessments are possible is not a reason for excluding the lost profits as 'too speculative'") (citing *Story Parchment* and *Samaritan Inns*); Robert L. Dunn, *Recovery of Damages for Lost Profits*, §1.8, at 25 (6th ed. 2005) ("If plaintiff's proof leaves uncertain whether plaintiff would have made any profits at all, there can be no recovery. But once this level of causation has been established for the **fact** of damages, less certainty is required in proof of the **amount** of damages.") (emphasis in original).

Response, doc. 87, PageID 2581-82. All of this is true, but Freedom's Path "is not seeking lost profits." *Id.*, PageID 2581 n.4.

Freedom's Path planned to use Low-Income Housing Tax Credits, a VA grant, an Enhanced Use Lease, and VASH vouchers for funding the construction. Freedom's Path claims

8

that it lost that funding as a result of DMHA's refusal to accommodate Freedom's Path. However, Freedom's Path would have been required to provide 15 years of providing affordable housing as a condition of these programs, similar to the requirement to pay off a mortgage on a home over time. Freedom's Path has offered, if awarded damages sufficient to build the housing, to encumber the property for the 15 years as would have been required by the Low-Income Housing Tax Credits program and upon which its damage calculation is predicated.

Freedom's Path also seeks damages measured by increased cost of land and increased cost of construction, compensation for the loss of two case workers, compensation for increased cost of transportation of veterans to and from the VA, compensation for increased cost of security for an off-campus site. The Court recognizes that Freedom's Path has sufficient proof, should a jury credit the evidence, to quantify how much these items would cost, but Freedom's Path does not have evidence that they are direct results of wrong-doing on the part of Defendant.

Finally, Freedom's Path seeks compensation for a two-year delay in receiving a developer fee and a two-year delay in cash flow. This is derived from postulating an interest rate on developer's fees that Freedom's Path would have received had the project been completed— an amount Freedom's Path might never receive.

Curiously, the developer's fee is the damage Freedom's Path is entitled to if DMHA is found liable. "The budget for the Project included a developer fee of $1,507,333. This is a standard fee for the industry and amounts to 13% of the Project's total cost." ECF 84-1, PageID 2509. It is an amount equal to the developer fee that would "place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2014). Freedom's Path

9

would be entitled to it if it can establish "that the lost fee was the 'certain result' of [Defendant's] actions." *Id.*, 805 F.3d at 53.

Freedom's Path seeks an award that would reflect damages premised on putting homeless veterans in a position substantially equivalent to the one that *they* would have enjoyed had no tort been committed. This is a laudable goal, and one the Court hopes comes to pass, but it is not the measure of damages in this case.

Moreover, Freedom's Path lists the increase in actual costs it will incur if the Project goes forward at an alternate site but fails to indicate any projected increase in profits if the Project goes forward. Without numbers reflecting gross revenue minus expenses equaling net profits, Freedom's Path is not submitting as damages lost profits, which case law supports. Freedom's Path cannot have it both ways, if Freedom's Path will incur additional costs in the future, then these costs must be offset by additional revenue.

Some of the damages sought are so remote that Freedom's Path would seemingly seek compensation for the loss of the postulated butterfly in Brazil that would be caused by the increased climate change resulting from the carbon emitted transporting veterans to the VA, while still ignoring the hurricane damage averted thereby.[2] Without such information, Freedom's Path cannot prove lost profits. But then, Freedom's Path is not seeking to recover lost profits. Thus, Freedom's Path's element of damages of two case workers, transport, and security are too remote. Freedom's Path will not be permitted to proffer them.

Even if Freedom's Path were to build on another site, this is not the measure of damages.

---

2  For background on "the butterfly effect," see Kenneth Chang: *Edward N. Lorenz, a Meteorologist and a Father of Chaos Theory, Dies at 90*, The New York Times, April 17, 2008.

10

Cf. *McNeil v. P-N & S, Inc.*, 372 F. Supp. 658, 659 (N.D. Ga. 1973) (awarding $2,500 damages, where if plaintiffs had been permitted to buy the house and had made their payments, they would have created an equity therein of some $7,190.96). Therefore, the Court will preclude the proffer of the damages proposed in the Fishkind Report.

### III. Conclusion

Wherefore, Motion *in Limine* to Limit Plaintiff's Presentation of Damages, (Doc. 84), is **GRANTED**. Also before the Court is Motion for Leave to Depose Don Paxton, Craig Taylor and Plaintiff's Expert, Henry Fishkind. (Doc. 119). Therein Defendant posited that this motion would be **MOOT** if the Court were to rule in its favor on Motion *in Limine* to Limit Plaintiff's Presentation of Damages, and so it is. Fishkind will only be permitted to testify regarding direct consequences of any proven discrimination on DMHA's part after the liability phase of the trial.

**DONE** and **ORDERED** this Thursday, May 26, 2022.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE