# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**Freedom's Path at Dayton,**

                *Plaintiffs,*

                                                        **Case No. 3:16-cv-466**

**v.**                                            **Judge Thomas M. Rose**

**Dayton Metropolitan Housing Authority,**

                *Defendant.*

---

### DECISION AND ENTRY IN PART FINDING MOOT, IN PART GRANTING AND IN PART DENYING FIRST MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE OR TESTIMONY, DOC. 86, AND GRANTING MOTION FOR LEAVE TO FILE INSTANTER A SUR-REPLY TO PLAINTIFF'S REPLY TO DEFENDANT'S MEMO IN OPP. TO PLAINTIFF'S MOTION *IN LIMINE*. DOC. 106.

---

Pending before the Court is a motion to exclude certain evidence, (doc. 86), filed by Plaintiff, Dayton Veterans Residences Limited Partnership d/b/a Freedom's Path at Dayton. ("Freedom's Path"). Defendant, Dayton Metropolitan Housing Authority d/b/a Greater Dayton Premier Management ("DMHA"), has responded. Doc. 87. Plaintiff has replied. Doc. 104. Defendant filed a motion for permission to file a sur-reply. Doc. 106. Plaintiff has responded to the motion for permission to file a sur-reply. Doc. 107. The Court **GRANTS** the motion for permission to file a sur-reply and has considered the tendered sur-reply. Doc. 106-1. The questions present in the motion are now more than ripe.

## I.    STANDARD

Courts have authority under Federal Rule of Evidence 103 and their inherent power to

manage cases to make pretrial rulings admitting or excluding evidence. See Fed. R. Evid. 103(a), 103(c); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1983) ("Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."). "Motions *in limine* are primarily intended to prevent unfair prejudice to the opposing party, usually arising from an irrelevant but compelling inference." Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5037 (1977). The purpose of a motion *in limine* is to allow the Court to rule on issues pertaining to evidence in advance of trial, both in order to avoid delay and to ensure an evenhanded and expeditious trial. See *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

## II.  ANALYSIS

The Court will deal with Plaintiff's requests seriatim.

### A.  Plaintiff seeks to preclude Defendant from arguing or presenting evidence that no prospective tenants were joined as parties

Defendant states that it does not contend that prospective tenants should have been joined as parties. This request is **MOOT.** Doc. 104, PageID 2823.

Defendant asserts as a defense in the Final Pretrial Order that no prospective tenants were joined as parties. A non-party's decision not to participate in a case does not relate to liability of the defendant. See, e.g., *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 272 (S.D.N.Y. 2015) (finding that even where "there are good reasons for a dancer not to join in that particular claim," "[t]hose factors have no bearing on the discrete issues to be tried").

2

However, Defendant does not contend that any prospective tenant should have been joined as a party to this action. Rather, DMHA's position is that Plaintiff's case rests on showing a reasonable accommodation was necessary to benefit persons with a specific disability. This is correct as a statement of the law under *Sutton v. United Airlin*es, 527 US 471, 119 S.C. 2139 (1999).

Defendant will be precluded from presenting any evidence or argument regarding decisions of persons not to join this action. Defendant may, however, contest whether disabled individuals were regarded as associated with Plaintiff's project, and clarify that damages are determined based upon injury to Plaintiff, not non-party veterans. Thus, Plaintiff's motion is **MOOT IN PART, GRANTED IN PART** and **DENIED IN PART** with regard to this point. Argument that no veterans are parties to the case will be allowed at the damages stage, should that trial progress to that point.

### B. Plaintiff seeks to preclude Defendant from presenting evidence that "for profit" affordable housing developers are less desirable than "not for profit" developers, or that private developers are less desirable than public ones.

Evidence or testimony that Plaintiff is a for-profit entity is irrelevant to whether Plaintiff was reasonably accommodated under the FHA and ADA and whether Plaintiff suffered discrimination. It is difficult, however, to discuss damages without discussing monies Plaintiff would have received had the project gone through. If Plaintiff should seek to recover lost profits or lost developers' fees, Defendant will be allowed to refer to Plaintiff's for-profit status.

Because the Court anticipates that Plaintiff will seek to recover at least its lost developers' fee, Plaintiff's motion is **DENIED** with regard to this point. Defendant will not be permitted, however, to disparage Plaintiff just because it is a for-profit institution.

