**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Freedom's Path at Dayton,**

        *Plaintiffs,*

                                    **Case No. 3:16-cv-466**

**v.**                                  **Judge Thomas M. Rose**

**Dayton Metropolitan Housing Authority,**

        *Defendant.*

---

**DECISION AND ENTRY DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL (DOC. 178)**

---

Pending before the Court is Plaintiff's Motion for a New Trial. Doc. 178. Following a jury verdict in favor of Defendant Dayton Metropolitan Housing Authority, Plaintiff Dayton Veterans Residences Limited Partnership, d/b/a Freedom's Path at Dayton, pursuant to Fed. R. Civ. P. 59, seeks a new trial. Plaintiff asserts the Court erred: (1) in denying four of Plaintiff's motions *in limine*; (2) in several respects in the issuance of its jury instructions; and (3) in limiting the scope of damages. Id. The motion will be denied in its entirety. Each argument raised by Plaintiff will be addressed seriatim.

Federal Rule of Civil Procedure 59 governs motions to amend or alter a judgment. Fed. R. Civ. P. 59(e). According to the text of the rule, a new trial is permissible "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Generally, a court may grant a new trial under Rule 59 if the verdict is against the weight of the evidence, if the damage award is excessive, or if the trial was influenced by

prejudice or bias, or otherwise unfair to the moving party." *Conte v. General Housewares Corp*.,

215 F.3d 628, 637 (6th Cir. 2000).

"However, while the district judge has a duty to intervene in appropriate cases, the jury's

verdict should be accepted if it is one which could reasonably have been reached." Id. (quoting

*Toth v. Yoder Co*., 749 F.2d 1190, 1197 (6th Cir. 1984)) (internal citations omitted). Rule 50 of

the Federal Rules of Civil Procedure permits a litigant who requests judgment as a matter of law

under 50(a) to "file a renewed motion for judgment as a matter of law and may include an

alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "In ruling on the

renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or (3) direct the entry of judgment as a matter of law." Id.

## I.      Motions *in Limine*

Plaintiff asserts the Court erred on six questions that each warrant a new trial, namely:

that the Court erred in denying Plaintiff's motion *in limine* to exclude Christopher Green as a

witness; that the Court erred denying Plaintiff's motion *in limine* to exclude evidence that

DMHA relied on "advice of counsel" or HUD; that the Court erred in denying Plaintiff's motion

*in limine* to exclude Gordon Black's email; that the Court erred in denying Plaintiff's motion *in

limine* to exclude argument or testimony that Plaintiff had no prospective tenants with

disabilities; that the Court erred in its jury instructions; and that the Court erred in granting

Defendant's motion *in limine* to limit Plaintiff's presentation of damages.

### A.  Plaintiff's motion *in limine* to exclude Christopher Green as a witness

Plaintiff moved on January 13, 2020, to exclude certain evidence and testimony before

this matter was initially scheduled for trial on January 27, 2020. Doc. 86, PageID 2557-58.

Plaintiff sought, among other things, to exclude Christopher Green from testifying at trial.

Plaintiff argued that Green, counsel for Defendant until January 6, 2020, and an employee of

Defendant, was not timely disclosed as a witness and should be precluded from testifying as a

sanction pursuant to Fed. R. Civ. P. 16(f)(1) and Rule 37(b)(2)(A)(ii)-(vii). Id. at PageID 2557.

According to Plaintiff, this witness was sprung on them two weeks before trial as a matter of

gamesmanship. Id. at PageID 2558. No particular prejudice was argued. Id. at PageID 2557-58.

Defendant filed a response to this motion, Doc. 81, Plaintiff filed a reply, Doc. 104, and the

Court granted Defendant's request to file a sur-reply, Doc. 106-1. See Doc. 137.

This case was re-scheduled for trial in June 2022 after resolution of an appeal in the Sixth

Circuit. On June 1, 2022, the Court ruled on Plaintiff's motion *in limine*, denying Plaintiff's

motion to exclude Green as a trial witness. Doc. 137, PageID 3330-31. However, Green was

precluded from testifying as an expert witness, and he was specifically precluded from testifying

"concerning the reasonableness of Jennifer Heapy's reasoning concerning the denial of

Plaintiff's proposed accommodation." Id. at PageID 3331.

The extreme sanction of preclusion is "simply not warranted when the importance of the

additional witness was already known to the opponent." *El Camino Res., Ltd. v. Huntington Nat.