3

**C. Plaintiff seeks to preclude Defendant from arguing, or presenting evidence or commentary, that the only reasonable accommodation request that the jury can consider is the one made by Plaintiff on September 2, 2016**

In its reply, Plaintiff withdraws this request. Doc. 104, PageID 2824. This request is also

**MOOT**.

**D. Plaintiff seeks to preclude Defendant from presenting evidence that Plaintiff's proposed accommodation was unreasonable *per se* as it would have required Defendant to violate its own administrative plan and federal law**

Plaintiff asserts the Court has already rejected this argument as to the oral requests

beginning December 15, 2015, and the associated timeline for amending the Administrative

Plan. Doc. 86, PageID 2551 (citing Doc. 65). The Court's decision found that DMHA had not

"satisfied its burden of proof" to be granted summary judgment on this point, but it did not hold

as a matter of law that this defense was unavailable. While Judge Rice held that DMHA could

have amended its administrative plan prior to September of 2016, a jury may determine that this

is not a reasonable accommodation. Denial of summary judgment on an issue simply means that

the issue must be addressed at trial.

The Sixth Circuit concluded:

> Viewing the facts and drawing all inferences in the light most
> favorable to Freedom's Path, a jury could conclude that it was
> necessary for [DMHA] to amend its Administrative Plan to
> advance such equality of opportunity for disabled veterans. A
> reasonable jury could find that amending the plan would have
> afforded disabled veterans an opportunity to live near the VA
> campus and placed them on equal footing with non-disabled
> persons living in the Dayton community.

*Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-3090, 2021 WL

5411220, at *9 (6th Cir. Nov. 19, 2021). Likewise, a reasonable jury could reach the opposite

conclusion. DMHA may contest this point at trial. Plaintiff's motion is **DENIED** with regard to

4

this point.

### E. Plaintiff seeks to preclude Defendant from arguing, or presenting evidence or commentary, that Defendant relied on the "advice of counsel" or the Department of Housing and Urban Development ("HUD")

Plaintiff requests that the Court bar DMHA from relying on "advice of counsel" as a defense. DMHA counters that it is not seeking to establish an advice of counsel defense, but that Christopher Green's testimony is relevant to proving:

1. Whether Plaintiff asked for an accommodation under the Americans with Disabilities Act or the Fair Housing Act on behalf of disabled persons;

2. Whether DMHA refused to make the accommodation;

3. Whether the proposed accommodation was objectively reasonable;

4. Whether the requested accommodation was necessary to enable disabled individuals to use and enjoy a dwelling; and

5. Whether DMHA knew or should have known of the disability at the time of the refusal.

"To prevail on a failure-to-accommodate claim, 'a plaintiff must prove that (1) she suffers from a disability ...; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable, and (5) the defendant refused to make the accommodation.'" *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-3090, 2021 WL 5411220, at *6 (6th Cir. Nov. 19, 2021) (quoting *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011)). Because many of these questions turn on who knew what and when, Christopher Green's testimony is relevant. DMHA will not be barred from presenting the testimony of Green on these issues. Plaintiff's motion is **DENIED**

5

with regard to this point.

      **F. Plaintiff seeks to preclude Defendant from presenting evidence that the request was not reasonable because Defendant's administrative plan did not allow it to apply to HUD for project-based vouchers on behalf of a specific project without a competitive request for proposals published to the public to give others an opportunity to respond, and that even if the request were made on behalf of disabled persons, which it denies, there is no proof that disabled persons would have benefited in a different or greater manner than non-disabled persons**

Plaintiff contends that although DMHA's administrative plan did not allow it to award vouchers based on previous competition, it should have amended its Plan to allow for another selection method. Whether this is a reasonable accommodation is a central dispute issue in this case. DMHA will be allowed to present evidence and argument on this question.

Plaintiff also contends that DMHA should be precluded from arguing that disabled and non-disabled persons would have benefited in exactly the same manner as non-disabled persons. As an element of its case, Plaintiff must show that its proposed accommodation was necessary to accommodate a disability, and "[a]n accommodation is generally necessary only 'when it allows the disabled to obtain benefits they ordinarily could not have by reason of their disabilities, and not because of some quality they share with the public generally.'" *C.S. v. Ohio High Sch. Ath. Ass'n*, 2015 U.S. Dist. LEXIS 99003, **21-22 (S.D. Ohio) (quoting *Wis. Community Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006)). The Motion is **DENIED** as to both points.