Bank*, No. 1:07-CV-598, 2009 WL 1228680, at *2 (W.D. Mich. Apr. 30, 2009). Plaintiff

acknowledged in its reply that Green's involvement in the case had long been known via several

emails and a letter denying Plaintiff's request for accommodation (which Green authored) but

stressed that Green was disclosed on the "eve of trial." Doc. 104, PageID 2830-32.

This case did not proceed to trial until 2 ½ years after Plaintiff's motion *in limine* was

filed in January 2020. Accordingly, to the extent that Plaintiff's motion was predicated on an

3

untimely witness disclosure made on the "eve of trial," that was no longer the case in June 2022

when this case ultimately proceeded to trial. Moreover, Green had first-hand knowledge that was

relevant to this matter, in particular with respect to Defendant's handling of reasonable

accommodation requests generally and in the context of this case specifically.

Plaintiff contends that Green "testified about various laws, including the ADA and HUD

regulations," and that he also testified "erroneously" that "he could not ask anyone who

requested an accommodation whether they were disabled." Doc. 178, PageID 4652 n.1.

According to Plaintiff, "well-established fair housing law," in the context of a request for a

service animal, allows a housing provider to ask individuals to submit reliable documentation of

a disability if a disability is not known or apparent. Id. The record belies Plaintiff's contention

that the above referenced testimony was "extremely prejudicial." Green was permitted to testify

as to his understanding of relevant laws and regulations based on his job-related duties for

Defendant. See, e.g., Doc. 173, PageID 4366- 4370.

Plaintiff's counsel objected to a question regarding whether veterans were a protected

class under the FHA, then withdrew the objection. Id. at PageID 4368-69. The Court sustained

an objection by Plaintiff's counsel and precluded Green from answering a question regarding

whether Plaintiff's request for a reasonable accommodation was a "reasonable request." Id. at

PageID 4404-4405. Plaintiff's contention that Green testified "erroneously" that he was not

permitted to ask those requesting an accommodation whether they were disabled could and

should have been addressed on cross-examination by its counsel.

Finally, at the conclusion of Green's testimony the Court permitted Plaintiff to present

Craig Taylor as a rebuttal witness over Defendant's objection. Doc. 173, PageID 4420-35; id. at

PageID 4437-39. This testimony was offered to show that Taylor had sent a letter to Jennifer Heapy as an attachment to other correspondence dated December 18, 2015, and that this letter referenced the term "disabled" in the context of Plaintiff's development project. Id. at PageID 4437-39. In addition to rebutting Heapy's testimony, this evidence effectively rebutted the testimony of Green that there was "not a word about disabled" in Plaintiff's communications in the December 15 to January 2016 time-frame. The document that inspired the rebuttal, a VA letter from Glenn Costie, was at all times in the possession of Taylor and disclosed to Defendant's counsel for the first time on June 17, 2022—during trial.

The denial of Plaintiff's motion *in limine* to exclude Green as a witness does not support disturbing the judgment. Plaintiff did not show the Court erred, and, even if it could, Plaintiff did not show that the Court "committed a clear error of judgment" or that the error affected the outcome of the trial.

**B. Plaintiff's motion *in limine* to exclude evidence that Defendant relied on "advice of counsel" or HUD**

In its January 13, 2020, motion *in limine* Plaintiff also sought to exclude evidence that Defendant relied on the "advice of counsel" or HUD. Doc. 86, PageID 2552. The motion was predicated on Defendant asserting good faith reliance on advice of counsel, or HUD, as an affirmative defense. Id. Defendant, however, was not seeking to establish an advice of counsel defense. Rather, as previously determined, Green's testimony was relevant to proving:

> Whether Plaintiff asked for an accommodation under the Americans with
> Disabilities Act or the Fair Housing Act on behalf of disabled persons; 2.
> Whether DMHA refused to make the accommodation; 3. Whether the
> proposed accommodation was objectively reasonable; 4. Whether the
> requested accommodation was necessary to enable disabled individuals to
> use and enjoy a dwelling; and 5. Whether DMHA knew or should have

5

known of the disability at the time of the refusal.

Doc. 137, PageID 3324. "Because many of these questions turn on who knew what and when, Christopher Green's testimony is relevant. DMHA will not be barred from presenting the testimony of Green on these issues." Id.