      **G. Plaintiff seeks to preclude Defendant from arguing that Plaintiff cannot establish their case because it has no evidence that any prospective tenant of the Freedom's Path project was disabled within the meaning of federal law**

Where a party claims disability discrimination, an essential element of such a claim is individualized proof of disability. *Sutton v. United Airlines*, 527 US 471, 119 S. Ct. 2139 (1999).

Necessity is an essential element of a reasonable accommodation, and it is impossible to show that an accommodation is necessary to overcome a disability without showing what the disability is and the manner in which the proposed accommodation will overcome the disability. See *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004). The fact that Plaintiff has standing to sue under the ADA as being discriminated against "because of their known association with an individual with a disability," *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 334 (6th Cir. 2002), does not relieve Plaintiff of the burden to prove the existence of the individuals with a disability. *Id*., at 340 ("Plaintiff…has shown that its potential clients have a record of a disability.").

It is true that Plaintiff "alleges that [DMHA] intentionally discriminated against handicapped veterans." *Freedom's Path at Dayton v. Dayton Metropolitan Housing Authority, d/b/a Greater Dayton Premier Management*, No. 3:16-cv-00466, 2017 WL 3605381 at *5. "But allegations are not evidence, and the entire purpose of a trial is to determine whether allegations are true or false." *Williams v. United States*, 2020 WL 4484516, at *27 (D. Ariz. Mar. 23, 2020); see also *How Courts Work*, https://www.americanbar.org/groups/public_education/resources/ law_related_education_network/how_courts_work. DMHA will be permitted to present this argument to the jury at trial. Plaintiff's motion is **DENIED** with regard to this point.

### H. Plaintiff seeks to preclude Defendant from presenting evidence that Craig Taylor made a certain income, and that it was derived from certain sources

Craig Taylor receives income from Communities for Veterans, which is an entity under the control of Donald Paxton, who is also the 99.99% limited partner in Plaintiff itself. Doc. 43-10, PageID 1334-35. Craig Taylor's sources of income are relevant to his potential bias, interest, and motive as a witness. "Bias is 'not limited to personal animosity against a defendant or

7

pecuniary gain.' Instead, it includes mere 'employment or business relationships' with a party and 'is always relevant in assessing a witness's credibility.'" *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999). Thus, DMHA is entitled to inquire into Taylor's personal financial interests as they pertain directly to the outcome of this litigation. Plaintiff's motion is **DENIED** with regard to this point.

### I. Plaintiff seeks to preclude Defendant from arguing, or presenting evidence or commentary, that the parties engaged in settlement communications, and the content of those communications

DMHA will not be offering any evidence relating to settlement discussions at trial, Plaintiff's motion is **MOOT** with regard to this point.

### J. Plaintiff seeks to preclude Defendant from arguing, or presenting evidence or commentary, that Plaintiff may receive attorney's fees if it prevails

"[T]he issue of attorney fees, when and if it arises, is to be resolved by the Court subsequent to the jury trial. Thus, raising the issue of attorney fees in the presence of the jury ... is unnecessary and inappropriate." *Lee v. Robins Preston Beckett Taylor & Gugle Co.*, No. C2-97-1204, 1999 U.S. Dist. LEXIS 12969 at *15 (S.D. Ohio July 9, 1999). While Defendant counters that a financial interest in the litigation is admissible as impeachment of a witness, none of Plaintiff's attorneys are listed as witnesses in this case. Plaintiff's motion is **GRANTED** with regard to this point.

### K. Plaintiff seeks to preclude Defendant from arguing or presenting evidence that taxpayer money would be used to pay any judgment if Plaintiff prevails

Appeals to the pecuniary interests of jurors are improper. "Since pecuniary interest would necessarily disqualify a prospective juror from service, it is patently improper to make an appeal to that interest" in arguments to the jury. *United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir.

8

1973) (internal citations omitted). Arguments as "to jurors' pecuniary interests as taxpayers are, of course, generally improper." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008) (citing *United States v. Schimmel*, 943 F.2d 802, 806 (7th Cir. 2001)). Such evidence is improper under Federal Rules of Evidence 401, 402, and 403, as it serves only to elicit juror sympathy for the defendant and to encourage the jury to nullify.