Defendant did not assert good faith reliance on "advice of counsel" as an affirmative defense in its answer to Plaintiff's amended complaint. Doc. 18, PageID 174. Nor did Defendant raise good faith reliance on "advice of counsel" as an affirmative defense at trial. Instead, Defendant presented Heapy and Green who testified about their first-hand knowledge of the events giving rise to this litigation and their understanding of the applicable HUD regulation and how that regulation applied to Defendant's administrative plan. The fact that a portion of Defendant's defense turned on its interpretation of the applicable HUD regulation does not convert Defendant's arguments into an "advice of counsel" affirmative defense. See, e.g., *Plate, LLC v. Elite Tactical Sys., LLC*, 2020 WL 5209303, at \*10 (E.D. Tenn. Sept. 1, 2020.

To the extent that Plaintiff cites two pages of Heapy's trial testimony, these two excerpts do not establish that Heapy invoked a good faith reliance on "advice of counsel" defense. Doc. 178, PageID 4653. She testified that Green was general counsel for Defendant who was responsible for handling reasonable accommodation requests, and that Green was involved in reviewing the notices and regulations regarding Plaintiff's request for a letter of support. Doc. 172, PageID 4238, 4269. Green was doing his job.

Likewise, in the course of Heapy's job for the housing authority she regularly communicated with HUD. Doc. 172, PageID 4285-86. Her testimony regarding these communications does not mean that Defendants were asserting an "advice of HUD" affirmative

6

defense and no such defense was raised at trial.

Moreover, the HUD regulation allowed Defendant to select either of two methods for allocation of project-based vouchers—a housing authority request for project-based voucher proposals, or a selection based on a previous competition. Plaintiff presented testimony, via their own witness, Taylor, that Defendant's interpretation was wrong. See Doc. 171, PageID 3998.

Where the jury must weigh conflicting testimony "and choose to believe one witness's testimony over the other," the court is "not permitted to engage in such a weighing process" itself. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 879 (6th Cir. 2001). "Witness credibility is solely within the jury's province, and the Court may not remake credibility determinations." *McDonald v. Petree*, 409 F.3d 724, 731 (6th Cir. 2005) (quotation omitted). A conclusion that turns on the credibility of witnesses offering conflicting testimony is not a proper basis for a new trial. See *Wallace v. FedEx Corp.*, 764 F.3d 571, 593 (6th Cir. 2014).

Plaintiff presented witness testimony to refute the position taken by Defendant that its administrative plan did not allow it to award vouchers based on previous competition. The jury weighed the testimony and rendered a verdict in favor of Defendant. The denial of Plaintiff's motion *in limine* to preclude an "advice of counsel" or HUD defense does not support an award of a new trial.

### C.  Plaintiff's motion *in limine* to exclude Gordon Black's email

Plaintiff next claims that the Court erred in denying its motion *in limine* to exclude Gordon Black's email. Doc. 178, PageID 4655-56; Doc. 145. Plaintiff challenged the Defendant's use of an affidavit from Black to authenticate an email communication sent to Heapy on January 6, 2016. Plaintiff argued that the affidavit was inadmissible hearsay and could

not be allowed to support the truth of any factual matter or to authenticate the email, and that the

email was inadmissible hearsay and prejudicial. Doc. 145, PageID 3437-45. However, the email

exchange was offered to show the impression it had on Heapy, not for the truth of matters

asserted therein.

Plaintiff contends that the email itself is "misleading" because a public housing authority

can amend its administration plan. But the portion of the affidavit referenced by Plaintiff,

paragraph 3, did not address whether a public housing authority can amend its administrative

plan. Rather, the cited portion of the affidavit related to Black's statement in the challenged

email that a public housing authority "is prohibited from honoring a Project-Based Voucher

(PBV) commitment without following the Request for Proposals (RFP) procedures." Id. at

PageID 4656. The affidavit was not misleading.

Plaintiff's counsel cross-examined Heapy at length on the amendment issue. She testified

that she discussed with Black "what was in our administrative plan," that she did not discuss

changing Defendant's administrative plan, that Defendant amended its administrative plan in

October 2016 to add Section 983.51(b)(2) and that HUD approved this amendment around April

2017. Doc. 173, PageID 4335-37.

Plaintiff's counsel also cross-examined Heapy at length about her communications with

Plaintiff's representatives and whether she understood those communications to include a request

to amend Defendant's administrative plan. Id. at PageID 4338-46. Plaintiff's counsel established,

via cross-examination, that Defendant's administrative plan could have been amended to allow

for allocation of project-based vouchers based on a previous competition. Plaintiff's counsel's

cross-examination prevented any jury confusion.

8

Thus, the Court's denial of Plaintiff's motion *in limine* to exclude Black's email was not erroneous and Plaintiff has not shown that the denial of this motion was prejudicial. A new trial is not warranted on this basis.

### D. Plaintiff's motion *in limine* to exclude argument or testimony that Plaintiff had no prospective tenants with disabilities

Plaintiff contends that the Court erred in denying its motion *in limine* to exclude argument or testimony that it had no prospective tenants with disabilities. Doc. 178, PageID 4656. The majority of Plaintiff's argument centers on the fact that entities have standing and are "aggrieved persons" under both the ADA and FHA if they provided services to handicapped veterans. Id. at PageID 4657. The fact that Plaintiff has standing to sue under the ADA as being discriminated against "because of their known association with an individual with a disability," *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 334 (6th Cir. 2002), does not relieve Plaintiff of the burden to prove the existence of the individuals with a disability. Id., at 340 ("Plaintiff…has shown that its potential clients have a record of a disability."). Doc. 137, PageID 3326. The Court further stated that although it is true that Plaintiff has alleged that Defendant intentionally discriminated against handicapped veterans, allegations are not evidence, and the purpose of trial is to determine whether allegations are true or false. Id. (citation omitted).

Plaintiff again argues that it has standing. Plaintiff's standing to bring its claims was not an issue at trial. The existence of standing did not relieve Plaintiff from meeting its burden to prove a reasonable accommodation claim under the ADA and/or FHA.

Plaintiff also contends that its "proposed housing and vouchers under the HUD-VASH program self-evidently targeted disabled veterans." Doc. 178, PageID 4657. Yet, it

acknowledged that at trial its own witness, Taylor, testified that "VASH vouchers are not restricted to homeless veterans with disabilities." Id.; see also Doc. 170, PageID 3850. Defendant also focused on showing that Plaintiff did not communicate to Defendant, during the relevant time-frame, that the population to be housed by its project would be disabled, or that Plaintiff was seeking an accommodation on behalf of the disabled. Doc. 172, PageID 4251, 4262, 4268, 4276, 4284-85, 4298, 4300; Doc. 173, PageID 4382-84, 4386, 4395, 4404-06, 4417-18. This is relevant to necessity, "as an accommodation request must be necessary as an accommodation of a disability." Doc. 175, PageID 4604.

Moreover, Plaintiff was required to prove that "Defendant knew or should have known that the proposed tenants of [its] project were disabled within the meaning of the federal law." Id. at PageID 4606. Plaintiff adduced no evidence that Defendant's decision to not apply for vouchers on Plaintiff's behalf was because Plaintiff might house disabled persons. Heapy and Green both testified that this decision did not have anything to do with the fact that Plaintiff's prospective tenants might be disabled. Doc. 172, PageID 4295; Doc. 173, PageID 4406. Because the Court did not commit a clear error of judgment in denying this motion *in limine* the request for new trial on this basis will be denied.

## II.    Jury Instructions

"The purpose of jury instructions is to inform the jury on the law and to provide proper guidance and assistance in reaching its verdict. The trial court enjoys considerable latitude in selecting appropriate language, the test being whether the instructions as a whole correctly state the applicable law." *Bucyrus–Erie Co. v. General Products Corp.*, 643 F.2d 413, 418 (6th Cir. 1981). A motion for new trial based on the court's refusal to give a requested jury instruction is

reviewed for abuse of discretion. *Taylor v TECO Barge Line, Inc.*, 517 F.3d 372, 387 (6th Cir. 2008).

"A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Cummins*, 727 F.3d at 510 (citation omitted). "Jury instructions are not prejudicial if they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination." *Lees v. Thermo Electron Corp.*, No. 2:06- CV-984, 2008 WL 5212224, at *5 (S.D. Ohio Dec. 12, 2008) (quoting *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir. 1983)).

"A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions 'unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law.'" Id. (quoting *Bowman v. Koch Transfer Co.*, 862 F.2d 1257, 1263 (6th Cir. 1988); see also *Troyer v. T.John.E. Prods., Inc.*, 526 Fed. App'x 522, 525 (6th Cir. 2013). Mere error in the jury instructions does not itself require a new trial if the error is harmless. *Troyer v. T.John.E. Prods., Inc.*, 526 Fed. App'x 522, 525 (6th Cir. 2013) (citing *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000)).

### A. The "was necessary" instruction

The Court instructed that Plaintiff must show that the requested accommodation "was necessary." Plaintiff asserts that "[i]t is clear under the FHA, as the Sixth Circuit recognized in this case, that 'may be' necessary, as opposed to 'was necessary,' is the proper standard." Doc. 178, PageID 4661. However, Plaintiff's own proposed jury instruction No. 18 "Introduction to

Fair Housing Law/Disability Discrimination," Doc. 141, PageID 3379, proposed using the phrase "was necessary," citing *Overlook Mutual Homes v. Spencer*, 666 F. Supp. 2d 850 (S.D. Ohio 2009) and *Schaw v. Habitat for Humanity of Citrus County, Inc.*, 938 F.3d 1259, 1265-67 (11th Cir. 2019). *C.f.* Doc. 152, PageID 3523.

Plaintiff asserted: "To prevail on a failure-to-accommodate claim, a plaintiff must prove (1) that he is disabled, (2) that he requested a 'reasonable accommodation[ ],' (3) that the requested accommodation was 'necessary to afford [him an] equal opportunity to use and enjoy a dwelling,' and (4) that the defendant refused to make the requested accommodation."; "If a plaintiff's request is facially reasonable, the burden shifts to the defendant, who must prove that the accommodation would nonetheless … result in a 'fundamental alteration" of its program.'" Doc. 152, PageID 3523-24. The "was necessary" phrase has also been used by the Sixth Circuit in the context of an FHA claim. *Howard v. City of Beavercreek*, 276 F.3d 802, 807 (6th Cir. 2002) ("In sum, because Howard failed to present sufficient evidence to create a genuine issue of material fact as to whether the variance he requested was a necessary accommodation under § 3604(f)(3)(B), the district court correctly granted summary judgment in favor of Beavercreek on Howard's FHAA claim.").

Plaintiff contends that the Sixth Circuit's ruling in *Dayton Veterans Residences Limited Partnership v. Dayton Metropolitan Housing Authority*, No. 21-3090, 2021 WL 5411220 (6th Cir. Nov. 19, 2021) is the law of the case and demonstrates that "may be necessary" is the proper standard. The panel did state, "To prevail on a failure-to-accommodate claim, 'a plaintiff must prove that…the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling.'" *Id.*, at *6.   However, in reversing the grant of summary judgment

12

to Defendant, the Sixth Circuit also stated: "We hold that a reasonable jury could find that the developer's proposed accommodation was necessary to ameliorate the effects of homeless veterans' disabilities. Accordingly, we REVERSE." Id. at *1.

The panel repeatedly referenced the "was necessary" standard. For example, the Court described the basis of its ruling *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781 (6th Cir. 1996) as follows: "Because the city's denial of the adult foster home's rezoning permit deprived the elderly disabled of places to live in an area where suitable dwellings were in short supply, we held that the accommodation was necessary." Id. at *7. The Court further reasoned:

> Here too, we must ask whether GDPM's successful procurement of VASH vouchers—which would allow Freedom's Path to create housing for disabled veterans—would accommodate disabled veterans by providing them access to housing more readily available to nondisabled persons. Specifically, we must ask whether a reasonable factfinder could determine that the accommodation is necessary to afford disabled persons an equal opportunity. See *Anderson v. City of Blue Ash*, 798 F.3d 338, 362 (6th Cir. 2015) (denying defendant summary judgment because reasonable jury could find that plaintiff's requested accommodation was necessary).

Id.; see also id. at *9 ("Viewing the facts and drawing all inferences in the light most favorable to Freedom's Path, a jury could conclude that it was necessary for GDPM to amend its Administrative Plan to advance such equality of opportunity for disabled veterans.").

The challenged jury instruction accurately states the law with respect to a failure-to-accommodate claim, and Plaintiff's arguments to the contrary lack merit. The "was necessary" instruction was not erroneous.

### B. The "benefits both disabled and non-disabled individuals equally" instruction

Plaintiff claims that the "instruction on 'benefits both disabled and non-disabled

individuals equally' conflicts with *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917 (10th Cir. 2012)." Doc. 178, PageID 4662. The Sixth Circuit has explained: "Equal use and enjoyment of a dwelling are achieved when an accommodation ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her residence as a non-disabled person could." *Anderson v. City of Blue Ash*, 798 F.3d at 361. "The necessity element is . . . a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." Id. (quoting *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014)); see also *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (a reasonable accommodation is necessary "only when it allows the disabled to obtain benefits that they ordinarily could not have by reason of their disabilities, and not because of some quality that they share with the public generally."); *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 124 F.3d 597, 604 (4th Cir. 1997) (The "FHA does not require accommodations that increase a benefit to a [disabled] person above that provided to a [non-disabled] person with respect to matters unrelated to the [disability].").

The challenged instruction is consistent with the law regarding the necessary element of a failure-to-accommodate claim. Additionally, the Court "enjoys considerable latitude in selecting appropriate language, the test being whether the instructions as a whole correctly state the applicable law." *Bucyrus–Erie Co.*, 643 F.2d at 418. Plaintiff does not argue and cannot show that, taken as a whole, the instructions are misleading or give an inadequate understanding of the law. *Lees v. Thermo Electron Corp.*, 2008 WL 5212224, at \*5. This instruction likewise does not

14

support an award of a new trial.

### C.  The refusal to give the proposed HUD-VASH eligibility and the McKinney-Vento Homeless Assistance Act instruction

Plaintiff contends that the Court erred in refusing to give its proposed HUD-VASH eligibility and McKinney-Vento Homeless Assistance instruction. Doc. 178, PageID 4662. It claims that this instruction was "relevant to the obviousness of the disabilities for the homeless veterans since the criteria for the award of vouchers" is set forth therein. Id.

Plaintiff was seeking to introduce this instruction to bolster its proposed "elements of claim" instruction No. 21. Doc. 152, PageID 3525. There, Plaintiff requested that the Court instruct the jury, in part, as regards the "elements of the claim":

> First, that Plaintiff planned to provide housing and VASH vouchers for homeless veterans;
>
> Second, that VASH vouchers by law are available only to veterans with disabilities;
>
> Third, that the Housing Authority knew or reasonably should have known of the disabilities of homeless veterans eligible for VASH vouchers . . .

Id.

VASH vouchers are not "by law" available only to veterans with disabilities. Plaintiff's own witness, Taylor, testified at trial that "VASH vouchers are not restricted to homeless veterans with disabilities." Doc. 170, PageID 3850; see also id. at PageID 3925 (testifying on cross-examination that Plaintiff's counsel "was mistaken" when "he said VASH -- you have to be disabled to get a VASH voucher."). Taylor further testified that the "target population for VASH vouchers" were homeless veterans. Id. at PAGE ID 3848 ("Q. And when we talk about

15

VASH vouchers, what -- is there a target population for VASH vouchers? A. VASH vouchers must be used for homeless veterans.").

The Court properly refused the requested instruction because it was sought to support an argument advanced by Plaintiff that is not true. The proposed instruction was misleading because it suggested that VASH vouchers are available "only to veterans with disabilities," or at a minimum that VASH vouchers are targeted specifically at veterans with disabilities, neither of which is true. Doc. 152, PageID 3525.

In any event, Taylor testified that in his experience "100 percent" of homeless veterans that Plaintiff serves across the country "have one or more disabilities." Doc. 170, PageID 3850. Plaintiff argued the issue of obviousness and explained its theory of the case to the jury. Doc. 175, PageID 4558-65, 90, 92-93. The jury considered and weighed the testimony of Taylor and the other witnesses and rendered a verdict for Defendant. Thus, the Court's refusal to give Plaintiff's proposed instruction was not erroneous because the proposed instruction was not an accurate statement of the law regarding HUD-VASH eligibility. Plaintiff has not shown prejudice, and the instructions as a whole correctly state the applicable law. The failure to give the proposed instruction is thus not error.

## III.    Defendant's Motion *In Limine* to Limit Plaintiff's Presentation of Damages

Plaintiff's expert, Henry Fishkind, issued a report identifying over $21 million in claimed damages. Defendant moved *in limine* to limit Plaintiff's presentation of damages. Doc. 84. The Court granted Defendant's motion. Doc. 133.

The jury did not reach the issue of damages. Thus, even if the Court erred in its ruling on this question, any error was harmless.

16

**IV.    Conclusion**

For these reasons, the Plaintiff's Motion for a New Trial, Doc. 178, is **DENIED**. The

case remains closed.

**DONE** and **ORDERED** this Thursday, October 6, 2022.


                                                              s/Thomas M. Rose
                                          _____
                                                            THOMAS M. ROSE
                                               UNITED STATES DISTRICT JUDGE

17