Given the territory from which the jury pool is drawn, however, few, if any, jurors are likely to be residents of the city of Dayton. Moreover, DMHA has no intention of arguing to the jury that its own dollars are at stake, Doc. 93, PageID 2720, rendering this point **MOOT.**

On the other hand, DMHA will not be precluded from eliciting factual evidence about itself and its mission. DMHA is a political subdivision of the State of Ohio, and it does use public funds to administer programs, including the HUD programs at the center of this litigation. Plaintiff seeks to exclude any references to "state funds" or "public money," but this entire case concerns government-subsidized housing. The trial will necessarily refer to the role of government in the programs at issue. Therefore, this request is **DENIED.**

### L. Plaintiff seeks to preclude Defendant from arguing, or presenting evidence or commentary, that Christopher Green should be permitted to testify.

Plaintiff requests that the Court exclude Christopher Green, Defendant's former counsel, Doc. 81, who was not disclosed as a witness in Defendant's disclosures or answers to interrogatories and was first mentioned as a witness when Defendant provided its witness list to on January 12, 2020. Defendant failed to identify Christopher Green in its initial disclosures as required by this Court's Order and Fed. R. Civ. P. 26(a)(1) and did not list him as a witness in its responses to Plaintiff's interrogatories.

Under Fed. R. Civ. P. 16(f)(1), the Court has broad discretion to issue sanctions allowed by

9

Rule 37(b)(2)(A)(ii)-(vii) against a party for failing to comply with a scheduling order. In the case of evidence required to be identified by the scheduling order, Rule 37(b)(2)(A)(ii)-(vii) permits the Court to sanction the party by excluding the evidence or testimony from the witness that was not identified timely. Rule 37(c) specifically provides that the evidence of a witness that a party failed to disclose in its initial disclosures to be excluded, stating that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." See *Sexton v. Uniroyal Chem. Co., Inc*., 62 Fed. Appx. 615, 616 n.1 (6th Cir. 2003) (noting that the Sixth Circuit requires sanctions "for discovery violations in connection with Rule 26(a) unless the violations were harmless or were substantially justified.").

Jennifer Heapy testified on February 7, 2018, that she had relied on attorney Christopher Green's advice with respect to the Freedom's Path project. Heapy Depo., Doc. 93-1. While Fed. R. Civ. P. 26(a)(1) requires disclosure of potential witnesses, supplementation of this list is required only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Moreover, Plaintiff's trial exhibits 8 and 12 contain emails both addressed from Plaintiff's representatives to Green and referencing Green's role in the negotiations at issue. Green's role in these matters was well known to Plaintiff.

"[T]he extreme sanction of preclusion is simply not warranted when the importance of the additional witness was already known to the opponent." *El Camino Res., Ltd. v. Huntington Nat'l Bank*, No. 1:07-cv-598, 2009 U.S. Dist. LEXIS 36704, at *7 (citing *Gutierrez v. AT&T*

10

*Broadband, LLC*, 382 F.3d 725, 732-33 (7th Cir. 2004)). If the opposing party already knows of the potential witness and of their role in the events at issue, preclusion is inappropriate. *Id*.

While the Court does not condone the failure to fulfill the continuing duty to update potential witness lists, Plaintiff cannot claim unfair surprise here. Green is not a mystery witness sprung at the last minute. Plaintiff is already well aware of his role in the relevant events. Defendant's failure to disclose is harmless as Plaintiff has knowledge and notice of Green and his relevance to this matter.

On December 18, 2015, DMHA's Executive Director Jennifer Heapy, made it clear to Plaintiff that she "and general counsel (Christopher Green) reviewed the relevant notices and regulations regarding the project based VASH vouchers." See December 18, 2015, email from Jennifer Heapy to Don Paxton, Doc. 106-2. Additionally, on August 29, 2016, Heapy directed Paxton to contact Green with regards to any questions concerning the process to obtain the subject vouchers. See August 29, 2016, Jennifer Heapy Email to Don Paxton. Doc. 106-3. Green drafted the September 6, 2016, letter denying the reasonable accommodation to Plaintiff. See Doc. 106-4.

Green's involvement with the drafting the letter is central to the issue remaining for trial, the denial of the reasonable accommodation request. Green will be able to explain his thought process concerning the denial of Plaintiff's reasonable accommodations request. Green's role in the case as a person with discoverable information was clear to Plaintiff. The harsh penalty of mandatory preclusion of Rule 37(c)(1) is therefore not warranted.

Plaintiff's motion is **DENIED** with regard to this point. However, because Green was not disclosed as an expert witness, he will not be allowed to testify concerning the reasonableness of

11

Jennifer Heapy's reasoning concerning the denial of Plaintiff's proposed accommodation.

**DONE** and **ORDERED** this Wednesday, June 1, 2022.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE